**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation,

      Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

      Defendant.

---

## PLAINTIFF'S RESPONSE TO PARTIAL MOTION TO DISMISS

---

      Plaintiff Wyers Products Group, Inc., through their undersigned counsel, respectfully submit this Response to defendant Cequent Performance Products, Inc.'s ("Cequent") Amended Motion to Partially Dismiss Under Rule 12(b)(6) [#18] ("Motion"):

### INTRODUCTION

      Cequent's Motion prematurely raises questions of fact that should be resolved following claim construction and discovery, and cannot be addressed on the pleadings under Fed. R. Civ. P. 12(b)(6).  Claims 23 and 27 of U.S. Patent No. 6,672,115 ("the '115 patent") have never been litigated and are presumed valid. 35 USC § 282; *Microsoft v. i4i Ltd Partnership*, -- U.S. --, 131 S.Ct. 2238, 2242 (2011); *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1144 (Fed. Cir. 1985).   These claims are patentably distinct and contain different claim terms and phrases from the claims at issue in *Wyers v. Master Lock*, Case No. 06-cv-00619-LTB-MJW. See Exhibit A, Order Deny Motion for Judgment as a Matter of Law.  Before issue preclusion may be

1

addressed, the meaning and scope of claims 23 and 27 must be determined through *Markman* proceedings.  Meanwhile, the parties must conduct fact intensive discovery into the four *Graham* factors to determine if Cequent can meet its burden of presenting clear and convincing evidence of invalidity, either by obviousness or issue preclusion. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966); *Microsoft, supra*. Wyers respectfully requests that the Court deny Cequent's Fed. R. Civ. P. 12(b)(6) motion to dismiss.

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

A motion under Rule 12(b)(6) should be denied where the factual allegations suffice to "raise a right to relief above the speculative level."  *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Id.*  In ruling on a motion to dismiss, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 492 F.3d 1210, 1215 (10th Cir. 2007).

### II.    Issue Preclusion

Issue preclusion is an affirmative defense.  Cequent bears the burden to prove all elements of the defense by clear and convincing evidence.  *Microsoft, supra*; *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).  Issue preclusion does not apply unless the defendant proves that, in the prior action, the plaintiff "had a full and fair opportunity to

litigate the issue; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1537 (Fed. Cir. 1995); *see also Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). Any doubts as to whether the elements of issue preclusion are satisfied should be resolved in favor of the patentee. *E.g.*, *Plastic Container Corp. v. Continental Plastics of Okla., Inc.*, 607 F.2d 885, 894 (10th Cir. 1979) ("[T]he public interest in upholding valid patents . . . outweighs the public interest underlying collateral estoppel where the issue or issues in each action are not substantially identical.").

## ARGUMENT

### I.    Claims 23 and 27 of the '115 Patent Are Presumed Valid and Enforceable

Claims 23 and 27 are presumed valid and Cequent bears the burden of proving invalidity by clear and convincing evidence. Cequent seeks to apply the limited obviousness determination of *Master Lock* to the newly asserted claims 23 and 27. Cequent has no authority for its proposition that the Court may, on a motion to dismiss, invalidate previously unadjudicated claims of a patent by applying the doctrine of issue preclusion. To the contrary, issue preclusion premised on a prior obviousness conclusion must be assessed on a claim-by-claim basis, within the factual framework of the *Graham* factors. *Interconnect*, 774 F.2d at 1137 ("Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is [] properly phrased in terms of the factual inquiries mandated by *Graham*"); *see also Nat'l*

*Steel Car, Ltd. v. Canadian Pacific Ry.*, 357 F.3d 1319, 1334 (Fed. Cir. 2004) ("A validity analysis must be conducted on a claim-by-claim basis.").

The *Graham* factors are:  (1) the scope and content of the prior art, (2) the difference between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) any relevant objective considerations of nonobviousness. *Graham*, 383 U.S. at 17.  The first three *Graham* factors serve "as the background against which the obviousness or nonobviousness of the subject matter is determined." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012).   The fourth factor requires consideration objective indicia of nonobviousness, including commercial success, industry praise, unexpected results, skepticism of the invention, copying, licensing, and long-felt but unresolved need. *Id.* at 1349-55.  Such evidence places an invention "in the proper temporal and technical perspective when tested years later for obviousness[.]" *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378 (Fed. Cir. 2012).  Objective indicia "must always when present be considered en route to a determination of obviousness." *Transocean*, 699 F.3d at 1349.

To engage in factual analysis of whether claims 23 and 27 raise new issues under the *Graham* factors (which would prohibit any issue preclusion), these claims should first be construed by the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  The Court's construction is needed as these claims include terms and phrases and additional limitations not found in claims 15, 19, 21 and 24.  *See* Exhibit B ('115 patent).  These differences in claim language create a presumption that claims 23

and 27 have different meanings and scope than the other claims of the '115 patent. *Seachange Int'l Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005). Precisely what those differences in meaning and scope are, and how they will effect the factual determinations required to assess obviousness under *Graham v. John Deere Co.*, are questions to be addressed by the Court according to the schedule set forth in its Order for Briefing on *Markman* Issues [#5].

Cequent's attempts to portray the fact-bound question of issue preclusion as appropriate for resolution under Rule 12(b)(6) are unavailing. Indeed, Cequent relies exclusively on precedents decided on summary judgment motions.[1] *Cf. Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995) ("A survey of the jurisprudence shows that the courts have indeed looked to the facts of the particular case in deciding whether justice, expediency, and the public interest are served by collateral estoppel. Our precedent illustrates this sensitivity."). Likewise, to the extent Cequent argues that the Court need only resort to *Master Lock* and claims 15, 19, 21 and 24 of the '115 patent to assess issue preclusion, the Federal Circuit has rejected such a "domino approach." *Interconnect Planning*, 774 F.2d at 1137.

In short, Cequent's Motion raises numerous questions of fact outside the Complaint which need to be addressed in order to assess application of the doctrine of issue preclusion. At this stage, Cequent has failed to carry its burden to prove that this is an appropriate case for issue preclusion, by clear and convincing evidence.

---

[1] *Novo Nordisk, Inc. v. Paddock Labs., Inc.*, 797 F. Supp. 2d 926 (D. Minn. 2011) does not support Cequent's position. *Novo Nordisk* applied issue preclusion on a Rule 12(c) motion only because: (1) the defendant did not contest that the elements of the doctrine were satisfied; (2) the entire patent was rendered unenforceable by a prior determination of inequitable conduct; and (3) the same claim previously held to be obvious was raised again in the subsequent litigation.

## II.     Claims 23 and 27 of the '115 Patent Present New Issues of Validity

### A.     <u>Different claim language in Claims 23 and 27</u>

Claim 23 and claim 27 of the '115 patent contain limitations not found in any of the claims at issue in *Master Lock.*   Because these claims are narrower than the invalidated claims, questions of fact as to each of the *Graham* factors remain before the application of issue preclusion may be considered.

Even a small difference in claim language will give rise to new issues that prevent the application of issue preclusion.   For example, in *Foster v. Hallco Mfg. Co.*, 1997 WL 419391, *4 (Fed. Cir. 1997), the variance of only one word in a reissue claim was held sufficient to preclude the application of issue preclusion based on the invalidated original claim:

> "While the "movable portion" language in claim 9 of the '469 patent is similar to the "movable central portion" language in the '022 patent, the definition of this element is different and more specific in the '022 patent. Thus, the first element of the claim preclusion test -- that the issue is identical to that involved in the prior action -- has not been met."

*Id.*   Thus, differences in claim language in the newly asserted claims will raise non-identical issues and foreclose the possibility of issue preclusion.   Cequent cannot meet its burden to prove identicality because claims 23 and 27 contain additional limitations not found in any previously invalidated claim of the '115 patent.   *See* Exhibit 1.

### B.     <u>*Graham* factor 2 – differences from the prior art</u>

The evidence will show that claims 23 and 27 of the '115 patent distinguish over the same prior art that invalidated claims 15, 19, 21 and 24.   The additional limitations

present in claims 23 and 27 implicate a set of issues not litigated or addressed in *Master Lock*.

### 1.   *Claim 23*

Unlike any of the claims at issue in *Master Lock*, claim 23 of the '115 patent claims "A locking hitch system . . . ."  *See* First Amended Complaint and Jury Demand [#13] ("Complaint") ¶ 25, Claim Chart.  Subparagraph (a) of claim 23 sets forth a claim limitation requiring "a first hitch bar and a first hitch receiver each including first apertures of a first size disposed therein and aligned for registration with one another[.]"  *Id.*  Subparagraph (b) of claim 23 sets forth a claim limitation requiring "a second hitch bar and second hitch receiver each including second apertures of a first size disposed therein and aligned for registration with one another said first apertures being smaller than said second apertures[.]"  *Id.*  Subparagraph (c) sets forth a claim limitation requiring "a convertible hitch pin" that, among other things, includes "a shank outer dimension sized and adapted for close-fitted engagement with the first apertures" and "a sleeve for selective engagement with said pin shank and having an outer dimension sized and adapted for close-fitted engagement with the second apertures[.]"  *Id.*

These structures comprising the locking hitch system of claim 23 implicate new substantive differences from the prior art relied on by the panel in *Master Lock* – U.S. Patent No. 3,963,264 ("Down").  Down does not teach a sleeve that must be close-fitted engagement through aligned apertures in hitch bar/hitch receiver combination.  In this arrangement as claimed by claim 23, the sleeve bears the entire load of the trailer or other towed cargo (as well as the sheer forces created by towing).  The difference in the

load-bearing nature of the sleeve disclosed in Down versus the sleeve included in claim 23's locking hitch system becomes evident from a comparison of the figures of the respective patents.

While the Down sleeve provides a load bearing *surface*, the sleeve in Down is not a load *increasing* structure.  The locking hitch system of claim 23 of the '115 patent, however, discloses a load *increasing structure*.  Evidence in this case will show that the sleeve used in that locking hitch system actually increases the towing capacity otherwise inherent in the shank from 5000 lbs to 10,000 lbs and increase the sheer load of the shank from 15,000 lbs to over 33,000 lbs.   To illustrate this fundamental difference between Down and the hitch locking system of claim 23, one may picture the shank of the receiver pin/lock as made from wax. Applying any towing force to the Down sleeve would shear the wax shank, whereas the sleeve disclosed in claim 23 would protect the wax shank from shear forces.

As claim 23 was not previously litigated, these manifest differences between claim 23 and Down were not at issue in *Master Lock*.  The panel in that case focused its analysis on the general concept of a sleeve applied to a receiver hitch lock.  The narrow application of sleeve technology disclosed in claim 23 of the '115 patent thus raises new fact questions under *Graham*.

### 2. *Claim 27*

Cequent argues that claim 27 is invalid because the claim from which depends, claim 24, was held invalid in *Master Lock*.  This argument fails to acknowledge the patently significant difference in the additional limitation of claim 27.  "Because

dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found." *Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1356 (Fed. Cir. 2001); *see also* 35 U.S.C. § 282. Claim 27 requires a locking device wherein, in addition to the limitations of claim 24, the length of the shank and the sleeve length **are substantially the same**. This limitation implicates similar new issues with respect to differences from Down and other prior art and objective indicia of nonobviousness as summarized above regarding claim 23. These fact issues should be addressed after claim construction and discovery.

Cequent incorrectly asserts that a statement in the *Master Lock* opinion forecloses a finding of validity as to claim 27. Under controlling Federal Circuit precedent, "judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement; further, [] such statements should be narrowly construed." *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed. Cir. 1983). Here, the evidence will show that the single sentence in the *Master Lock* opinion on which Cequent relies was not essential to the obviousness determination made in that case. Giving that statement, the appropriate narrow construction will include placing it in the context of the record before the Federal Circuit in *Master Lock*. The load bearing capacity of a full length sleeve was not a topic addressed in that case, whereas it is an issue of importance to interpreting the narrow claim 27.

C.     <u>**Graham factor 4 – objective indicia**</u>

Recent Federal Circuit opinions emphasize that it is error not to consider objective indicia of nonobviousness. *E.g.*, *Id.*; *Mintz*, 679 F.3d at 1378-79; *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("a district court must *always* consider any objective evidence of nonobviousness presented in a case").  Consideration of objective indicia helps to "inoculate the obviousness analysis against hindsight" and "may often be the most probative and cogent evidence of nonobviousness in the record."  *Id.* at 1378.

Objective evidence of nonobviousness is particularly important in cases involving less complex technology so as to avoid the forbidden use of hindsight:  "simply because the technology can be easily understood does not mean that it will satisfy the legal standard of obviousness.  In fact, objective consideration of simple technology is often the most difficult because, once the problem and solution appear together in the patent disclosure, the advance seems self-evident."  *Id.* at 1379.  The Federal Circuit requires consideration of objective indicia of "because they 'provide objective evidence of how the patented device is viewed in the marketplace, by those directly interested in the product.'"  *Id.* (quoting *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988)); *see also Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("The objective considerations reflect the contemporary view of the invention by competitors and the marketplace.")

Evidence reflecting objective indicia raising new issues of patentability unique to claims 23 and claim 27 of the '115 patent will be presented in this case.  Wyers

Products alleges and will prove that one of ordinary skill in the art at the time of invention would have understood the structural limitations in claim 23 to relate to standards in the towing industry concerning towing performance and safety, including Class II, Class III and Class IV towing ratings. *See* Complaint ¶¶ 8-12.  The evidence will show that one of ordinary skill with respect to hitches, drawbars, and receiver locks would not have expected a universal receiver lock with a shank and sleeve sized and adapted for close-fitted engagement with the apertures sizes of each application (Class II and Class III/IV) to meet the load bearing requirements and function safely in these applications.  In fact, the evidence will establish that those in the industry, including Cequent, expressed skepticism regarding the design until its success was proven over time.  For many years prior to disclosure of the inventions described in claims 23 and 27, all art taught away from a load-bearing sleeve used in Class II and Class III/IV towing applications.  After disclosure of the unexpected success of these inventions, however, praise and copying followed.

Much of this objective evidence of nonobviousness is in Cequent's own hands. Wyers Products expects that discovery will reveal the fact that, prior to the public disclosure of the technology claimed in claims 23 and 27, Cequent was the leading (in sales volume) manufacturer/distributor of receiver hitch pins and hitch pin systems. When Cequent failed to adopt this new technology, it lost a significant portion of its market share to competitor's products embodying Wyers' new technology.  Cequent's internal and public reaction to the technology disclosed in claims 23 and 27, along with its reasons for later embracing this technology (which regained Cequent substantial

market share through buyers such as Wal-Mart) will be probative evidence of nonobviousness. *E.g.*, *AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) (accused infringer's "recognition of the importance of this advance is relevant to a determination of nonobviousness.").

## III.   *Master Lock* Should Not Be Given Preclusive Effect in this Case

Issue preclusion is neither automatic nor absolute.   "The Supreme Court has urged relitigation of issues, when the prior litigation raises questions about the quality, extensiveness, or fairness of its procedures." *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001).   Issue preclusion is premised on principles of fairness. See *Blonder-Tongue Lab. v. University of Illinois Found.*, 402 U.S. 313, 324-325 (1971) (noting that "overriding fairness" considerations may dictate that collateral estoppel should not apply).   The Court has discretion in deciding whether to apply issue preclusion. *A.B. Dick Co.*, 713 F.2d at 702.

The evidence in this case will demonstrate that claims 23 and 27 of the '115 patent are valid as a matter of law.   It is critical to note that the Federal Circuit has charted a new direction since the Panel in *Master Lock* utilized the "common sense" inquiry to reverse the jury's verdict of non-obviousness as affirmed by Judge Babcock. Federal Circuit precedent decided since *Master Lock* instructs that the jury's factual findings are entitled to deference on the question of common sense. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1366- 67 (Fed. Cir. 2012).   The Federal Circuit has forbidden unsubstantiated reliance on "a common sense view" or "common sense approach" unsupported by record evidence to hold a patent claim

obvious. *Mintz v. Dietz & Watson, Inc.* holds that a court overreaches in the obviousness analysis if it overturns a jury verdict "[w]ith little more than an invocation of the words "common sense" (without any record support showing that this knowledge would reside in the ordinarily skilled artisan)[.]"  679 F.3d at 1377.

The Panel in *Master Lock* concluded that other claims of the patent were invalid using its common sense.  The Panel did not comment upon Down in the context of claim 23 or 27, for good reason.  During the trial of the *Master Lock* case, the defendant presented no testimony regarding Down that would be competent to show why a person of ordinary skill would have thought to combine the sleeve disclosed in Down with the completely different structures involved in a tow bar and receiver as claimed in 23 and 27.  It would be inequitable to deprive Wyers Products of the opportunity to litigate its presumptively valid, never-before-adjudicated patent claims under this new standard and it would be inappropriate to rely upon the *Master Lock* opinion to relieve Cequent of its burden of establishing invalidity by clear and convincing evidence.

## IV.   INDUCED INFRINGEMENT IS ADEQUATELY PLEADED

The claim for induced infringement has been properly plead.  The patentee may prevail at trial on a claim of induced infringement on the basis "of circumstantial evidence of direct infringement by unknown parties." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2011).  "To state a claim for indirect infringement, therefore, a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists."

*Id.*  The Complaint clearly meets this pleading standard and, further, more than adequately alleges Cequent's intent to induce infringement.

In its catalogues, Cequent advertises "Hitch Locks with 5/8" **and** 1/2" Diameter" that embody the locking hitch pins included in the locking hitch system of claim 23.  *See* Ex. A to Cequent's Motion at B-18, B-19.  Cequent informs its customers that such hitch locks are for use with both "1-1/4" **&** 2" Square Receivers."  *Id.*  Cequent encourages customers to buy both its Class II and Class III/IV hitch receivers and hitch bars, which, as Cequent informs its customers, utilize 1-1/4" and 2" square receivers, respectively. *Id.* at A-2 – A-10, A-13 – A15.  Paragraphs 11, 12, 14 and 23-24 of the complaint allege that Cequent sells all of the components of the locking hitch system claimed in claim 23, instructs its customers how to use that system, and encourages its customers to infringe claim 23 by using one of Cequent's sleeved locking hitch pins separately with both Class II and a Class III/IV receiver hitch and hitch drawbar towing connections.

The reasonable inference drawn from the allegations of the Complaint is that many (and certainly at least one) of Cequent's customers do infringe the locking hitch system of claim 23 according to Cequent's instructions.  A customer may have a Class II hitch on an ATV and a Class III/IV hitch on a truck, and use Cequent's sleeved locking hitch pin to alternately connect and secure the ATV and truck to appropriate sized trailers.  It is highly probable, but without a doubt plausible, that one or more of Cequent's customers does use Cequent's sleeved locking hitch pins separately with both Class II and a Class III/IV Cequent receiver hitches and hitch drawbars.

The same allegations also give rise to an inference of Cequent's knowledge of infringement of claim 23 and intent to induce such infringement. The Complaint alleges that Wyers Products and Cequent are direct competitors. Complaint ¶ 28. And it alleges that, since filing the application for the '115 patent, Wyers Products marked its commercial embodiments as patent pending and has achieved an international reputation throughout the towing industry. *Id.* ¶¶ 16, 20. Thus, the Complaint plausibly alleges Cequent's awareness of the '115 patent, along with its instructions to customers to infringe the locking hitch system of claim 23. Taken together, these allegations sufficiently plead Cequent's knowledge and intent to induce infringement. *See In re Bill of Lading*, 681 F.3d at 1341-42 (allegations that the defendant's advertisements conveyed how to use the accused product to infringe, coupled with knowledge of the patent give rise to an inference that defendant intends to induce customers to infringe).

WHEREFORE, for all of the foregoing reasons, plaintiff Wyers Products Group, Inc. respectfully requests that the Court deny defendant's ") Amended Motion to Partially Dismiss Under Rule 12(b)(6) [#18] in its entirety.

Dated this 30th day of January, 2013.

Respectfully submitted,

LATHROP & GAGE LLP

 s/ *Aaron P. Bradford*
Aaron P. Bradford
950 17th Street, Suite 2400
Denver, Colorado 80202
Phone:    (720) 931-3200
Fax:        (720) 931-3201
Email:      abradford@lathropgage.com
*Attorneys for Plaintiff Wyers Product Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2013, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David B. Cupar
Matthew J. Cavanagh
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400 S
Denver, Colorado 80202
apetrie@featherstonelaw.com

  s/ *Lori Labash*
Lori Labash