**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-00619-LTB

PHILIP W. WYERS, a Colorado resident, and,
WYERS PRODUCTS GROUP, INC., a Colorado corporation,

    Plaintiff,

v.

MASTER LOCK COMPANY, a Delaware corporation,

    Defendant.

---

# ORDER

---

In this patent infringement case, Plaintiffs, Philip W. Wyers and Wyers Products Group, Inc. (collectively "Wyers"), asserted that Defendant, Master Lock Company ("Master Lock"), infringed upon four of Plaintiffs' patents: U.S. Patent Nos. 6,055,832 (the "'832 patent"); 6,672,115 (the "'115 patent"); 7,165,426 (the "'426 patent"); and 7,225,649 (the "'649 patent"). The '832 patent covers a barbell-shaped lock intended for locking a trailer hitch onto a motor vehicle, with a seal mounted within the locking end of the barbell that prevents the ingress of dirt or other matter into the locking mechanism. The '115 patent covers a similar lock with a removable sleeve on the shank so as to allow the lock to be used to lock together objects with various sized apertures. The '426 patent covers a method for providing a lock with a removable sleeve on the shank. The '649 patent covers a lock similar to that covered by the '832 patent, but with a sealing cover affixed to the outside of the locking head. Issues relating to infringement and validity of the '832 patent were disposed of before trial.

This matter was tried to a jury over nine days beginning on March 2, 2009. At the close

of evidence, the Court granted Wyers's motions for judgment as a matter of law on their infringement claims. The question of obviousness of the remaining disputed claims—claims 15, 19, 21, and 24 of the '115 patent; claim 1 of the '426 patent; and claims 1, 9, and 11 of the '649 patent—was submitted to the jury. The jury found Master Lock failed to show the claims were obvious by clear and convincing evidence and awarded Wyers $5,350,000 in damages as a reasonable royalty.

This case is now before me on Master Lock's Renewed Motion for Judgment as a Matter of Law that Asserted Claims of the Patents in Suit are Invalid [**Docket # 294**] and supporting Brief [**Docket # 295**]; Wyers's Response [**Docket # 308**]; and Master Lock's Reply [**Docket # 316**] and Amended Reply [**Docket # 318**] . Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Master Lock's Renewed Motion for Judgment as a Matter of Law that Asserted Claims of the Patents in Suit are Invalid [**Docket # 294**].

## I. STANDARD OF REVIEW

Master Lock argues the claimed inventions of the '115, '426, and '649 patents are invalid because they would have been obvious to a person with ordinary skill in the art. "Although it is well settled that the ultimate determination of obviousness is a question of law, it is also well understood that there are factual issues underlying the ultimate obviousness decision. Specifically, the obviousness analysis is based on four underlying factual inquiries, the well-known *Graham* factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." *See McGinley v. Franklin Sports, Inc.*, 262 F.3d

2

1339, 1349 (Fed. Cir. 2001). I am guided by the presumption that a patent is presumed to be valid, and this presumption can only be overcome by clear and convincing evidence of facts to the contrary. *See id.* at 1349; 35 U.S.C. § 282.

"Obviousness is a question of law based on factual underpinnings. . . . When the parties dispute the underlying facts, the issue of obviousness typically is submitted to the jury." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1108 (Fed. Cir. 2003). Where—as here—the jury issued a general verdict on the ultimate legal question of obviousness, "the law presumes the existence of findings necessary to support the verdict the jury reached. The particular findings the jury must make before it can reach a verdict are controlled by the court's instructions." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 544-46 (Fed. Cir. 1998); *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). "The general verdict thus includes the jury's legal conclusion and a set of implied fact findings, the latter being those necessary to support the legal conclusion encompassed in the verdict." *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1516 (Fed. Cir. 1984).

A motion for judgment as a matter of law in a patent case is reviewed "under the law of the regional circuit where the appeal from the district court would normally lie." *See Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003). As Master Lock requests judgment as a matter of law notwithstanding the jury finding of nonobviousness, I must deny the motion "unless the jury's verdict is unsupported by substantial evidence or premised on incorrect legal standards." *See McGinley*, 262 F.3d at 1350 (applying Tenth Circuit law). I must assess the evidence and construe all inferences in the light most favorable to Wyers as the verdict

3

winner. *See id.* I will grant Master Lock's motion only if "a reasonable jury would have no legally sufficient evidentiary basis" to rule in Wyers's favor. *See Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009).

Patent claims are invalid as obvious when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made by a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1734 (2007); 35 U.S.C. § 103(a). A patent "composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l*, 127 S. Ct. at 1740–41. This is particularly the case when combining known elements together yields "unexpected and fruitful" results. *Id.* at 1740. When a patent, however, "'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 1739–40 (quoting *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282 (1976)).

The Supreme Court in *KSR International* rejected the Federal Circuit's previous teaching-suggestion-motivation test in favor of "an expansive and flexible approach," holding: "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." *Id.* at 1739, 1741–42. Therefore, a court should look at the "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to

4

determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 1740–41.

## II. ANALYSIS

### A. '115 and '426 Patents

As the '115 and '426 patents cover essentially the same invention, I examine the claims of these two patents together. It is important to note that the subject matter of the invention described in the disputed claims at issue in these patents is not a lock, nor even a locking device, but is instead a sleeve that covers the shank portion of a lock for purposes of adjusting the shank's operative thickness such that the shank's diameter is the same as the diameter of the aperture of the locked-together objects. Although the specification notes that "any number of different kinds of lock configurations and types may be used with the present invention," the invention is claimed for use with locks that have a stop portion on one end and a locking portion on the opposite end, the lock portion and stop portion being separated by a shank. The invention was specifically designed to secure a drawbar to a trailer hitch receiver and is described and depicted as a hitch pin lock throughout the specifications of both patents, as well as in Claim 15 of the '115 patent. The relevant question, therefore, is whether Master Lock presented clear and convincing evidence that the use of a sleeve to adjust the operative thickness of a shank would have been obvious to a person with ordinary skill in the art of manufacturing or designing such locks. The jury concluded Master Lock failed to make such a showing. I agree.

Implicit in the jury's verdict are seven factual findings: (1) a padlock is not a lock that has a stop portion on one end and a locking portion on the opposite end, the lock portion and stop portion being separated by a shank; (2) a padlock does not have a shank designed to closely

5

fit a specific aperture; (3) a lock designed particularly for use as a hitch lock would require a shank with a load-bearing surface; (4) a person of ordinary skill in the art of manufacturing or designing hitch locks would not look to padlocks when attempting to improve the shank portion of a lock designed for close-fitted engagement with a specific-sized aperture; (5) the scope and content of the relevant prior art included only solid shanks with a single operative thickness; (6) a sleeve had not been used to adjust the operative thickness of a close-fitting shank prior to the claimed invention; and (7) the use of a sleeve to adjust the operative thickness of a close-fitting shank was a commercially-valuable invention that inspired widespread copying. Each of these factual findings was supported by substantial evidence in the form of testimony from either Mr. Wyers or Master Lock's expert, Mr. Costley. Additional substantial evidentiary support came from Master Lock's own lock designers as expressed in Master Lock's Idea Disclosures 23 and 26, neither of which considered the 37D lock—a padlock with a sleeve covering a portion of the shank—or the Down patent—a 1976 patent that covered a sleeve used for adjusting the operative aperture of a trailer towing eye, but not altering the operative thickness of the hitch pin shank itself—relevant prior art.

Wyers also presented substantial evidence of secondary indicia of nonobviousness. Master Lock marketed the convertible sleeve with great success—achieving over $20 million in sales and penetrating the national mass-merchant market for trailer hitch pin locks. Prior to selling and marketing a convertible shank, Master Lock's presence in the trailer hitch pin market was limited mostly to second and third-tier retailers. Master Lock eventually lost the national retailers to Reese—another lock manufacturer that sells an allegedly-infringing sleeved hitch pin lock. While Wyers did not prove these results were solely dependent on the convertible sleeve,

6

the results—when combined with Master Lock's marketing materials touting the benefits of the sleeve—are circumstantial evidence of commercial success due to the merits of the claimed invention. Moreover, Master Lock's acknowledgment that every other manufacturer of hitch pin locks began selling a sleeved lock after Wyers disclosed the concept to Wal-Mart provides circumstantial evidence of widespread copying of the claimed invention by others. As all reasonable inferences must be resolved in favor of Wyers as the verdict winner, this circumstantial evidence is sufficient to show secondary indicia of nonobviousness. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987). Combined with the jury's other implicit findings regarding the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the pertinent art, these factual findings on secondary indicia of nonobviousness show a person of ordinary skill in the art would not have found the use of a sleeve to adjust the operative thickness of a close-fitting shank to be obvious.

The evidence presented by Master Lock was insufficient to show contrary factual findings by clear and convincing evidence. Master Lock's expert, Mr. Costley, testified he had only a personal acquaintance with the relevant field of hitch pin locks. Mr. Costley testified that his experience as a locksmith was not relevant to the issue of whether a sleeve could be used to adjust the operative thickness of a close-fitting or load-bearing shank. To the extent Mr. Costley opined that the use of a sleeve would have been obvious, therefore, the jury could accurately conclude—and implicitly did conclude—his opinion was not based on any expertise in the relevant field.

Mr. Costley also testified he had sold the 37D lock to customers looking for a coupler

lock that would fit more than one aperture. On cross examination, however, Mr. Costley clarified that the 37D lock was not a hitch pin lock and could probably not be used for that purpose. Mr. Costley also testified that the shank of the 37D lock—like other padlocks—was not a load-bearing surface in a manner similar to that of the shank of a hitch pin lock. The 37D lock was also not designed to fit a specific-sized aperture—rather, it was designed to fit "most coupler lock openings" with the sleeve removed and "13mm or larger aperture[s] with the sleeve on." Mr. Costley further testified that a lock designer would not look to the 37D lock for purposes of designing a sleeved shank for a hitch pin lock. Accordingly, the jury could accurately conclude—and implicitly did conclude—the sleeve of the 37D lock did not cover a load-bearing shank and was not employed for purposes of adjusting the shank's close-fitting operative thickness. The jury could—and implicitly did—reach a similar conclusion in regard to the Down patent. Accordingly, I agree with the jury that Master Lock failed to show by clear and convincing evidence that claims 15, 19, 21, and 24 of the '115 patent and claim 1 of the '426 patent are obvious.

## B. '649 Patent

The subject matter of the invention described in the disputed claims at issue in the '649 patent is likewise not a lock, nor a locking device, but is instead an external flat flange seal designed to insulate the locking mechanism of a lock—which, like the lock described in the '115 and '426 patents, has a stop portion on one end and a locking portion on the opposite end, the lock portion and stop portion being separated by a shank—from the ingress of contaminants. Prior to Wyers's invention of the flat flange seal, such locks were sealed with internal seals or seals attached to the shank portion of the lock. The relevant question is whether Master Lock

8

presented clear and convincing evidence that the use of an external flat flange seal would have been obvious to a person with ordinary skill in the art of manufacturing or designing such locks. The jury concluded Master Lock failed to make such a showing. I agree.

Master Lock's evidence of prior art of the flat flange seal suffers from the same infirmities as its evidence regarding the sleeve—namely, Master Lock relied on seals used in padlocks. The jury's verdict indicates it did not find these padlock seals to be relevant prior art. This finding was supported by substantial evidence in the form of testimony from either Mr. Wyers or Master Lock's experts, Mr. Costley and Mr. Irgens. Additional substantial evidentiary support comes from Master Lock's own lock designers as expressed in Master Lock's Idea Disclosures that indicated Master Lock did not consider existing padlock seals to be relevant prior art. Moreover—to the extent the prior art did disclose an external seal on Master Lock's 6121 lock—the jury could, and implicitly did, conclude based upon the evidence presented that Wyers's seal contained an additional improvement in that it was flat in nature.

Wyers also presented secondary indicia of nonobviousness—as noted above in relation to the '115 and '426 patents—that the jury implicitly found to be sufficient. Combined with the jury's other implicit findings regarding the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the pertinent art, these factual findings on secondary indicia of nonobviousness show a person of ordinary skill in the art would not have found the use of an external flat flange seal to be obvious. Accordingly, I agree with the jury that Master Lock failed to show by clear and convincing evidence that claims 1, 9, and 11 of the '649 patent are obvious.

### III. CONCLUSION

Although the ultimate determination of obviousness is a question of law, such a determination must be based upon certain factual inquiries. An examination of the jury's implicit findings on these inquiries show the findings were supported by substantial evidence. I conclude, therefore, that Master Lock failed as a matter of law to show the disputed claims were obvious by clear and convincing evidence. Accordingly, Master Lock's Renewed Motion for Judgment as a Matter of Law that Asserted Claims of the Patents in Suit are Invalid [**Docket # 294**] is DENIED.

Dated: May __8__ 2009.

BY THE COURT:

s/Lewis T. Babcock
Lewis T. Babcock, Judge