# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation,

    Plaintiff,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

    Defendant.

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS UNDER RULE 12(b)(1)

---

Plaintiff Wyers Products Group, Inc. ("Wyers Products"), through undersigned counsel, respectfully submits this Response to defendant Cequent Performance Products, Inc.'s ("Cequent") Motion to Dismiss Under Rule 12(b)(1) [#23] ("Motion"):

**Statement Regarding Conferral**: Cequent did not attempt to confer with Wyers Products prior to filing its Motion. Had it done so, it would have learned that any standing defect alleged in the Motion is curable by joinder of Philip W. Wyers (to the extent he is not already a party). For this reason alone the Motion should be denied.

## INTRODUCTION

Cequent's Motion is premised on fundamental misunderstandings of the law of standing. At most, Cequent's Motion raises a technical defect in prudential standing. It is well settled that any such defect can and should be corrected by joining all appropriate parties during the litigation, without dismissal. Wyers Products has

addressed any standing defect by filing its Motion to Amend Case Caption or, in the Alternative, to Join Philip W. Wyers as Co-Plaintiff [#27] ("Motion to Amend"). Specifically, both Wyers Products and Philip W. Wyers ("P. Wyers"), the inventor and patentee of the patents-in-suit – U.S. Patent Nos. 6,672,115 ("the '115 patent") and 7,121,121 ("the '121 patent") – were pleaded as plaintiffs and intended to be co-plaintiffs in this action. *See id.* at 1-2. To the extent that, by a drafting error in the case caption, P. Wyers is not a party, he should be voluntarily joined as a plaintiff. *See generally id.*

Cequent's Motion appears to be motivated by a desire to increase the expense of and delay this litigation through forum shopping. As explained in the Motion to Amend, Cequent rebuffed Wyers Products' attempt to confer regarding amendment of the case caption or joinder of P. Wyers. *Id.* at 2-3. Instead, Cequent filed a cumulative lawsuit in its home forum, the Eastern District of Michigan, asserting the claims it is likely to assert as counterclaims in this lawsuit. *See id.* at 2-3 & Exs. 1 & 2 thereto. Cequent now seeks to utilize a (possible) technical defect in pleading to dismiss this case (without prejudice) and re-direct the litigation into its chosen forum. *Id.* As discussed below, any defect in standing that exists can be corrected by amendment and/or joinder. Justice and judicial economy favor granting such relief and denying Cequent's Motion.

Cequent's Motion pursuant to Rule 12(b)(1) challenges the factual basis for subject matter jurisdiction in this case. In resolving such a challenge, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 906 (10th Cir. 2012). To the extent that the Court perceives disputes of fact

material to its analysis of the issue of standing, Wyers Products requests an evidentiary hearing to address the same.

**I.     STANDING TO SUE FOR PATENT INFRINGEMENT**

    **A.     Patent Owners and Exclusive Licensees Have Constitutional Standing.**

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." *Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1313 (Fed. Cir. 2005). As to constitutional standing, Article III of the Constitution limits the jurisdiction of Federal Courts to "Cases" and "Controversies." U.S. Const. Art. III § 2, cl. 1. "Pursuant to Article III, to have standing, a plaintiff must demonstrate: (i) an injury in fact that is both concrete and particularized as well as actual or imminent; (ii) an injury that is traceable to the conduct complained of; and (iii) an injury that is redressable by a decision of the court." *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Contrary to Cequent's assertion in its Motion, the Patent Act "does not limit the right to sue to only patent owners and assignees." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010). Rather, two types of plaintiffs have constitutional standing to sue for patent infringement: (1) "plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks," and (2) "plaintiffs [that] hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007). The first category includes the patentee,

assignees of the patent, and parties to whom the patentee has transferred "all substantial rights" to the patent (referred to as "virtual assignees").  *Id.* at 1340.  Such an assignee or transferee need not join a patentee because it becomes the effective patentee.  *Id.*

Exclusive licensees comprise the second category of plaintiffs with constitutional standing to sue for patent infringement.  *WiAV Solutions*, 631 F.3d at 1264-65; *see also Morrow*, 499 F.3d at 1340 ("the grant of an exclusive license to make, use, or sell the patented invention carries with it the right to prevent others from practicing the invention").  As the Federal Circuit explained in *WiAV Solutions*, "[b]ecause the legally protected interests in a patent are exclusionary rights created by the Patent Act, a party holding one or more of those exclusionary rights—such as an exclusive licensee—suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue."  631 F.3d at 1264-65.

Although exclusive licensees have constitutional standing, the federal courts require such parties to enforce their exclusionary rights through or in the name of the owner of the patent, "and the patentee who transferred these exclusionary interests is usually joined to satisfy **prudential** standing concerns."  *Morrow*, 499 F.3d at 1340 (emphasis added).  Thus, a defect in standing that exists where an exclusive licensee sues without the patentee as a co-plaintiff is merely a defect in prudential standing, rather than constitutional standing.  *Id.*; *WiAV Solutions LLC*, 631 F.3d at 1265 n.1; *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000) (the general rule "that a patentee should be joined, either voluntarily or involuntarily, in any

infringement suit brought by an exclusive licensee" is "prudential rather than constitutional in nature"); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001) (same). The key prudential concerns requiring joinder of the patentee in a suit by an exclusive licensee are avoidance of multiple litigations, and the possibility of multiple liabilities and recoveries against the same infringer. *Morrow*, 499 F.3d at 1340; *Intellectual Prop. Dev.*, 248 F.3d at 1347.

**B.    Defects in Prudential Standing Are Curable by Joinder.**

If constitutional standing exists at the outset of a case, then any defect in prudential standing may be cured during the course of the litigation. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("In circumstances where dismissal for lack of initial standing is not required, the Supreme Court held in *Caterpillar[Inc. v. Lewis*, 519 U.S. 61 (1996)] that jurisdictional defects can be cured before judgment."). This principle holds true in the context of patent infringement lawsuits. Simply put, "[j]oinder of a patent co-owner is a prudential, not a constitutional standing requirement, and the Court of Appeals for the Federal Circuit has allowed parties to cure prudential standing defects after filing." *EMD Crop Bioscience Inc. v. Becker Underwood, Inc.*, 750 F. Supp. 2d 1004, 1018 (W.D. Wis. 2010) (citing *Intellectual Prop. Dev.*, 248 F. 3d at 1348; and *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133-34 (Fed. Cir. 1995)). Indeed, such joinder is not only proper, but required: "when a patent owner retains a substantial proprietary interest in the patent and wishes to participate in an infringement action, the court must allow it to do so." *Abbott Labs.*, 47 F.3d at 1133.

The Federal Circuit's opinions in *Mentor H/S, Inc. v. Medical Device Alliance, Inc.* are instructive. In that case, the Federal Circuit raised *sua sponte* the issue of standing of the plaintiff – an exclusive licensee that sued without the patentee. *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1016 (Fed. Cir. 2001). The Court of Appeals concluded that, as an exclusive licensee, the plaintiff had constitutional standing, but lacked prudential standing absent joinder of the patentee. *Id.* at 1018-19. To remedy this defect, the court invited the plaintiff to file a motion for joinder in the appellate proceedings pursuant to Fed. R. Civ. P. 21. *Id.* at 1019. The Federal Circuit then granted the plaintiff's subsequent motion for joinder of the patentee. *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1373 (Fed. Cir. 2001). The Federal Circuit explained its rationale as follows: "we have ordered the joinder of [the patentee] because such joinder cures a technical jurisdictional defect and will not prejudice the defendants." *Id.*

Likewise, numerous other Federal Circuit and lower federal court decisions recognize that defects in prudential standing can and should be cured through joinder during pending litigation. *See, e.g., AsymmetRx, Inc. v. Biocare Medical, LLC*, 582 F.3d 1314, 1321-22 (Fed. Cir. 2009) (holding that the policies underlying Fed. R. Civ. P. 19 favored joinder of the patentee to exclusive licensee's infringement suit, either voluntarily or involuntarily); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007) ("an action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation"); *Evident Corp.*, 399 F.3d at 1314 (Fed. Cir. 2005) (joinder of patentee as a third-party defendant

to a counterclaim after commencement of suit by exclusive licensee "fully satisfied any standing requirements"); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1310 (Fed. Cir. 2003) (an exclusive licensee that commenced suit without the patentee "could cure the defect by filing a motion to join the patentee as a plaintiff"); *Southwest eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, No. 2:07-cv-311, 2009 WL 4730464, *2 (E.D. Tex. Dec. 7, 2009) ("Defects in prudential standing . . . are not fatal to the lawsuit"); *Great Lakes Intellectual Prop. Ltd. v. Sakar Int'l, Inc.*, 516 F.Supp.2d 880, 894 (W.D. Mich. 2007) (same).

### C. Cequent Premises its Motion on Misstatements of the Law.

In its Motion, Cequent failed to cite any of the foregoing authorities demonstrating (1) that both exclusive licensees and patent owners have constitutional standing to sue for patent infringement, and (2) where constitutional standing exists, technical defects in prudential standing can be cured by joinder of appropriate parties during the litigation. Instead, Cequent's Motion rests on erroneous assertions of law. Namely, Cequent asserts that "one must own a patent to have standing to sue on it," and that "title to a patent must be conveyed in writing." *See* Motion at 4-5. Cequent relies exclusively on the 1998 Federal Circuit decision in *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998), for these erroneous propositions. Cequent's reliance is misplaced; the court in *Enzo* did not reach any such holdings.

An exclusive patent license need not be in writing. To the contrary, an exclusive license may be granted orally or implicitly. *Waymark Corp. v. Porta Sys. Corp.,* 334 F.3d 1358, 1364 (Fed. Cir. 2003); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 F.

App'x. 697, 705-06 (Fed. Cir. 2008) ("This court has also concluded that an exclusive license need not be in writing for the exclusive licensee to have standing to sue with the patentee as a co-plaintiff."). "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's *express or implied promise* that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (en banc) (emphasis added). The *Enzo* court recognized this settled law. *Enzo*, 134 F.3d at 1093 ("we acknowledge that a license may be written, verbal, or implied").

Moreover, ownership of a patent may transfer by operation of state or foreign law without any written assignment. *See Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1380 (Fed. Cir. 2009) ("transfer of patent ownership by operation of law is permissible without a writing"); *Akazawa v. Link New Tech. Int'l*, 520 F.3d 1354, 1356 (Fed. Cir. 2008) (transfer occurred by operation of Japanese intestacy law). "[P]atent ownership may be transferred by assignment, and section 261 addresses such a transfer—requiring assignments to be in writing. However, there is nothing that limits assignment as the only means of transferring patent ownership. Indeed, the case law illustrates that ownership of a patent may be changed by operation of law." *Akazawa*, 520 F.3d at 1356 (citation omitted).

*Enzo* merely held that in order to constitute a **virtual assignment** – that is, the functional equivalent of a formal written assignment of the patent – a license must be in writing. 134 F.3d at 1093 ("if the license is to be considered a virtual assignment to

assert standing, it must be in writing"). Virtual assignees are only one of a number of types of plaintiffs that have standing to sue for patent infringement. *See Morrow*, 499 F.3d at 1339-40.

In fact, a careful reading of *Enzo* shows that the Federal Circuit premised its decision non-joinder of the patentee, rather than the erroneous legal conclusions Cequent tries to engraft into the decision. The *Enzo* court described the issue before it as follows:

> It is clear from the record that there was no writing transferring all substantial rights under the '274 patent to Geapag at the time it brought suit. Thus, we must then determine whether an oral exclusive license or a nunc pro tunc license executed after suit is brought, or some combination of the two, can confer standing. **We conclude that under any of these circumstances the holder of title must be joined in order to confer standing.**

134 F.3d at 1093 (emphasis added). Ultimately, the court determined that for standing to exist, the patentee should have been joined during the litigation in the district court, and that without the presence of the patentee, "the court lacks jurisdiction over Enzo's declaratory judgment claims **under Fed. R. Civ. P. 19 for nonjoinder**." *Id.* (emphasis added). *Enzo* therefore supports joining P. Wyers as a co-plaintiff. *See Asius Technologies, LLC v. Sonion US, Inc.*, 835 F. Supp. 2d 554, 559 (N.D. Ill. 2011) ("the court clearly did not hold, or even imply, that Enzo could not have joined the patentee by filing a timely motion to amend the complaint").

In short, Cequent misreads *Enzo*. *E.g.*, *Blumenthal Distributing, Inc. v. Executive Chair, Inc.*, No. CV-10-1280, 2010 WL 5980151, *4 (E.D.N.Y. Nov. 9, 2010) ("While the Patent Act requires *assignments* to be in writing, no such requirement has been

imposed for exclusive licenses. For this reason, the decision in *Enzo . . .* fails to support [defendant's] position.").

## II. <u>WYERS PRODUCTS HAS CONSTITUTIONAL STANDING</u>

Wyers Products is, at minimum, the exclusive licensee of the '115 and '121 patents (and has been since issuance of those patents). In fact, under Colorado law, Wyers Products owns the patents by operation of law. Under either scenario, Wyers Products had constitutional standing to sue Cequent on the date this action was filed (and continues to possess constitutional standing). Accordingly, Wyers Products' pending Motion to Amend [#27] should be granted, and Cequent's Motion should be denied.

### A. **Wyers Products is, at minimum, the Exclusive Licensee of the '115 and '121 Patents.**

"[A] licensee is an exclusive licensee of a patent if it holds **any** of the exclusionary rights that accompany a patent." *Wiav Solutions*, 631 F.3d at 1266 (emphasis added). Thus, if a party has the right to make, use **or** sell the patented invention coupled with the right to preclude others from doing so, it has constitutional standing as an exclusive licensee. *Id.*; *Intellectual Prop. Dev.*, 248 F.3d at 1346.

There can be no doubt that Wyers Products is, at minimum, an exclusive licensee as to the '115 and '121 patents. Wyers Products has the exclusive right to manufacture and distribute products embodying the inventions disclosed in the '115 and '121 patents. *See* **Exhibit 1**, Declaration of Philip W. Wyers ¶ 9 ("Wyers Decl."). Neither P. Wyers nor Wyers Products has ever licensed or conveyed such rights to any other party. *Id.* ¶¶ 9-10. Wyers Products manufactures, markets and sells locking

devices under the '115 patent, and has marked its products accordingly. First Amended Complaint and Jury Demand [#13] ¶¶ 15, 16, 20. Wyers Products also manufactures, markets and sells locking devices under the '121 patent, and has marked its products accordingly. *Id.* ¶¶ 15, 16, 20. Wyers Products exercises its exclusionary rights under the '115 and '121 patents by competing directly with Cequent in the markets for such products, and has lost profits due to Cequent's infringement of such patents. *Id.* ¶¶ 28, 37.

As in this case, Wyers Products has consistently enforced its rights in patents invented by P. Wyers in prior litigation (generally doing so jointly with P. Wyers). *Id.* ¶ 11. Cequent's own Motion confirms this fact. Specifically, Cequent correctly notes that "in a prior infringement case against Master Lock Company, Mr. Wyers and Products Group joined as co-plaintiffs and alleged . . . that Mr. Wyers had granted Products Group an oral exclusive license to the '115 patent." Motion at 2.

Under these facts, it cannot be disputed that Wyers Products is, at minimum, the exclusive licensee of the '115 and '121 patents. Wyers Products possesses the exclusionary rights to make and sell products embodying the inventions disclosed in such patents. Wyers Decl. ¶¶ 8-10. Further, Wyers Products has received P. Wyers' express and/or implicit promise that others will be excluded from exercising such rights. *Id.* ¶¶ 2,3, 8-11.

**B.  Wyers Products Owns the '115 and '121 Patents under Colorado Law.**

Questions of patent ownership are determined under state law. *See, e.g.*, *Enovys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1342 (Fed. Cir.

2010); *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327 (Fed. Cir. 2009). Consequently, Colorado law governs the ownership of the '115 and '121 patents. Under Colorado law, inventions transfer by operation of law in certain circumstances. Specifically, as the court held in *Scott System, Inc. v. Scott*, 996 P.2d 775, 778 (Colo. App. 2000), "[i]f an employee's job duties include the responsibility for inventing or for solving a particular problem that requires invention, any invention created by that employee during the performance of those responsibilities belongs to the employer."

Such is the case here. *See* Wyers Decl. ¶¶ 3-8. P. Wyers founded Wyers Products in 1989 and has served as its President and key inventor ever since. Over the course of his employment by Wyers Products, P. Wyers has invented devices, apparatus and methods leading to the issuance of over twenty patents. Wyers Decl. ¶¶ 4-6. Wyers Products and P. Wyers have always understood and agreed that P. Wyers' innovation and invention was and is a key aspect of his job duties as President. *Id.* Quite simply, P. Wyers is the driving force behind the industry-leading, patented inventions manufactured, distributed, marketed and sold by Wyers Products – including those disclosed in the '115 and '121 patents. *Id.* ¶¶ 3-8.

Ownership of the rights to the inventions disclosed in the '115 and '121 patents therefore transferred from P. Wyers to Wyers Products group by operation of Colorado law.[1] *Scott Sys.*, 996 P.3d at 778. The Federal Circuit recognizes that patent ownership may transfer by operation of law. *Akazawa*, 520 F.3d at 1356; *Sky Techs.*,

---

[1] The Court need not reach the question of whether Wyers Products owns the '115 and '121 patents by operation of Colorado law, however. Because it is beyond dispute that Wyers Products is, at minimum, the exclusive licensee of such patents, it has always had constitutional standing in this action.

576 F.3d at 1380. Upon such a transfer, the transferee has standing to sue for infringement of the patent. *Akazawa*, 520 F.3d at 1358; *Sky Techs.*, 576 F.3d at 1389.

### III. <u>JUSTICE FAVORS JOINDER, IF NECESSARY</u>

The sole reason that P. Wyers is not currently identified as a plaintiff is due to a simple error of counsel in failing to conform the case caption to the substantive allegations of the pleadings. *See* Motion to Amend at 1-3. There is absolutely no grounds to assert that Wyers Products or its counsel included only Wyers Products in the case caption of the Complaint for a nefarious purpose, or in an attempt to bring this patent enforcement lawsuit prematurely or through the wrong party. *See* Wyers Decl. ¶ 11. As discussed above, any defect in standing here can be cured by simple amendment and/or joinder. Wyers Products' Motion to Amend seeking such relief is presently before the Court. Additionally, joinder would address any concern of Cequent (albeit unstated in its Motion) that, in the absence thereof, Cequent could be subject to multiple lawsuits or liability based on the same alleged infringement. *See Star Navigation Sys. Group Ltd. v. Aeromechanical Servs. Ltd.*, No. C-07-4820, 2008 WL 962150, *3 (N.D. Cal. Apr. 8, 2008).

On the other hand, Cequent seeks to capitalize on a technical pleading error by engaging in forum shopping. *See* Motion to Amend at 1-2 & Exs. 1 & 2 thereto. Even if Cequent's Motion was granted, any dismissal for lack of standing must be without prejudice. *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009). Thus, at best, Cequent's Motion would result in needless litigation expense, delay and inefficiency. *See*, *e.g.*, *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1192 (S.D.

Ala. 2007) (denying motion to dismiss patent suit for lack of standing premised on technical defect in assignment document; holding that only unnecessary delay and expense would result from granting such motion).

These competing positions should be considered against the backdrop of the liberal policy in favor of amendment and joinder reflected in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *cf.* Fed. R. Civ. P. 1 ("[The Rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). As the Supreme Court instructed, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966).

## **CONCLUSION**

WHEREFORE, Wyers Products respectfully requests that the Court deny Cequent's Motion to Dismiss [#23] in its entirety; grant the relief requested in Wyers Products' Motion to Amend [#27]; and award such other relief as the Court deems just and proper.

Date: February 22, 2013.

Respectfully submitted,

LATHROP & GAGE LLP

 s/ *Alexander C. Clayden*
Aaron P. Bradford
Alexander C. Clayden
US Bank Tower
950 17th Street, Suite 2400
Denver, Colorado 80202
Phone:   (720) 931-3200
Fax:      (720) 931-3201
Email:   abradford@lathropgage.com
           aclayden@lathropgage.com

*Attorneys for Plaintiff Wyers Product Group*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2013, I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(1)** via ECF which will send notification of such filing to the following:

David B. Cupar
Matthew J. Cavanagh
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

s/*Linda Heersink*
Linda Heersink