**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation,

Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

Defendant.

---

**WYERS PRODUCTS GROUP, INC.'S OPENING**
**CLAIM CONSTRUCTION BRIEF**

---

Plaintiff Wyers Products Group, Inc. ("Wyers Products"), by and through its attorneys, LATHROP & GAGE, LLP, respectfully submits the following Opening Claim Construction Brief. Proposed Plaintiff, Phillip Wyers, joins in this Brief:

**I.     INTRODUCTORY STATEMENT**

The present matter involves claims of patent infringement regarding two United States Patents issued to Phillip Wyers under which Wyers Products has the sole and exclusive rights to manufacture and sell commercial embodiments. In general, the patents cover towing accessories used to secure and tow loads of varying sizes. The patents cover products sold both by Wyers Products and by defendant Cequent Performance Products, Inc. ("Cequent") through retail locations such as Walmart, Home Depot, AutoZone, Bass Pro Shop, Cabella's and Advanced Auto Parts. While certainly not dispositive of the scope of the claims allowed by the United States Patent & Trademark Office, the following

figures provide the Court with context for the universal towing system claimed in Claims 23 and 27 of United States Patent 6,672,115[1]:



Fig.3

Fig.4

Fig.1

Fig.11

Fig.12

Different from the load bearing and load sustaining structures depicted above, the towing lock accessory described in United States Patent 7,121,121 covers devices used to secure trailers and other towing devices when they are stationary and decoupled from a hitch bar (as depicted in Figure 2):



Fig.2

---

[1] The universal towing system described in Claims 23 and 27 was not at issue in *Wyers v. Master Lock, Inc.* and were therefore not the subject of the Federal Circuit's opinion issued on July 20, 2010 invalidating certain claims of the '115 patent.

The '115 patent and the '121 patent are attached hereto as Exhibit 1 and Exhibit 2, respectively.

## II.    LAW OF CLAIM CONSTRUCTION

A patent infringement analysis involves two steps. Cordis Corp. v. Boston Scientific Corp., 658 F. 3d 1347, 1354 (Fed. Cir. 2011); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). First, the court must determine the meaning and scope of the patent claims. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996). Second, the fact finder must then compare the accused device or method to the properly construed claims to determine whether the device infringes. Cordis Corp., 658 F. 3d at 1354; Cybor Corp., 138 F.3d at 1454. This memorandum discusses only the first analysis of claim construction for the '938 Patent.

The court performs claim construction as a question of law. Markman, 517 U.S. at 372 (holding that "the construction of a patent, including terms of art within its claims, is exclusively within the province of the court"). In construing claims, the court should arrive at a "fixed, unambiguous, legally operative meaning to the claim" for eventual comparison to the accused devices to resolve the question of infringement. Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1367 (Fed. Cir. 2004). "[T]he claims of a patent define the invention to which the patentee is entitled to the right to exclude." Phillips, 415 F.3d at 1312.

In interpreting a term within a claim, courts consider other language in the claim, other claims in the patent, and claims in related patents. Wilson Sporting Goods Co. v. Hillerich & Brandsby Co., 442 F.3d 1322, 1329 (Fed. Cir. 2006) (wherein the term "rigid" to modify "insert" in one claim implied that "insert" is not

inherently rigid because it was also used solitarily in other claims).  Generally, a court gives the words of a claim their "ordinary and customary meaning," i.e., "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application."  Id. at 1312-1313; see also Am. Piledriving Equip., Inc. v. Geogroup, Inc., 637 F. 3d 1324, 1332 (Fed. Cir. 2011); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (en banc).

"Claim construction begins with the language of the claims."  Research Plastics, Inc. v. Federal Packaging, Corp., 421 F.3d 1290, 1295 (Fed. Cir. 2005) (cited by Phillips, 415 F.3d at 1314).  Importantly, the Federal Circuit directs courts to give effect to *all* the terms in a claim:

> Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.

Bicon, Inc. v. The Straumann Co., 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting proposed claim construction that would treat claim terms as meaningless); see also Mangosoft, Inc. v. Oracle Corp., 525 F.3d 1327, 1330-31 (Fed. Cir. 2008) (affirming lower court's rejection of proposed construction that renders a claim term superfluous and "ascribes no meaning to the term").

Where the ordinary and customary meaning of a claim term is not apparent, the term's special meaning may be divined from other sources.  Those sources include "the words of the claims themselves, the remainder of the

specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Phillips, 415 F.3d at 1314 (quoting Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n, 383 F.3d 1352, 1364 (Fed. Cir. 2004) (other citations omitted).

## III. PROCEDURAL BACKGROUND AND CEQUENT'S DECISION TO DECLINE TO PARTICIPATE IN CLAIM CONSTRUCTION

To this point, Cequent has declined to participate in claim construction, having proposed no terms for construction and having lodged no objection to the constructions proposed by Wyers Products. Wyers Products respectfully requests that the Court now enter the constructions proposed in Tables 1 and 2 of Wyers Products Group Claim Construction Statement timely filed on April 26, 2013. [#___].

By way of background, this Court ordered that the parties submit a Joint Claim Construction Statement setting forth the terms for construction. [#5]. The Court ordered that the parties set forth the constructions upon which the parties agree as well as the disputed constructions. *Id.* As Cequent filed its Motion to Dismiss (now withdrawn) on December 12, 2012, the Joint Claim Construction Statement was initially due on March 12, 2013. On March 8, 2013, the Court ordered that the parties submit the Joint Claim Construction Statement on or before April 26, 2013 in response to Cequent's request for a 30-day extension of time. [#31].

On April 26, 2013, Wyers Products submitted its Claim Construction Statement. Cequent declined to participate in the preparation of the Claim Construction Statement. On April 5, 2013, Wyers Products requested Cequent's

input for the Joint Claim Construction Statement in anticipation of the April 26, 2013 deadline. *See* Exhibit 3. On April 12, 2013, counsel for Cequent suggested that the parties move the deadline 60 days so that it could ascertain Wyers Products' position on infringement. *See* Exhibit 4. On April 12, 2013, the undersigned reminded Cequent that it included infringement contentions in Paragraphs 25 and 35 of the Complaint and First Amended Complaint. *See* [##1 & 13]. On April 15, 2013, Cequent complained, without basis, that the infringement contentions contained in the complaint were not sufficiently detailed to allow it to determine what terms should be construed by the Court. *See* Exhibit 5. Cequent suggested that if Wyers Products would produce more detailed infringement contentions by April 16, 2013, it could participate in the production of the Claim Construction Statement. *Id.* On April 16, 2013, Wyers Products produced a 49-page document, including a 41-page PowerPoint Presentation setting forth its positions on infringement. *See* Exhibit 6. On April 17, 2013, counsel for Wyers Products and Cequent conferred regarding discovery. Despite having received the document attached here as Exhibit 6, Cequent refused to discuss its *Markman* position during that call, or since. *See* Exhibit 7, Decl. of Aaron Bradford. On April 18, 2013, Cequent filed a contested motion to further extend the deadline for submission of the Joint Claim Construction Statement. [#35]. Wyers Products objected and the Court has not yet extended the deadlines as requested by Cequent.

## IV.    THE '115 PATENT: THE UNIVERSAL RECEIVER LOCK

Wyers Products has identified 10 phrases within the '115 patent for construction by the Court.  Support for these constructions can be found in the specifications of the '115 patent in Columns 7, 8 and 9.  One of ordinary skill in the art of automotive locking design would interpret these phrases as construed by Mr. Wyers and Wyers Products.  *See* Exhibit 8, Declaration of Phillip Wyers. As Cequent has not objected to these constructions, nor has it proposed alternative constructions, further analysis is not necessary at this time.  Wyers Products therefore respectfully requests that the court enter the following constructions of the following phrases of Claims 23 and 27 of the '115 Patent:

| | **Term or Phrase for Construction from Claim 23 of the '115 Patent** | **Wyers Products' Proposed Construction** |
|---|---|---|
| | **TABLE 1** | |
| 1 | first hitch bar and a first hitch receiver | "Class II hitch bar and a Class II hitch receiver capable of towing 5000 lbs when properly assembled" |
| 2 | first apertures of a first size | "holes in the Class II hitch bar and Class II hitch receiver having ½ inch diameter" |
| 3 | aligned for registration | "when the Class II hitch bar is inserted into the Class II hitch receiver, the ½ inch diameter holes align to allow for insertion of a hitch pin" |
| 4 | second hitch bar and second hitch receiver | "Class III/IV hitch bar and Class III/IV hitch receiver capable of towing 10,000 lbs when assembled" |
| 5 | second apertures of a first size | "holes in the Class III/IV hitch bar and Class III/IV hitch receiver having 5/8 inch diameter" |

| 6 | aligned for registration | "when the Class III/IV hitch bar is inserted into the Class III/IV hitch receiver, the 5/8 inch diameter holes align to allow for insertion of a hitch pin" |
| --- | --- | --- |
| 7 | shank having first and second ends | "the portion of the locking pin that sits between the end portion and the locking head" |
| 8 | outer dimension sized and adapted for close-fitted engagement with the first apertures | "outer dimension of the shank being sized and adapted to have a close-fitted engagement with the Class II hitch bar and Class II hitch receiver for purposes of completing the system that tows 5000 lbs" |
| 9 | selective engagement with said hitch pin shank | "a sleeve that engages the shank by having an interior diameter that closely approximates the exterior diameter of the shank for purposes of ensuring that the combined shank and sleeve can tow 10,000 lbs and sustain 30,000 lbs in sheer load" |
| 10 | an outer dimension sized and adapted for close-fitted engagement with the second apertures | "outer dimension of the sleeve being sized and adapted to have a close-fitted engagement with the Class III/IV hitch bar and Class III/IV hitch receiver for purposes of completing the system that tows 10,000 lbs and sustains 30,000 lbs of sheer load" |

## V.    THE '121 PATENT: THE COUPLER LOCK

Wyers Products has identified one term within the '121 patent for

construction by the Court.  The term "orthogonally" is not commonly used and

construction by the Court will assist the jury.  As Cequent has not objected to the

proposed construction, nor has it proposed an alternative construction, further

analysis is not necessary at this time.  Wyers Products therefore respectfully

requests that the Court enter the following construction of "orthogonally" as it

appears in the '121 patent:

| TABLE 2 | | |
|---|---|---|
| | **Term for Construction from Claim 5 of the '121 Patent** | **Wyers Products' Proposed Construction** |
| 11. | <u>orthogonally</u> | "in perpendicular orientation thereto" |

Respectfully submitted this 28th day of May, 2013.

LATHROP & GAGE, LLP

By:   s/Aaron P. Bradford
       Aaron P. Bradford
       Alexander C. Clayden
       Lathrop & Gage LLP
       950 17th Street, Suite 2400
       Denver, Colorado 80202
       720.931.3200
       abradford@lathropgage.com
       aclayden@lathropgage.com

***Attorneys for Plaintiff Wyers Products Group, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify on this 28th day of May, 2013, a true and correct copy of the foregoing **WYERS PRODUCTS GROUP, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** was filed via CM/ECF with a copy served electronically upon:

David Cupar, Esq.             email: dcupar@mcdonaldhopkins.com
600 Superior Avenue East
Suite 2100
Cleveland, Ohio 44114

s/Aaron P. Bradford