**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02640-REB

WYERS PRODUCTS GROUP, et al.,

       Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

       Defendant.

---

MEMORANDUM IN SUPPORT OF
CEQUENT'S RENEWED MOTION TO PARTIALLY DISMISS UNDER RULE 12(B)(6)

---

There is a fatal flaw with plaintiffs' case: the Federal Circuit declared one of the two patents they assert against Cequent, U.S. Patent No. 6,672,115 (the "Sleeve Patent"), invalid as obvious. *See Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010). By law, patents claiming obvious subject matter—such as the Sleeve Patent—are invalid and unenforceable. Plaintiffs Wyers Products Group, Inc. and Philip W. Wyers (collectively, "Wyers") hope to proceed on the technicality that the Federal Circuit did not specifically address the two claims of the Sleeve Patent that they now assert. The only reason, however, the Federal Circuit did not address those claims is because Wyers did not assert them in the prior *Master Lock* case. Had it done so, they too would have been invalidated because they claim the same sleeved hitch pin concept that the Federal Circuit declared obvious as a matter of law.

The Court should dismiss Wyers' claim of infringement of the Sleeve Patent entirely, and with prejudice, based on the collateral estoppel effect of *Master Lock*.

{4506110:}

Alternatively, the Court should dismiss Wyers' claim of induced infringement of claim 23 of the Sleeve Patent because Wyers does not (and cannot) plausibly allege, as it must, that: (i) a Cequent consumer directly infringed claim 23; (ii) Cequent did something to induce that infringement with knowledge that the induced act would infringe; or (iii) Cequent intended to encourage infringement.

## Background

### I. The Sleeve Patent

Wyers asserts two patents here: the Sleeve Patent and an unrelated patent that is not addressed by this motion: U.S. Patent No. 7,121,121. (*See* Am. Compl. ¶¶ 18-19.) The Sleeve Patent concerns hitch pin locks that secure male hitch bars to female hitch receivers on motor vehicles. Barbell-shaped hitch pin locks are inserted through aligned apertures in the male and female hitch pieces and then locked in place, as shown in Figure 1 of the Sleeve Patent:



The Sleeve Patent purports to have an improved hitch pin lock design by using a sleeve to increase the diameter of the pin's shank (part **30**), thereby allowing for "a single locking unit [to] be used for a number of varied size locking requirements." (Sleeve Patent, col. 2, ll. 32-34.) Figures 11 of the Sleeve Patent shows how the sleeveless shank fits snuggly in a smaller apertured hitch assembly:



And Figure 12 shows how the sleeve (part **52**) allows for the same shank (part **30**) to fit snuggly in a larger apertured hitch assembly:



## II. The *Master Lock* Case

In *Master Lock*, which originated before this Court, the Federal Circuit held that the sleeved hitch pin concept—the only purported inventive feature of the patent—was obvious. On that basis, the Federal Circuit invalidated every claim that Wyers asserted against Master Lock: claims 15, 19, 21, and 24. *See Master Lock*, 616 F.3d at 1233.

As the Federal Circuit noted, Wyers admitted that the prior art disclosed every limitation of the Sleeve Patent claims except the use of a sleeve to adjust the thickness of the shank. *Master Lock*, 616 F.3d at 1236. Therefore, the question before that court was simple: was it obvious to add a sleeve to adjust the operative thickness of a shank. *Id.* To answer that question, the Federal Circuit relied upon the prior art "Down patent," which taught the use of "sleeves of different external diameter to 'provide[] for the attachment of trailer towing eyes of different internal diameter'":



*Id.* at 1241 (quoting Down patent, col. 3, ll. 20-23.)

The Federal Circuit observed that "[w]hen the sleeve [in Down] is used, the pin accommodates larger diameter towing eyes; without the sleeve, the pin fits smaller ones." *Master Lock*, 616 F.3d at 1241. It was obvious, the court ruled, to apply the sleeve idea from Down to the hitch pin lock claimed by the Sleeve Patent:

> We conclude that it was a matter of common sense to combine the Down patent with the prior art barbell locks in order to arrive at the invention claimed in the [Sleeve Patent], and that one of ordinary skill in the art would have had a reasonable expectation of success in doing so.

*Id.* at 1243. The Federal Circuit then invalidated the asserted Sleeve Patent claims. *Id.* Because all of the claims of the Sleeve Patent rest on the same sleeved hitch pin concept declared obvious, the collateral estoppel effect of *Master Lock* invalidates all of the claims of the Sleeve Patent, including claims 23 and 27 that Wyers now asserts.

### Law and Argument

**I.    A Complaint Must State A Plausible Claim**

The court must dismiss an action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a plausible claim only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* While the court presumes at the pleading stage that factual allegations are true, it does not presume the truth of conclusory allegations, legal conclusions couched as factual allegations, or implausible inferences. *See Iqbal*, 556 U.S. at 678-79. The pleading must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

## II. Collateral Estoppel Bars Wyers From Suing Again On The Sleeve Patent

### A. Collateral Estoppel Can Apply To Unadjudicated Patent Claims

Collateral estoppel, or issue preclusion, bars a party from relitigating an issue decided against that party in an earlier action. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999). The U.S. Supreme Court has held that once patent claims are declared invalid, the patentee is collaterally estopped from asserting them against others. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 350 (1971).

The U.S. Court of Claims—the predecessor to the Federal Circuit[1]—has confirmed that a prior invalidity determination also applies by collateral estoppel to unadjudicated claims in the patent if the validity issues are substantively the same for the unadjudicated and adjudicated claims. *See Westwood Chemical, Inc. v. United States*, 525 F.2d 1367, 1375 (Ct. Cl. 1975); *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct.Cl. 1976). Collateral estoppel applies to the unadjudicated claims because "[i]t

---

[1] *See Slattery v. U.S.*, 635 F.3d 1298, 1300 n.1 (Fed. Cir. 2011).

is the issues litigated, not the specific claims around which the issues were framed that is determinative." *Westwood*, 525 F.2d at 1372. Because it is a patent law issue, Federal Circuit law, including *Westwood* and *Bourns*, governs the preclusive effect of a prior patent invalidity determination. *See Pharmacia*, 170 F.3d at 1381 n.4.

Applying collateral estoppel to unadjudicated claims makes sense because, as *Bourns* noted, claims in patents are routinely "repeated and duplicated, varying one from the other only in certain minor details," so that "differently worded claims may present identical issues" with regard to validity. *Bourns*, 537 F.2d at 491-92. "The realities of patent practice suggest that, merely because the invention, the patentee's contribution to the art, is presented in varying language or varying combinations of elements does not necessarily mean that the issues bearing on the nonobviousness of that concept or contribution vary from one claim to the next." *Id.* at 492.

### B. Whether Collateral Estoppel Applies To Unadjudicated Claims Depends Upon A Comparison With The Invalidated Claims

The Court decides whether collateral estoppel applies to a previously unadjudicated claim by comparing it to the invalidated claims. *Westwood*, 525 F.2d at 1375. If the scope of the claims is substantively the same, then there are no new issues on obviousness, and collateral estoppel automatically bars litigation of the unadjudicated claims. *Id*. Otherwise, the court must "go a step further" to decide whether differences between the claims lends any patentable significance to the claimed invention. *See id.*; *Bourns*, 537 F.2d at 490; *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 322 (S.D.N.Y. 2004).

In *Bourns*, for example, collateral estoppel invalidated claims that were not patentably distinct from claims previously judged invalid. There, a prior court had invalidated claims by finding that a claimed mounting hole concept was obvious. *Bourns*, 537 F.2d at 489, 494. In a later case, the patentee sued on unadjudicated claims from the same patent that recited the use of hollow rivets in the mounting holes. Because the hollow rivets were already known, that feature did not distinguish the claimed combination from the prior art, and therefore lent no patentable significance to the mounting hole concept previously declared obvious. *Id.* Accordingly, the *Bourns* court collaterally estopped patentee from suing on the unadjudicated claims. *Id.*

Similarly, other courts have applied collateral estoppel to unadjudicated claims where the differences between them and previously invalidated claims lend no patentable significance to the claimed invention. *See, e.g.*, *Medinol*, 341 F. Supp. 2d at 321-23; *Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04-cv-1223, 2012 WL 2196083, at *9-13 (N.D. Ohio June 15, 2012); *CollegeNet, Inc. v. ApplyYourself, Inc.*, No. CV-02-484-HU, 2008 WL 4793683, at *11-35 (D. Or. Oct. 28, 2008).

C. <u>Collaterally Estopped Claims Should Be Dismissed Early</u>

The Court may take judicial notice of the relevant filings, orders, and judgments in a prior case without converting a motion to dismiss to one for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Therefore, a Rule 12(b)(6) motion is a proper mechanism for dismissing claims, such as the present ones, barred by collateral estoppel. *See, e.g.*, *Argueta-Pereira v. Ochoa*, No. 11-CV-02720-REB-CBS, 2012 WL 2564813, at *2 & n.3 (D. Colo. July 2, 2012) (dismissing on res

judicata grounds); *Novo Nordisk, Inc. v. Paddock Labs., Inc.*, 797 F. Supp. 2d 926, 934 (D. Minn. 2011) (dismissing patent infringement claims based on collateral estoppel).

In fact, Rule 12(b)(6) is ideal for disposing of collaterally estopped claims because it and collateral estoppel share the same goal: avoiding needless cost and effort. *See Twombly*, 550 U.S. at 558 (noting that Rule 12(b)(6) is intended to stop implausible claims "at the point of minimum expenditure of time and money by the parties and the court"); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (collateral estoppel "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, [etc.]").

D.  **Collateral Estoppel Bars Wyers From Asserting The Sleeve Patent**

The Federal Circuit already decided that: (i) the only purported inventive feature of the Sleeve Patent is the use of a sleeve to adjust the operative diameter of a hitch pin lock; and (ii) the sleeve feature was obvious as a matter of law. Specifically, the Federal Circuit determined that:

- The sleeve was the only purportedly inventive feature claimed by the patent. *Master Lock*, 616 F.3d at 1234-35.

- "Wyers admitted that [the prior art] disclosed every limitation of the [Sleeve Patent] claims except the use of the sleeve to adjust the operative thickness of the shank." *Id.* at 1236.

- "It is simply a matter of common sense that [a] sleeve . . . could be combined with a barbell-shaped hitch pin lock in order to address the known problem of different sizes in standard hitch receivers and the shelf-space problem experienced by retailers." *Id.* at 1241.

Because the Federal Circuit held that the sleeved shank concept was obvious, all of the claims of the Sleeve Patent, including the unadjudicated claims, suffer the same

fate: invalidity. Wyers, therefore, is collaterally estopped from relitigating the validity of the two claims it asserts here, claims 23 and 27.

### 1. Claim 23 Is Invalid By Collateral Estoppel

Wyers is collaterally estopped from asserting claim 23 because there is no patentably significant difference between it and the four claims (claims 15, 19, 21, and 24) invalidated by *Master Lock*. For example, claim 23 and invalidated claim 21 are nearly identical as they both recite the same limitations, including a "locking device" with a "shank portion," "a latch portion," "a stop portion," "a locking head," a "sleeve," and two sets of "apertures." Significantly, both claims—and the other invalidated claims—recite the same adjustable sleeve feature that the Federal Circuit declared obvious: (i) a sleeveless shank that fits snug within a smaller aperture;[2] and (ii) a sleeve that can be placed over the shank to fit snug within a larger aperture.[3]

Also, the hitch "system" of claim 23 has no patentable significance because the Federal Circuit ruled that applying the sleeved shank to a hitch application was obvious by declaring: "[i]t is simply a matter of common sense that the sleeve used in Down, . . . could be combined with a barbell-shaped hitch pin lock in order to address the known problem of different sizes in standard hitch receivers." *Master Lock*, 616 F.3d at 1241.

---

[2] Invalidated claim 21 recites that the "sleeve [is] removable from said shank such that said shackle has another operative thickness dimension smaller [than the sleeved dimension] for close-fitted insertion within [the smaller of two] apertures." (col. 11, ll. 43-47.) Claim 23 similarly recites that the "hitch pin shank ha[s] . . . a shank outer dimension sized and adapted for close-fitted engagement with the first [and smaller] apertures." (col. 12, ll. 8-10.)

[3] Invalidated claim 21 recites that the "sleeve [is] carried on said shank such that said shank and sleeve together provide said shackle with one operative thickness dimension for close-fitted insertion within [the larger of two] apertures." (col. 11, ll. 39-42.) Claim 23 recites a "sleeve for selective engagement with said hitch pin shank and having an outer dimension sized and adapted for close-fitted engagement with the second [and larger] apertures." (col. 12, ll. 14-17.)

Indeed, the Federal Circuit's invalidation of claim 15 as obvious confirms that applying the sleeved shank of invalidated claim 21 to a "system" of two sets of hitch assemblies with different aperture sizes, as claim 23 does, has no patentable significance. Claim 15, which the court described as "representative" of the claims in the Sleeve Patent, *see Master Lock*, 616 F.3d at 1235, claims a "hitch pin device" where a "sleeve" can be placed over the shank of the pin "to selectively vary the thickness dimension thereof to match the size diameter of the hitch bar and the receiver apertures to permit snug engagement therewith." (Sleeve Patent, col. 10, ll. 33-37.) The Federal Circuit invalidated claim 15 (and the other invalidated claims) by finding, as a matter of law, that it was obvious to use the sleeve concept to allow for a single pin to snugly fit within multiple sets of hitch assemblies with varying-sized apertures. *Master Lock*, 616 F.3d at 1241-43. Thus, claim 23 raises no new issues of invalidity.

Because the Federal Circuit has already considered and declared obvious the concept of using a sleeved hitch pin to fit different aperture sizes in hitch assemblies, collateral estoppel renders claim 23 invalid and bars Wyers from suing on that claim.

### 2. Claim 27 Is Invalid By Collateral Estoppel

Claim 27 depends from claim 24, which was invalidated as obvious in the *Master Lock* case. Claim 27 adds a single feature to invalidated claim 24: the "length of said shank and the sleeve length are substantially the same." (Sleeve Patent, col. 12, ll. 56-57.) The Federal Circuit, however, expressly found that having a sleeve cover the entire shank is not a patentable feature. *Master Lock*, 616 F.3d at 1243. Specifically, the Federal Circuit acknowledged that in the prior art Down patent, "the sleeve covers only

the middle portion of the pin, whereas in the patents-in-suit, the sleeve covers the entire shank." *Id*. But the court expressly found that distinction "slight" and not "material." *Id*.

Thus, the Federal Circuit already decided that the sleeve length recited in claim 27 lends no patentable significance to the combination of invalidated claim 24. Thus, claim 27 does not recite any patentable subject matter and is invalid for obviousness based on the collateral effect of *Master Lock*. The Court should dismiss all of Wyers' infringement claims asserting claim 27 accordingly.

### III. Wyers Fails To State A Claim For Induced Infringement Of Claim 23

While the Court should dismiss claims 23 and 27 on collateral estoppel grounds, there is a separate reason to dismiss claim 23: lack of a plausible allegation of induced infringement. To state a claim for induced infringement, Wyers must plausibly allege: (i) direct infringement by another; (ii) that Cequent knowingly induced that infringement; and (iii) that Cequent had specific intent to encourage infringement. *See ACCO Brands, Inc. v. ABA Locks Mfr.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). Wyers fails to plausibly allege induced infringement of claim 23 for at least two separate reasons.

#### A. Wyers Fails To Plausibly Allege Direct Infringement By A Third-Party

First, Wyers has not plausibly alleged that a Cequent customer directly infringed claim 23 of the Sleeve Patent. There can be no direct infringement unless a customer used each and every element of claim 23 together as a "system." *See Centillion Data Sys., LLC v. Qwest Communications Intern., Inc.*, 631 F.3d 1279, 1283-84 (Fed. Cir. 2011) ("direct infringement by 'use' of a system claim 'requires a party . . . to use each and every . . . element of a claimed [system]'"). Thus, direct infringement of claim 23

would require a customer to use a "system" with two separate hitch assemblies, with each assembly having different sized aligned apertures, and a hitch pin that fits snuggly in one of the assemblies and fits snuggly in the other assembly when a sleeve is placed over the shank of the pin. (*See* Sleeve Patent, col. 11, ll. 55-59, col. 12, ll. 1-6, 13-16.)

Wyers appears to allege that customers have directly infringed the Sleeve Patent based on its allegation that Cequent independently sells components of the system recited by claim 23. (*See* Am. Compl. ¶ 24.) Wyers, however, must do more; it must identify a customer who has used all three of those separate products together as a system or, at a minimum, provide factual allegations from which it is reasonable to infer that such system use has occurred. (*See* Sleeve Patent, col. 11, l. 55, requiring a "system" of two different hitch assemblies and a sleeved hitch pin). Wyers, however, does not (and cannot) provide any factual allegations to plausibly suggest that any customer has used an adjustable Cequent hitch pin and two differently-apertured hitch assemblies together in a system. Nor does Wyers plausibly allege (nor can it) that Cequent sells those products together as a system.

In fact, the nature of the sleeved hitch pin product makes it implausible that a single Cequent customer would use it as part of a system with two differently-apertured hitch assemblies. Instead, as Mr. Wyers admitted, the benefit of the sleeved hitch pin is that a single product can satisfy the needs of two different customers with different hitch size requirements. *See Master Lock*, 616 F.3d at 1235, 1241. This allows retailers, whose shelf space is at a premium, to stock a single hitch pin to satisfy two different customer demands. *See id.* (Mr. Wyers admitting that the point of selling this lock is to

save retailers from having to stock two different size locks on shelves). Thus, Cequent selling an adjustable hitch pin is entirely compatible with, and more likely explained by, its customer's non-infringing use of that pin for a single hitch assembly, rather than in a system of two different size hitch assemblies as recited in claim 23. Those alleged sales, therefore, cannot be actionable as inducement. *See Iqbal*, 556 U.S. at 1950 (alleging conduct consistent with unlawful activity is not enough when that conduct is compatible with and more likely explained by lawful conduct).

Figure 3 in Wyers' amended complaint highlights its failure to plausibly allege underlying direct infringement. Wyers contends that Figure 3 shows how Cequent sells an infringing "system." (*See* Am. Compl. ¶¶ 23-24.) But Cequent did not create–and, more importantly, has never used–that figure. Instead, Wyers fabricated Figure 3 by apparently using a computer to copy images of three different Cequent products, to join them together, and to add circles, lines, and arrows to create the illusion that Cequent instructed its customers to use all three products together as a system. As Cequent's actual catalog shows, it markets the accused products individually and not as a system. (Catalog, attached as **Exhibit A**.)[4] The Court should dismiss Wyers' claim for induced infringement of claim 23 for failure to plausibly allege direct infringement by a third party.

**B. Wyers Also Fails To Plausibly Allege That Cequent Knowingly Induced Direct Infringement Or That It Intended To Do So**

The Court separately should dismiss induced infringement as to claim 23 because Wyers does not plausibly allege that Cequent: (i) knew that a customer was

---

[4] The Court may consider Cequent's catalog sheets without converting this motion to one for summary judgment because Wyers incorporated the Reese catalog into its amended complaint by reference. (*See* Am. Compl. ¶ 14.)

using two different hitch assemblies and an adjustable hitch pin together as a system; (ii) knew that such conduct infringed the Sleeve Patent; (iii) had specific intent to encourage that infringement; or (iv) did anything to encourage such infringement. Courts correctly dismiss claims of induced infringement that fail to plausibly allege those indispensable elements. *See, e.g., Gharb v. Mitsubishi Elect. Auto., Inc.*, No. 10C07204, 2012 WL 1986435, at *5-7 (N.D. Ill. June 4, 2012) (dismissing induced infringement claim under Rule 12(b)(6)); *Brandywine Communications Techs., LLC v. T-Mobile USA, Inc.*, No. 6:12-cv-272, 2012 WL 5266049, at *7-8 (M.D. Fla. Oct. 24, 2012) (same).

Alleging that Cequent sells products that can allegedly be combined to form an infringing system is not enough. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) ("mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven"). The Court should dismiss induced infringement of claim 23 on this additional ground.

## Conclusion

For the foregoing reasons, the Court should dismiss all of Wyers' claims for infringement of U.S. Patent No. 6,672,115 (the Sleeve Patent) with prejudice.

Dated: September 24, 2013

Andrew J. Petrie
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202-5596
petriea@ballardspahr.com

*Counsel for
Cequent Performance Products, Inc*

Respectfully submitted,

  s/ David B. Cupar
David B. Cupar
Matthew J. Cavanagh
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114
t 216.348.5730 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

      I hereby certify that on September 24, 2013, I electronically filed the foregoing **Memorandum in Support of Cequent's Renewed Motion to Partially Dismiss Under Rule 12(b)(6)** with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following:

Aaron P. Bradford
Lathrop & Gage, LLP
950 Seventeenth Street
Suite 2400
Denver, Colorado 80202
abradford@lathropgage.com
t 720.931.3214
f 720.931.3201

*Counsel for*
*Plaintiffs*

                                                 s/ David B. Cupar
                                                *Counsel for*
                                                *Cequent Performance Products, Inc.*