**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation, and
PHILIP W. WYERS,

    Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC.,

    Defendant.

---

**PLAINTIFFS' REPLY IN SUPPORT OF ITS'
OPENING CLAIM CONSTRUCTION BRIEF**

---

Plaintiffs Philip W. Wyers and Wyers Products Group, Inc. ("Wyers"), by and through its attorneys, LATHROP & GAGE, LLP, respectfully submit the following Reply in Support of its Opening Claim Construction Brief.

### I.    INTRODUCTORY STATEMENT

Wyers respectfully requests that the Court enter their proposed constructions as being supported by the presented evidence. This patent infringement case relates to Cequent's manufacture, importation and sale of hitch bars, hitch receivers and convertible receiver locks. In April of 1999, Wyers disclosed the use of a sleeve that successfully increased the load bearing capacity of a standard ½ inch receiver lock from 5,000 lbs to 10,000 lbs. The shear load capacity of the standard ½ receiver lock also increased from 15,000 lbs, to over 30,000 lbs. Prior to disclosing his invention, no manufacturer offered or attempted to offer a receiver lock that featured anything other

than a solid steel shank.  As a result, receiver lock manufacturers uniformly and universally offered **solid** ½ inch diameter shanks for Class II receivers and **solid** 5/8-inch diameter shanks for Class III, IV and V receivers.

Claim 23 is the only claim in the '115 Patent that is narrowly drawn to specifically cover the above invention, and nothing more.  Claims 1-14, 19-22 and 24-27 broadly relate to pins and locks with no reference to hitch bars, receivers or towing in any respect.  In Column 2 of the Patent, Wyers states "the present invention may also be used as a coupler lock, as a watercraft lock, cross bolt gate lock, spare tire lock, bike carrier lock, a cable lock and any other similar locking structure."  While the Federal Circuit did address the size altering features of these latter claims, the Federal Circuit did not address the load bearing and load increasing aspects of Claim 23.

Cequent's continued reliance upon the Federal Circuit's decision is misplaced. While Claims 15 and 23 relate to the field of hitch locks, these towing specific claims are quite different.[1]  Claim 15 is tied to a single hitch bar/receiver.  Claim 23 expressly requires two specific sets of hitch bars and receivers with significantly different load bearing requirements.   Claim 15 therefore does not address, nor claim, a locking device that can render operable two different towing systems.  During prosecution, Wyers expressly limited the hitch bars and receivers claimed in Claim 23 to those featuring "standard bore sizes."  (Ex. 4 as attached to the Opening Brief, Response to

---

[1] In addition to the above, Claim 15 and Claim 23 contain critical differences that support the continued validity of Claim 23. Unlike Claim 15, Claim 23 requires that the "shank outer dimension [be] sized and adapted for close fitted engagement with the first aperture." Claim 15 places no limitation on the dimension of the shank.   Claim 15 also requires the use of a "retaining apparatus operative to resist removal of the sleeve" whereas Claim 23 relies solely upon the sleeve's selective engagement with the hitch pin shank. Claim 23 relies solely upon this selective engagement to create the load increasing features the ½ inch shank and the sleeve combo.

Office Action of February 13, 2002, page 131)  As there are only two sizes that are used by the industry, the "first hitch bar" is tied to the towing capacities associated with standard ½ inch apertures while the "second hitch bar" is tied to the towing capacities associated with the 5/8-inch apertures.  (Ex. 9, Wyers Dep., pp 25-31)  Wyers outlined these capacities and sizes in his unrebutted affidavit.  (Ex. 3, ¶ 9-16)  While Cequent objects to Wyers' affidavit, Cequent has offered no contrary testimony or evidence.  Wyers' constructions are supported by the evidence and his claim disclaimer.

Regarding the '121 Patent, Cequent's Response Brief places undue emphasis on its non-infringement arguments, rather than on determining the actual meaning and scope of the written claim terms. Cequent's constructions must be rejected as they seek to import limitations from the specifications and figures when Claim 5 does not so require.  As the Federal Circuit has rejected this method of construction, the Court should refrain from adopting Cequent's proposed constructions.

## II.   CONSTRUCTION OF CLAIM TERMS

**A.   THE '115 PATENT**

### 1.   Wyers stipulates to the entry of Judge Babcock's Claim Construction

Cequent seeks to have this Court enter constructions agreed to by Wyers and Master Lock in the <u>Wyers v. Master Lock</u> matter. Wyers agrees.  There is no real dispute that Cequent's products contain the elements contained within the five terms identified for construction Page 4-6 of Cequent's Response Brief.

### 2.   Cequent's construction of "System" should be rejected.

The word "system" appears in the preamble to Claim 23 and should not be

construed as Cequent requests. "Generally, the preamble does not limit the claims." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1346 (Fed. Cir. 2002). "The purpose of a claim preamble is to give context for what is being described in the body of the claim; if it is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim . . ., we do not construe it to be a separate limitation." Symantec Corp. v. Computer Associates Int'l, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008). A preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997). The preamble language will provide additional limitations when there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." Symantec Corp., 522 F.3d at 1288.

This Court should decline Cequent's invitation to construe the preamble. As Wyers "defines a structurally complete invention in the claim body", the Federal Circuit instructs that further construction of the preamble is inappropriate. Cequent does not offer any evidence to suggest that the prosecution history requires a different result, as there is none.

Further, Cequent proposes to limit Claim 23 by offering a construction of the preamble using an alleged construction from a computer systems patent at issue in Centillion Data Systems LLC v. Qwest Communications International Inc., 631 F.3d 1279, 1284 (Fed. Cir. 2010). Despite Cequent's statement to the contrary, the Federal

Circuit did not define "system" in Centillion. Rather, the Court addressed the District Court's narrow construction of the term "use":

> We hold that to "use" a system for purposes of infringement, a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it. NTP, 418 F.3d at 1317. The district court correctly determined that this definition from *NTP* was the proper one to apply. *Opinion* at 22.
>
> The district court erred, however by holding that in order to "use" a system under § 271(a), a party must exercise physical or direct control over each individual element of the system. The "control" contemplated in *NTP* is the ability to place the system as a whole into service. In other words, the customer in NTP remotely "controlled" the system by simply transmitting a message. 418 F.3d at 1317. That customer clearly did not have possession of each of the relays in the system, nor did it exert the level of direct, physical "control" that the district court requires. To accept the district court's interpretation of "use" would effectively overturn NTP because the predicate "use" in that case would no longer fall under the definition of "use."  Centillion, 631 F.3d at 1284.

Finally, Cequent's construction would improperly render Claim 23 inoperable. Under Cequent's construction, the hitch pin, first hitch bar, first hitch receiver, second hitch bar and second hitch receiver and sleeve must "interact and function together as a whole." Claim 23 clearly contemplates two separate towing systems (first hitch bar/receiver set and second hitch bar/receiver set), with different towing capacities, and a receiver lock that can be used in both.  To construe "system" as proposed by Cequent would be contrary to the specifications, prosecution history and the claim language itself.

### 3. **Claim Terms Identified by Wyers for Construction (Claim 23)**

Claim 23 was not at issue in the *Master Lock* case.  As Judge Babcock did not have the opportunity to resolve disputes regarding Claim 23, construction is now necessary.  Claim 23 relates specifically to a load-bearing shank and a load-increasing

sleeve that serves as load-bearing structure(s) when inserted into one of two sets of standard hitch bars and receiver boxes.  During prosecution, Wyers disclaimed claim scope by tying Claim 23 directly to "standard bore sizes." (supra, Ex. 4)  Through the doctrine of claim disclaimer, the Court must now import these limitations into the claim language and limit Claim 23 accordingly.  Computer Docking Station Corp v. Dell, Inc., 519 F.3d 1366, 1374-75 (Fed.Cir. 2008); Research Plastics, Inc. v. Federal Packaging, Corp, 421 F.3d 1290, 1297 (Fed.Cir. 2005).  Wyers' constructions properly reflect his disclaimer of claim scope during prosecution. Id.

Wyers affidavit and deposition provide the Court with insight regarding "standard bore sizes" and how these bore sizes translate into towing capacity. (Ex. 9, Dep. Wyers, pp 26-32)  These industry standard classes translate to specific lock shank sizes and load bearing capacity requirements.  (Ex. 3, Wyers Decl. ¶¶ 9-12)  Namely, Class II towing uses ½" hitch pins, which must be capable of towing loads up to 5,000 pounds, and withstanding shear forces up to 15,000 pounds.  (Id. ¶ 9)  Class III/IV towing uses ⅝" hitch pins, which must be capable of towing loads of up to 10,000 pounds, and withstanding shear forces in excess of 25,000 pounds.  (Id. ¶ 11)  These industry requirements for towing have been in place for over thirty years, and were well understood by any artisan of ordinary skill in the art as of 2000.  (Id. ¶ 13)  While Cequent objects to Wyers' attempt to define Claim 23 to fit his prosecution history disclaimer and the realities of the industry, Cequent offers no evidence to rebut Wyers affidavit or deposition.  With no contrary evidence, and in view of a clear claim

disclaimer, the Court must enter constructions limiting Claim 23 to the standard bore sizes and associated towing capacities.

## B.  THE '121 PATENT

Cequent's arguments regarding the '121 Patent are inappropriate for two reasons. Cequent inappropriately asks the Court to prejudge the ultimate infringement analysis by seeking to have the Court construe the asserted claims with an aim to include or exclude portions of the accused products. However, a claim "is construed in the light of the claim language, the other claims, the prior art, the prosecution history and the specification, *not* in light of the accused device." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed. Cir. 1985). "It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement." Id.

Second, Cequent seeks to limit Claim 5 to the preferred embodiment. Courts must avoid importing limitations disclosed in the preferred embodiments into the patent claims. Conoco, Inc. v. Energy & Environmental Int'l, L.C., 460 F.3d 1349, 1357-58 (Fed.Cir. 2006). The embodiment and specifications are written to describe the "best mode" of the invention to a person of ordinary skill in the art. SRI Int'l, 775 F.2d at 1121. It is the claims that measure the invention, "if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims." Id. When, as here, the patentee describes the figures as "preferred embodiments" and not "the invention," the claim terms should not be limited by the figures. Chimie v. PPG Indus. Inc., 402 F.3d 1371, 1379 (Fed.Cir. 2005). Here,

Cequent's proposed constructions for Claim 5 are lengthy additions to the plain language of the claims, aimed at limiting the claim to the single preferred embodiment. Wyers urges the Court to construe Claim 5 by simply entering the plain language.

### 1. "**longitudinal throughway extending therethrough**"

Cequent's construction of the above term demonstrates its failure to appreciate the fact that Claim 5 is broader than the preferred embodiment. The preferred embodiment features a lock that engages both legs of the shank, thereby featuring locking components on both sides of the locking body. Claim 5 covers a lock that engages one leg of the shank such that it is unnecessary to have locking elements on both sides of the locking body to infringe. This critical oversight by Cequent provides insight into why its constructions are overly aggressive and should not be entered.

Cequent attempts to read two new limitations into the above language: (1) extending entirely through the lengthwise part of the body portion and (2) having openings on opposite sides. Neither limitation is required by the express claim language. The "openings" limitation is completely unsupported. "Longitudinal" is a directional term, not a term of distance. "Extends therethrough" simply requires that the throughway be imbedded within the body portion of the lock housing, with the length left open to the designer of a particular embodiment. So long as the throughway intersects with the bore and allows the locking mechanism to engage one shackle, it is long enough. To import a length requirement, when none exists, would be inappropriate. The specifications do not provide any further support for Cequent's new limitations.

Cequent's reliance upon the Figures is also misplaced. Wyers universally refers to the Figures as "preferred embodiments", not "the invention." Chimie, 402 F.3d at 1379.

### 2. "a transverse bore intersecting the throughway"

Cequent states in arguing for its construction of this term that "the intrinsic evidence is consistent with the plain language of Claim 5 that requires the bore to intersect the throughway in a transverse manner." Cequent's Response Brief at 18. Cequent has used the plain language of the claim in order to support its construction, thus acknowledging that the plain language of the claim is sufficient to adequately describe its meaning. Nowhere is there support that the bore intersects the throughway "at a 90 degree angle" and there is no functional basis as to why the claim should be limited in that manner or use the term "cavity" as oppose to "bore."

### 3. "oriented generally orthogonally"

Through its construction, Cequent attempts to require that the hitch ball <u>intersect</u> with the transverse throughway and the bore. This construction is contrary to the express language of the claim. In the very same sentence, Claim 5 expressly requires that the throughway and the transverse bore intersect while separately requiring that the hitch ball be **oriented generally orthogonally** to these structures. The "intersecting" requirement was expressly limited to the throughway and the bore. Further, the hitch ball sits atop the lock housing and does not intersect with these internal mechanisms. The specification does not contain the "intersecting" limitation: the "bore 48, hitch ball element 32 and casing are all generally orthogonal, i.e., perpendicular to one another." ('121 Patent, col. 4, ll. 4-5; col. 6, ll. 31-33)  Finally, Figure 5, among others,

demonstrates that the hitch ball does not intersect the transverse bore or throughway. Rather, the hitch ball sits in perpendicular orientation to these structures.

### 4. "**tubular casing disposed in the throughway**"

Cequent seeks to import a "separate piece" limitation through its construction of "tubular casing." Neither the claim language, nor the specification, <u>requires</u> that the tubular casing be a separately manufactured piece. While the preferred embodiment features a separate tubular casing pinned into place (Col 6, ll 56-59; Col. 8, 21-25), an equally viable method of manufacture would result in the tubular casing being cast into the throughway as part of the whole. The specifications make it clear that the tubular casing featured in the Figures is "an example." (Col 6, ll 56-59). Claim 5 covers multiple manufacturing processes by simply requiring that the throughway be tubular in shape. Without support for its additional limitations, Cequent's construction requiring the Court to read the preferred embodiment into the claims is improper and this claim term should be construed as it was issued by the Patent Office.

### 5. **Claim 7**

Wyers agrees that Cequent's products do not infringe Claim 7. As no dispute currently exists regarding this claim, construction is not necessary.

Respectfully submitted this 5th day of January, 2014.

|  |  |
|---|---|
|  | LATHROP & GAGE, LLP |
| By: | *s/ Aaron P. Bradford* |
|  | Aaron P. Bradford |
|  | 950 17th Street, Suite 2400 |
|  | Denver, Colorado 80202 |
|  | 720.931.3200 |
|  | abradford@lathropgage.com |
|  | *Attorneys for Plaintiffs Philip W. Wyers and Wyers Products Group, Inc.* |

## **CERTIFICATE OF SERVICE**

      I hereby certify on this 5th day of January, 2014, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF ITS' OPENING CLAIM CONSTRUCTION BRIEF** was filed via CM/ECF with a copy served electronically upon:

David B. Cupar
Matthew J. Cavanagh
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400 S
Denver, Colorado 80202
apetrie@featherstonelaw.com


                                        LATHROP & GAGE, LLP

                              By:    *s/ Aaron P. Bradford*
                                           Aaron P. Bradford