**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02640-REB-KMT
(consolidated with Civil Action No. 13-cv-02976-REB-KMT)

WYERS PRODUCTS GROUP, INC. et al.,

      Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC. et al.,

      Defendants.

---

## DEFENDANTS' SUMMARY JUDGMENT MOTION

Defendants Cequent Performance Products, Inc. and Cequent Consumer Products, Inc. (collectively, "Cequent") move for summary judgment against plaintiffs Philip Wyers and Wyers Products Group, Inc. (collectively, "Wyers").

Summary judgment against the '115 patent is appropriate because: (1) collateral estoppel bars Wyers from asserting claims 23 and 27 since they are materially identical to the claims in the '115 patent that the Federal Circuit previously invalidated; and (2) Cequent has never made, offered for sale, or sold the "system" recited in claim 23.

Summary judgment of no infringement of the '121 patent is appropriate because Cequent's accused coupler lock does not include: (1) a "longitudinal throughway," (2) a hitch ball "oriented generally orthogonally" to the longitudinal throughway and transverse bore, and (3) "an elongated tubular casing" – all of which are required to infringe claim 5. Also, Wyers cannot obtain pre-suit monetary damages because it failed

to continuously and systematically mark its own coupler lock products with the '121 patent prior to the suit.

Further, the Court should grant summary judgment of infringement by Wyers of four claims in Cequent's '686 patent – the claim consolidated in this case. Wyers' non-infringement contentions admit that Wyers' coupler locks include all but two limitations, and Wyers' Rule 30(b)(6) deposition testimony admits that its locks include those allegedly missing limitations. Therefore, summary judgment of infringement of the '686 patent is appropriate.

## Statement of Undisputed Facts

### I.   '115 Patent

1.    The '115 patent is directed to a receiver lock having a sleeve that is added to the shank of the lock to increase its effective diameter. (Cupar Decl., Exh. A, '115 patent.)

2.    The Federal Circuit determined that adding a sleeve on the shank of a receiver lock to increase its effective diameter was an obvious, ordinary design consideration not worthy of patent protection. *Wyers v. Master Lock*, 616 F.3d 1231, 1233 (Fed. Cir. 2010). On that basis, the Federal Circuit invalidated every claim that Wyers asserted against Master Lock: claims 15, 19, 21, and 24. (*Id.*)

3.    Wyers asserts two claims from the '115 patent: claims 23 and 27. Claim 27 depends from claim 24, which is one of the four claims invalidated by the Federal Circuit in *Master Lock*. Claim 27 further requires the sleeve to be "substantially the same length" as the shank on the lock. ('115 patent, claim 27.) The Federal Circuit already determined that the length of the sleeve versus the shank was a "slight distinction" and not material to patentability. *Master Lock,* 616 F.3d at 1242-43 ("However, we do not find these slight distinctions to be material."). Mr. Wyers, acting as his own putative technical expert, did not analyze how Cequent's receiver locks read on claim 27 or on independent claim 24 from which claim 27 depends. (Cupar Decl., Exh. B, Wyers Rpt. at ¶ 20; Cupar Decl., Exh. C, Wyers Expert Dep. 37:12-25.)

4.    Claim 23 is a "system" claim that requires all of the following components: (a) a first hitch receiver; (b) a first hitch bar; (c) a second hitch receiver; (d) a second hitch bar; (e) a receiver lock; and (f) a sleeve. ('115 patent, claim 23.)

5.    The invalidated claims identify the same limitations as does claim 23. For example, invalidated claim 15 recites the same material limitations as does claim 23 including a hitch receiver, hitch bar, an aperture on the receiver that mates with an

aperture on the bar, and the use of a sleeve on a receiver lock to fit that aperture. ('115 patent, *compare* claims 15, 19, 21, 24 *with* claims 23, 27.) And Wyers acknowledged that claim 23 does not recite any patentable or inventive feature other than the sleeve. (Cupar Decl., Exh. D, Wyers 30(b)(6) Dep. at 201:11-202:22.)

6.      Cequent does not combine all of the components identified in claim 23 together as a system, product, kit, combo-pack, or under a single product number or SKU. (Wyers 30(b)(6) Dep. 103:14-105:8; 122:22-123:8.)

7.      Wyers does not know of a single end user who combined all of the components in claim 23 into a system. (*Id.* at 123:16-124:1.)

8.      While third party retailers such as Wal-Mart sell various components, they do not sell them together as a system. (*Id.* at 107:24-108:18.)

9.      Mr. Wyers, as the putative expert, did not identify a single instance by anyone where all of the components were combined into a system as required by claim 23. (Wyers Rpt. at ¶ 22 (Cequent merely sells "each of the component parts" but not as a system).)

10.     Wyers' own purpose for adding the sleeve to the receiver lock was to save retailer shelf space, but not to improve towing function. *Master Lock*, 616 F.3d at 1235 ("The removable sleeve is not claimed to improve the locking or towing functions, but is claimed to be desirable because it allows for 'a single locking unit [to] be used for a number of varied size locking requirements'…. thus saving retailers shelf space.").

11.     Cequent sells its hitch receivers and hitch bars separate from its receiver locks with sleeve and without requiring customers to use them with a receiver lock with sleeve. For example, Cequent has sold its hitch receivers and hitch bars for many years without any requirement that they be used with a receiver lock and sleeve as recited in claim 23. (Wyers 30(b)(6) Dep., 124:2-125:1.) Many of Cequent's hitch receivers and hitch bars are sold with a hitch pin that is not a lock and does not use a sleeve as required in claim 23. (*Id.*)

## II.      '121 Patent

12.     Claim 5 of the '121 patent is directed to a coupler lock that requires a longitudinal throughway, an elongated tubular casing disposed in that throughway, and a hitch ball "oriented generally orthogonally" to the throughway and to a transverse bore on that lock, as shown by example in Figures 3 and 4 of the '121 patent:



**Body Portion 38**

**Hitch Ball 32**

**Longitudinal Throughway 64**

**Elongated Tubular Casing 40 disposed in longitudinal throughway 64**

**Transverse Bore 48**

**Throughway, bore, and hitch ball are oriented generally orthogonally**

*Fig.4*

(Cupar Decl., Exh. E, Wyers' '121 patent, Claim 5, Figs. 3-4.)

13.    Cequent's accused coupler lock, shown in the figure below, does not include the following limitations recited in claim 5: (1) "an elongated tubular casing disposed in the throughway;" (2) "a longitudinal throughway extending therethrough" the body portion; and (3) a "hitch ball oriented generally orthogonally to the throughway and to the bore."



*Fig.3*

(Cequent's '686 patent, Fig. 3.)

14.    The following figure depicts a cross-sectional view of a portion of Cequent's accused coupler lock. Wyers identifies the structure it drew as a red rectangle in the figure below as both a "longitudinal throughway" and "an elongated tubular casing disposed in the throughway:"



**Wyers 30(b)(6) testimony: structure shown as red rectangle is both the "longitudinal throughway" and the "tubular casing disposed in the throughway"**

Fig.4

(Wyers 30(b)(6) Dep. 263:4-265:5; 271:5-272:17 (Q: "In other words, the same structure is both the tubular casing as well as the longitudinal throughway?" A: "Correct. The cast is one and the same." (Cupar Decl., Exh. F, Wyers 30(b)(6) Dep. Exh. 23; *see also* Wyers Rpt. ¶ 29 ("In my opinion, the tubular casing functionally forms the wall of the throughway.").)

15.    Further, Wyers admits Cequent's lock has no structure for the elongated tubular casing separate from the longitudinal throughway, stating: there is "*no tube that's placed into the accused Cequent device*." (*Id.* at 264:1-23 (emphasis added); *see also* Sentz Dep. 37:19-38:20 (Cupar Decl., Exh. G) (Q: "Does Cequent Performance have some sort of tube or tubular casing like [Wyers' coupler lock]?" A: "No.").)

16.    The structure marked by Wyers with a red rectangle in paragraph 14 above is also not a "longitudinal throughway" because that structure does not have an opening at both ends. (Wyers Expert Dep. 117:2-118:6.) As shown in the two figures below that depict a partial cross-section of Cequent's coupler lock from different views, that structure does *not* have an opening on one end:



**No opening on this end as required in claim 5; thus not a "throughway"**

Fig.5

Fig.4

(Cequent's '686 patent, Figs. 4-5.)

17.    Also, that structure identified by Wyers in paragraph 14 above is not "longitudinal" because it is not oriented lengthwise on Cequent's coupler lock:



**Structure (shown in blue) is not located on the longitudinal axis (shown in dashed red) of the body portion, or "extending therethrough" the length of the body portion.**

18.    Wyers admitted that the figure in its infringement contentions showing the axes of the hitch ball, transverse bore, and longitudinal throughway touching each other on Cequent's coupler lock was incorrect because the axis for the throughway was incorrectly drawn. (Wyers 30(b)(6) Dep. 249:3-250:21.) When asked to draw the axis for the longitudinal throughway correctly, Wyers drew the correct line in blue, as shown below:



(Cupar Decl., Exh. H, Wyers 30(b)(6) Dep. Exh. 21; Wyers 30(b)(6) Dep. 257:10-258:9.)

19.    Wyers has never marked a single coupler lock with the '121 patent. (Wyers 30(b)(6) Dep. 176:12-15.) Wyers marked the packaging with "patents pending" starting in 2004. (*Id.* at 182:4-7.)

20.    Since 2004, Wyers continued to sell coupler locks with packaging marked as "patents pending" until after it sued Cequent Performance in 2012. (Cupar Decl., Exh. I, Decl. of Mike Maurer ¶ 4-10; (Cupar Decl., Exh. J, Decl. of Tabetha Volz ¶ 4-13.)

21.     Wyers does not know of any business records showing when it began marking the product packaging with the '121 patent. (Wyers 30(b)(6) Dep. 177:15-19; 179:8-180:9.) Wyers has no business records showing that it continuously and systematically marked the packaging with the '121 patent from the time it issued in 2006 to the time it filed suit. (*Id.* at 184:11-185:7 ("You know, the stuff obviously rolls in and out.").) Wyers was not sure about whether it continued to distribute patent pending packages as far as in 2011. (*Id.* at 186:21-187:16 ("You know, you're working with Chinese manufacturers who may have a batch of cards or something that they stumble onto and didn't print some and they throw them in there, and the warehouse guys might not notice.").)

## III.     <u>'686 Patent</u>

22.     Wyers' non-infringement contentions admit having each and every limitation in claims 4, 5, 8, and 9 of Cequent's '686 patent except for an: (1) "integral lock;" and (2) "locking bar." (Cupar Decl., Exh. K, Wyers' Non-Infringement Contentions.) In its Rule 30(b)(6) deposition, Wyers repeatedly admitted that its coupler lock includes both the integral lock and locking bar limitations. (Wyers 30(b)(6) Dep. 30:18-24; 242:7-10.)



23.     Wyers' entire analysis for invalidity defense against the '686 patent is found in one paragraph of Mr. Wyers' putative expert report, which he submitted on his own behalf. (Wyers Rpt. ¶ 25; Wyers Expert Dep. 91:23-92:1.) Mr. Wyers raises for the first time in this report an interference defense under 35 U.S.C. § 291. (*Id.* at 96:4-15.) For his interference opinion, Mr. Wyers provided no analysis comparing each claim limitation from the '686 patent the claim limitations from the '121 patent necessary for an interference determination. (Wyers Rpt. ¶ 25; Wyers Expert Dep. 8:13-9:11; 93:3-94:25; 108:3-13.)

24.     While Wyers' report does not identify any anticipation or obviousness grounds, Mr. Wyers has conflicting testimony on whether his report only identifies the interference defense or whether his report also includes opinions regarding anticipation and invalidity. (*Compare* Wyers Expert Dep. 97:9-98:2 *with* 105:14-23.)

25.    Even if Mr. Wyers report is considered to include anticipation and obviousness defenses, Mr. Wyers does not provide any anticipation analysis such as a chart comparing the each claim limitation of the '686 patent to the prior art that Wyers believes anticipates those claims. (*Id.* at 108:8-13; 109:17-111:6.) And Wyers did not perform the *Graham* factors analysis necessary for analyzing obviousness. (*Id.* at 106:2-108:13; 111:7-112:5.)

## Grounds for Summary Judgment

**I.    '115 Patent**

### A.    Collateral Estoppel Precludes Wyers' Infringement Claim

As set forth in Cequent's pending motion to dismiss [#139], collateral estoppel, or issue preclusion, bars Wyers from asserting its infringement claim for the '115 patent based on the Federal Circuit's prior ruling that the '115 patent is invalid as obvious. *Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010). To the extent that the Court believes that FED. R. CIV. P. 56 is a more appropriate mechanism for dismissing this claim than FED. R. CIV. P. 12, Cequent reasserts its collateral estoppel defense on that basis. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (affirming summary judgment based on collateral estoppel).

Collateral estoppel applies when patent claims at issue do not recite any language materially different to patent claims invalidated in a prior action to create a new validity issue. *Willow Wood*, 735 F.3d at 1375. Claims 23 and 27 recite the same receiver lock with sleeve found in invalidated claims 15, 19, 21, and 24. Wyers admitted that the sleeve was the only purportedly patentable feature of the '115 patent, and the Federal Circuit held that that feature was obvious and non-patentable. *Master Lock Co.*, 616 F.3d at 1236.

Claim 27 depends from invalidated claim 24. The Federal Circuit found the language in claim 27 ("shank and sleeve length are substantially the same") a "slight

distinction" that is not patentable. (SUF ¶ 3.) *See Bourns*, *Inc. v. United States*, 537 F.2d 486, 492 (Ct. Cl. 1976) ("several differently worded claims may present identical [invalidity] issues."); *Willow Wood*, 735 F.3d at 1342 (collateral estoppel applies where claims "use slightly different language to describe substantially the same invention").

Likewise, claim 23 recites the same features as does invalidated claim 15. (*Id.* at 1236, 1241.) Both recite a "sleeve for selective engagement with said hitch shank" where the sleeve diameter fits the aligned apertures on a hitch bar-receiver assembly. *Willow Wood,* 735 F.3d at 1342. Therefore, the Court should grant summary judgment based on collateral estoppel.

**B.     The Court Should Enter Summary Judgment of No Infringement[1]**

*1.     There Is No Evidence of Direct Infringement of Claim 27*

Summary judgment against claim 27 is appropriate because Wyers' putative expert report is silent on how Cequent's receiver locks read on that claim or on independent claim 24 from which claim 27 depends.[2] (SUF ¶ 3.) In particular, Mr. Wyers' report provides no explanation, let alone the requisite analysis and claim chart, identifying how Cequent's locks include each and every feature of independent claim 24. (*Id.*) *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989) (summary judgment appropriate when patent owner fails to provide evidence showing how accused product includes each limitation). Summary judgment of no infringement against claim 27 is appropriate.

---

[1] The Court does not have to rule on noninfringement of the '115 patent as set forth in this section if it grants summary judgment based on collateral estoppel.

[2] Independent claim 24 is one of the four claims the Federal Circuit invalidated in the *Master Lock* case. The fact that Wyers asserted dependent claim 27, which depends from claim 24, highlights the collateral estoppel issue and why the Court should enter summary judgment on that basis.

### 2. *There Is No Evidence of Direct Infringement of Claim 23*

Summary judgment of no infringement against claim 23 is also appropriate. Claim 23 requires a "system" of two hitch receivers, two hitch bars, a receiver lock and a sleeve. Carrying the burden, Wyers must prove that either Cequent or a third party combined each and every component identified in claim 23 into a system as required in that claim. *See ACCO Brands, Inc. v. ABA Locks Mfg. Co., Ltd*., 501 F,3d 1307, 1313 (Fed. Cir. 2007) (reversing jury verdict of infringement; to directly infringe a system claim, all components must be used together by a single user).

Wyers has presented no evidence of a single direct infringer. Wyers acknowledged that Cequent is not a direct infringer because it does not combine all of these components together into a single product, kit, combo-pack, or product number or SKU. (SUF ¶ 6.) Further, Wyers did not know of a single end user who uses all of the components in claim 23 together as a system. (SUF ¶ 7.) Likewise, Wyers acknowledged that while third party retailers such as Wal-Mart sell various components, they do not sell them together as a system. (SUF ¶ 8.) Mr. Wyers, acting as the expert for Wyers, also did not identify a single instance where all of the components were combined into a system as required by claim 23. (SUF ¶ 9.) Because Wyers has not identified any instance of a system as required in claim 23, summary judgment of no infringement is appropriate.

### 3. *There Is No Evidence of Inducement of Infringement*

Because Wyers cannot prove direct infringement, by definition, it also cannot prove indirect infringement. *Novartis Pharmas. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1312 (Fed. Cir. 2004) ("[T]here can be no induced or contributory infringement

without an underlying direct infringement."). Courts dismiss induced infringement claims by summary judgment when, as here, the patentee has no evidence of direct infringement. *See id.* (affirming summary judgment of no induced infringement based on no direct infringement evidence). Because, for the reasons set forth above, there is no direct infringement, Wyers cannot establish induced infringement of claims 23 and 27.

A second independent basis for summary judgment is that Wyers has no evidence that Cequent had pre-suit knowledge of the '115 patent. *See Laserdynamics, Inc. v. Quanta Storage Am., Inc.,* 694 F.3d 51, 60 (Fed. Cir. 2012) (potential liability for inducement cannot begin until patent owner establishes knowledge of the patent). In fact, Wyers has no evidence that Cequent Performance and Cequent Consumer had knowledge of Wyers' '115 patent until after it sued them on October 5, 2012 and March 21, 2014, respectively. [#1 & #133] Thus, summary judgment of no inducement prior to these dates is appropriate.

A third and fourth independent basis for summary judgment on claim 23 is that Wyers has no evidence that Cequent actively induced others to use all of the elements of claim 23 together as a system, or that it had specific intent that they do so – both of which must be proven to recover for induced infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (*en banc*). Wyers admitted that Cequent has sold its hitch receivers and hitch bars for many years without any requirement that they be used with a receiver lock and sleeve as recited in claim 23. (SUF ¶ 13.) Indeed, Wyers admitted that many of Cequent's hitch receivers and hitch bars are sold with a hitch pin that is not a lock and does not use a sleeve as required in claim 23. (*Id.*) And Wyers admitted that the intent of the sleeve is to save shelf space at Walmart, which on

its face is <u>not</u> an intent use in the system recited in claim 23. (SUF ¶ 13.) Wyers cannot infer intent and active inducement from Cequent's individual sales of those components which have admitted substantial noninfringing uses. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003) (affirming summary judgment of no induced infringement because products have substantial non-infringing uses). Summary judgment of no inducement of infringement is appropriate.

**II.    '121 Patent**

**A.    The Court Should Enter Summary Judgment of No Infringement**

Wyers' own party admissions show that Cequent's coupler lock is missing at least three limitations in claim 5 of the '121 patent. Because Wyers cannot meet its burden, summary judgment of no infringement is appropriate.

Infringement requires that each and every limitation set forth in a claim appear in an accused product. *V-Formation, Inc. v. Bennetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). The absence of a single claim limitation in the accused product precludes infringement. *Id.* at 1312-13. So, if Wyers fails to carry its burden to prove that Cequent's coupler lock has all of the limitations of claim 5, the Court must enter summary judgment. *See id.* at 1310 (affirming summary judgment of no infringement); *Motionless Keyboard Co. v. Microsoft*, 486 F.3d 1376, 1381-83 (Fed. Cir. 2007) (same).

*1.    Cequent's Lock Does Not Include "an Elongated Tubular Casing"*

Claim 5 requires "an elongated tubular casing disposed in the throughway." On its face, this requires two distinct structures and a specific location of those structures relative to one another: (1) "an elongated tubular casing;" (2) a "longitudinal throughway extending" through the body portion of the lock; and (3) the casing "disposed in" the

throughway. (SUF ¶ 12.) Using ordinary grammar rules, this claimed term includes two nouns (namely, "an elongated tubular casing" and "the throughway") and a verb identifying the orientation of those nouns ("disposed in"). Summary judgment of no infringement is appropriate when a claimed term requires two nouns and a verb, but a patentee argues that one "thing" on an accused device meets that entire term. *See, e.g., Regents of the Univ. of Minn. v. AGA Med. Corp.*, No. 07-CV-4732, 2011 WL 13943, at *2 (D. Minn. Jan. 4, 2011) ("[T]hings that are 'affixed' are, by that word's necessary implications, originally separate."), *aff'd*, 717 F.3d 929, 935 (Fed. Cir. 2013).

Cequent's coupler lock has neither an elongated tubular casing nor longitudinal throughway; thus, it also does not have an elongated tubular casing "disposed in" a throughway.[3] Indeed, Wyers admits that there is "*no tube that's placed into the accused Cequent device*" in Cequent's lock. (SUF ¶ 15 (emphasis added).) Instead, Wyers identifies a specific structure inside of Cequent's coupler lock as *both* the longitudinal throughway *and* the elongated tubular casing. (SUF ¶ 14 (Q: "In other words, the same structure is both the tubular casing as well as the longitudinal throughway?" A: "Correct. The cast is one and the same."); ("In my opinion, the tubular casing functionally forms the wall of the throughway.").) Wyers did not (and admittedly cannot) point to an elongated tubular casing structure separate from what it identifies as the throughway as required in claim 5.

Wyers' argument also means that Cequent's lock does *not* include an elongated tubular casing that is "disposed in" the throughway as required by claim 5. Wyers states that "the tubular casing functionally forms the wall of the throughway," which it admitted means that the casing is outside of the throughway. (SUF ¶ 14.) Claim 5, however,

---

[3] The grounds for why Cequent's lock lacks a "longitudinal throughway" is identified in the next section.

requires the opposite: the elongated tubular casing must be *"disposed in"* the throughway as shown for example in Figure 4 of the '121 patent:



**Claim 5: elongated tubular casing (40) is "disposed in" longitudinal throughway 64 (red circle shows edge of longitudinal throughway and casing (40) fits within it.)**

**Wyers' incorrect argument: this red circle defining the edge of the throughway is the elongated tubular casing. This, however, means that the casing is outside of – and not "disposed *in* the throughway."**

Therefore, summary judgment is appropriate on this basis.

2.  <u>*Cequent's Lock Does Not Include a "Longitudinal Throughway"*</u>

Moreover, Wyers cannot establish that Cequent's coupler lock includes a "longitudinal throughway extending therethrough" as required in claim 5. While the noun "throughway" with the verb "extending" and adverb "therethrough" requires a structure having an opening on both ends that extends through the body portion, Wyers identifies a structure in Cequent's coupler lock that has an opening on one end but <u>*not*</u> on the other. (SUF ¶ 16.) And that structure identified by Wyers is not "longitudinal" because it is not oriented lengthwise on Cequent's coupler lock but rather at an angle. (SUF ¶ 17.) Therefore, summary judgment is appropriate on this independent basis as well.

3.  <u>*Cequent's Lock Is Not "Oriented Generally Orthogonally"*</u>

Claim 5 also requires a "hitch ball oriented generally orthogonally to the [longitudinal] throughway and to the [transverse] bore." The structures on Cequent's

coupler lock that Wyers identifies as the transverse bore, longitudinal throughway,[4] and hitch ball are _not_ "oriented generally orthogonally" to one another. (SUF ¶ 18.) This is because the hitch ball is not located at the point where the transverse bore and the longitudinal throughway intersect. (_Id._) Instead the hitch ball is offset from that cross-section. (_Id._) Therefore, summary judgment of no infringement is appropriate because of this additional missing limitation.

### B.    The Court Should Enter Summary Judgment of No Patent Marking

Despite having the burden to prove that it marked its products with the '121 patent before it sued Cequent to recover monetary damages, Wyers did not consistently and systematically mark its coupler locks with the '121 patent.[5] Instead, Wyers continued to sell coupler locks with packaging merely marked as "patents pending" until – and after – it filed suit, which is insufficient. Therefore, damages cannot accrue against Cequent until the filing date of the complaint for each Cequent entity.

Under 35 U.S.C. § 287(a), "[a patentee] is entitled to damages from the time when it either began marking its product in compliance with section 287(a) or when it actually notified [the accused infringer] of its infringement, whichever is earlier." _Maxwell v. J. Baker, Inc._, 86 F.3d 1098, 1111 (Fed. Cir. 1996). The patent owner has the burden of proving that it correctly marked. _Id._

Compliance with § 287(a) requires that the patentee "consistently marked substantially all of its patented products, _and [] no longer distribut[e] unmarked products._" _Id._ at 1538 (emphasis added). Marking a product or packaging with "patent

---

[4] As set forth in the preceding section, Cequent's coupler lock does not include a longitudinal throughway. This section points out the fact that the structure Wyers calls a "longitudinal throughway" is not "oriented generally orthogonally" to the hitch ball as required in claim 5.

[5] The Court does not have to rule on the patent marking issue if it grants summary judgment of no infringement on the '121 patent.

pending" does not meet the § 287(a) requirements. *Macpike v. American Honda Motor Co.*, No. 92-30094/LAC, 1993 WL 632261 (N.D. Fla. Oct. 1, 1993); *see also State Ind., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("A 'patent pending' notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.") Summary judgment on the adequacy of marking is appropriate where "there is no issue of material fact as to substantial or consistent marking." *Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152, 1159 (C.D. Cal. 2001).

Two independent grounds for summary judgment exist: (1) Wyers continued to sell locks marked as patent pending up until – and after – commencing this suit; and (2) Wyers has no business records establishing when it phased out the "patents pending" marked products. To date, Wyers admittedly never marked a single coupler lock. (SUF ¶ 19.) Instead, Wyers marked the packaging with "patents pending" starting in 2004. (*Id.*) Wyers continued to sell products marked with "patents pending" all the way through – and after – filing this suit. (SUF ¶ 20.) Therefore, Wyers never phased out the "patent pending" packaging prior to filing this suit. *Maxwell*, 86 F.3d at 1111.

Furthermore, Wyers never kept the necessary business records required to meet its burden of proving that it consistently marked substantially all of its products *and* no longer distributed unmarked products. Wyers does not know of any business records showing when it began marking the packaging with the '121 patent. (SUF ¶ 21.) Wyers has no business records showing that it continuously and systematically marked the packaging with the '121 patent from the time it issued in 2006 to the time it filed suit. (*Id.*

("You know, the stuff obviously roles in and out.").) Wyers admitted that it was not sure about whether it continued to distribute patent pending packages as far as in 2011. (*Id.* ("You know, you're working with Chinese manufacturers who may have a batch of cards or something that they stumble onto and didn't print some and they throw them in there, and the warehouse guys might not notice.").) Because Wyers does not have the necessary evidence to establish its burden, summary judgment is appropriate.

## III.     ‘686 Patent

### A.     Summary Judgment of Infringement Is Appropriate

Wyers' accused UMAX50 and UMAX100 coupler locks include each and every limitation in claims 4, 5, 8, and 9 of Cequent's ‘686 patent.[6] Therefore, summary judgment of infringement is appropriate.

Wyers' non-infringement contentions admit having each and every limitation in claims 4, 5, 8, and 9 of the ‘686 Patent except for: (1) an "integral lock," and (2) a "locking bar." (SUF ¶ 22.) But Wyers provided no evidence as to how or why its coupler locks did not include those limitations. (*Id.*) Then, in its Rule 30(b)(6) deposition, Wyers repeatedly admitted that its coupler lock includes both of those limitations. (*Id.*) Therefore, because Wyers admitted that its coupler lock includes each and every limitation in claims 4, 5, 8, and 9 of the ‘686 patent, summary judgment is appropriate.

### B.     Summary Judgment of No Invalidity Is Appropriate

Wyers' entire invalidity defense against the ‘686 patent is in one paragraph of Mr. Wyers' expert report.[7] (SUF ¶ 23.) Mr. Wyers' own conclusory, one-paragraph opinion of invalidity cannot establish Wyers' clear and convincing evidentiary burden.

---

[6] Although seeking summary judgment only on these claims, Cequent is not dropping the remaining claims of the ‘686 patent that it is asserting against Wyers and intends to prove infringement of those claims at trial.

The '686 patent is statutorily presumed valid. 35 U.S.C. § 282. Because of this presumption, an accused infringer "has the burden of showing by clear and convincing evidence, after all reasonable inferences are drawn in its favor, that the [asserted patent] is invalid." *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (affirming summary judgment of no invalidity). Thus, an invalidity defense is particularly susceptible to summary judgment. *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996) ("Taking cognizance of the requirement that patent invalidity must be proved by clear and convincing evidence, we affirm the summary judgment that the [patent-in-suit] is not invalid.").

Summary judgment is appropriate when the accused infringer's only evidence is the conclusory statement of an expert witness about the existence of disclosed elements in a prior art reference. *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.* 2004 WL 1946485 (Fed. Cir. 2004) ("In this particular case, summary judgment could not have been granted without expert testimony clearly explaining how each claim element is disclosed.... The party asserting invalidity has the burden of introducing such evidence, but here [accused infringer] offered no such expert testimony. The conclusory testimony of [accused infringer's expert] is manifestly insufficient.").

Mr. Wyers' report raises for the first time an interference claim under 35 U.S.C. § 291. Wyers never raised this strategy claim in its pleadings or invalidity contentions.[8] (SUF ¶ 23.) Thus, Wyers cannot now assert this defense for the first time through Mr.

---

[7] Earlier in the litigation, Wyers identified to Cequent an individual having a technical background as a potential expert, but never disclosed an expert report from that person. Thus, the only technical opinion to support Wyers' invalidity claim is the one paragraph in Mr. Wyers' report, which falls well short of meeting Wyers' evidentiary burden on this issue.

[8] To assist interference, § 291 (by way of § 146) requires Wyers to plead this claim, and Wyers has to provide notice to the USPTO. Wyers did no such thing.

Wyers' report. *See, e.g., Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 133, 1337-1338 (Fed. Cir. 2012) (failure to plead defense results in waiver). Even if the Court allowed Wyers to raise an interference claim this late in litigation for the first time, Wyers failed to provide the necessary evidence to establish an interference claim. For example, Wyers had to – but failed to – provide evidence that "the subject matter of a claim of one party would, if prior art, have anticipated or rendered obvious the subject matter of a claim of the opposing party or vice versa." *See* 37 C.F.R. § 41.203(a); *see also Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1161 (Fed. Cir. 2006). Wyers provides no such analysis or evidence. (SUF ¶ 23.) *Arthur A. Collins, Inc. v. Northern Telecom, Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert's unsupported conclusions insufficient to establish genuine issue of material fact).

Likewise, the Court should reject Wyers' conclusory argument regarding anticipation under 35 U.S.C. § 102 and obviousness under 35 U.S.C. § 103. Wyers' report and deposition testimony is unclear whether it asserts those defenses. (SUF ¶ 24.) Even if it did, Wyers cannot establish anticipation under 35 U.S.C. § 102 because his report completely fails to analyze each claim limitation in the '686 patent to the purported prior art Wyers may believe anticpates. (SUF ¶ 25.). *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.") *See also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("Mere denials or conclusory statements are insufficient."). And Wyers admitted that he provided no

analysis under the *Graham* factors necessary to perform an obviousness analysis. (SUF ¶ 25.) *See ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,* 694 F.3d 1312, 1327 (Fed. Cir. 2012) (affirming summary judgment of no invalidity); *Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1365 (Fed. Cir. 2007) ("We have repeatedly held that such cursory conclusions will not withstand summary judgment."). Because Wyers does not have the crucial, requisite evidence required by the Federal Circuit to establish invalidity by clear and convincing evidence, summary judgment is appropriate.

## Conclusion

The Court should grant summary judgment as follows: (1) collateral estoppel precluding Wyers' infringement claim on the '115 patent; (2) noninfringement of the '115 patent; (3) noninfringement of the '121 patent; (4) no patent marking for the '121 patent; (5) infringement of the '686 patent; and (6) no invalidity of the '686 patent.

Respectfully submitted,

Dated: July 25, 2014

   s/ David B. Cupar
David B. Cupar
Matthew J. Cavanagh
MᴄDᴏɴᴀʟᴅ Hᴏᴘᴋɪɴs LLC
600 Superior Ave., East, Suite 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for*
*Cequent Performance Products, Inc.*
*and Cequent Consumer Products, Inc.*

## Certificate Of Service

I hereby certify that on July 25, 2014, I electronically filed the foregoing

DEFENDANTS' SUMMARY JUDGMENT MOTION with the Clerk of this Court using the

CM/ECF system, which will electronically mail notice to the following:

Aaron P. Bradford
Lᴀᴛʜʀᴏᴘ & Gᴀɢᴇ, LLP
950 Seventeenth Street
Suite 2400
Denver, Colorado 80202
abradford@lathropgage.com

*Counsel for Plaintiffs*

 s/ David B. Cupar
*Counsel for*
*Cequent Performance Products, Inc.*
*and Cequent Consumer Products, Inc.*