**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02640-REB-KMT

WYERS PRODUCTS GROUP, INC., et al.,

     Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC. et al.,

     Defendants.

---

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: ISSUE PRECLUSION**

---

**INTRODUCTION**

Claim 23 of U.S. Patent No. 6,672,115 ("the '115 patent"), has not been litigated and is presumed valid. 35 USC § 282; *Microsoft v. i4i Ltd Partnership*, 564 U.S. ----, 131 S.Ct. 2238, 2242 (2011). Claim 23 is directed toward a system for safe use of a single receiver lock to form the load bearing structure of light towing receiver/hitch systems and the heavy towing systems.[1] Because of its narrow focus, Claim 23 requires particular resistances to shear forces and particular towing strengths associated with the towing pin and the sleeve, independently and in combination. (Ex. 1, Wyers 11/11/13 Dec., ¶ 9-12). Claim 23 teaches, for the first time, the use of a load bearing and load increasing sleeve that converts a Class I and II load bearing structure to, and from, a Class III, IV or V load bearing structure.

---

[1] The industry designates Class I and II receivers and hitch bars as light towing and Class III, IV and V receivers and hitch bars as heavy towing.

Cequent's affirmative defense of issue preclusion should be dismissed.  Claim 23 is narrower than claims addressed in *Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010).  The Court characterized Claims 15, 19, 21 and 24 as follows:

> "The Claims do not require any particular resistance to shear forces or any particular towing strength associated with the towing pin or sleeve; the sole benefit of the sleeve in the patent is its size adaptability."

Id. at 1243.  As discussed during the *Markman* hearing on February 21, 2014, and as articulated by Mr. Wyers, Claim 23 is the only claim in the patent that addresses the use of the claimed receiver lock in two towing environments.  (Doc. 85, Doc. 119; Ex. 1, ¶9-12)   For the reasons set forth below, the Federal Circuit's consideration of size conversion claims is irrelevant to Wyers' assertion that Cequent infringes Claim 23.

## FACTUAL BACKGROUND AND EVIDENCE SUPPORTING MOTION

New evidence developed in discovery underlines the important distinctions between Claim 23 and those considered by the Federal Circuit:

1.      In April of 1999, Philip Wyers disclosed the universal receiver lock to Wal-Mart's buyer, Brad Logan.  (Ex. 2, Letter to Brad Logan, WPG 1246-1248)  Prior to this disclosure, no retailer was calling for a space saving option.  (Ex. 3, Wyers July 2014 Declaration, ¶ 27).  Wal-Mart did not order sleeved receiver locks until 2002.

2.      On April 23, 2000, Philip Wyers filed the application for what would mature into the '115 patent.  Claim 23 was not part of the initial application.  (Ex. 4, p 26)



3.      ███████████████████████████████ ████████████████████████████████████ ████████ (Ex. 5)

4.      ███████████████████████████████ ████████████████████████████████ (Ex. 6)

5.      ███████████████████████████████ ███████████████████████████████ (Ex. 7) ████ ███████████████████████████████████

22001518v1



8. Unaware of the above testing, on February 21, 2002, Mr. Wyers filed an "Amendment" and, among other things, added Claim 36, which would ultimately issue as Claim 23. (Ex. 11, Amendment, p 10) In comments submitted on March 29, 2002, Wyers stated that Claim 36 was directed toward a device and "its ability to be used with hitch receivers having different standard bore sizes by providing a conversion sleeve." (Ex. 12, Supplemental Amendment, p 5) The '115 patent issued on January 6, 2004. (Ex. 13)



22001518v1



██████████████ (Ex. 8████████████████ Ex. 16███████████
████████████████████████████ )

12.    ███████████████████████████████████
████████████████████████████████ (Ex. 3████████████
███████ )    ██████████████████████████████████████
███████████████████████████████████████████
██████████████████ (Ex. 3██████████████████████████ ).

## LEGAL STANDARDS

Issue preclusion is an affirmative defense. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008).   Cequent bears the burden to prove all elements of the defense by clear and convincing evidence. *Microsoft,* 131 S.Ct. at 2242.   Issue preclusion only applies if the plaintiff "had a full and fair opportunity to litigate the issue; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1537 (Fed. Cir. 1995).   Once preclusion has been raised, the responding party "must then be permitted . . . to supplement the record with any evidence showing why an estoppel should not be imposed in this case." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).   Doubts as to whether the elements of preclusion are met are resolved in favor of the patentee. *Plastic Container Corp. v. Cont'l Plastics of Okla.*, 607 F.2d 885, 894 (10th Cir. 1979).

## I.    CLAIM 23 IS INDEPENDENTLY VALID

Issue preclusion premised on a prior obviousness conclusion must be assessed on a claim-by-claim basis. *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed.Cir. 1985). Differences in claim language create a presumption that Claim 23 is

4

22001518v1

patentably distinct from the invalidated claims. *Seachange Int'l Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed.Cir. 2005). Difference in claim scope will also defeat issue preclusion. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342-43 (Fed. Cir. 2013). The Federal Circuit has rejected the "domino approach." *Interconnect Planning*, 774 F.2d at 1137. Claim 23 is evaluate using the following: (1) the scope and content of the prior art, (2) the difference between the prior art and the claimed invention, (3) the level of ordinary skill in the field of the invention, and (4) objective considerations of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

The first three *Graham* factors serve "as the background against which the obviousness or nonobviousness of the subject matter is determined." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). Nonobviousness is revealed by commercial success, unexpected results, skepticism of the invention, etc. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012). Because "evidence of secondary considerations may often be the most probative and cogent evidence in the record," *Transocean*, 699 F.3d at 1349, it "must always when present be considered en route to a determination of obviousness." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

A.    **Claim 23 is fundamentally different from Claims 15, 19, 21 and 24**

Claim 23 of the '115 patent contains limitations that are not found in any of the claims at issue in *Master Lock.* First, Claim 23 was added during the prosecution and was directed toward claiming a conversion sleeve for completing two different receiver/hitch systems. (Fact 8) Claim 15 is tied to a single hitch bar/receiver. (Ex. 13,

22001518v1

Col 10, ll 12-22)  This is a substantial difference that speaks directly to the limited import of the Federal Circuit's analysis.  As Claim 15 is directed to one hitch bar/receiver, the ordinary artisan need not concern him or herself with the relative load capacities for either the shank or the sleeve.  Claim 15 merely requires that the shank have "a thickness dimension" (*Id.* at Col 10, 11-25) whereas Claim 23 requires that the "shank outer dimension [be] sized and adapted for close fitted engagement with the first aperture."  (Id. at Col 12, ll 9)  As Claim 15 is not tied to light or heavy towing, the dimensions of the sleeve in Claim 15 can vary as illustrated in Figure 5 of the '115 patent.  Without defined dimensions, the load bearing capacities of the sleeve and shank in Claim 15 are irrelevant, justifying the Federal Circuit's conclusion that Claim 15 was only directed toward size adaptability.

The Federal Circuit relied upon Figure 5 of the '115 patent in concluding that the invalidated claims relate to size adaptability only.  *Wyers*, 616 F.3d at 1234.  While Figures 11 and 12 best illustrate the restrictive scope of Claim 23, Figure 5 illustrates the flexibility inherent in Claim 15.  (Ex. 1, ¶¶ 9-12)  During prosecution, Wyers limited the hitch bars and receivers claimed in Claim 23 to those featuring "standard bore sizes."  (Fact 8)  As there are only two sizes that are used by the industry, the "first hitch bar" is tied to light towing while the "second hitch bar" is tied to heavy towing.  (Ex. 19, Wyers Dep., pp 25-31)  Wyers outlines the relative capacities in his unrebutted affidavit.  (Ex. 1, ¶ 9-16)  Cequent has offered no contrary testimony or evidence.

Given these fundamental differences, the Federal Circuit's analysis of the size adaptability features of Claims 15, 19, 21 and 24 do not preclude Wyers from asserting

6

22001518v1

that Cequent infringes Claim 23.   It should be noted that if the court adopts or follows

Wyers' evidence presented through the *Markman* process, the differences between

Claim 15 and 23 will be solidified and will support granting the present motion.

**B.** ***Sufficient evidence exists to permit a trial on the question of obviousness***

Claim 23 reflects a patentable advance over United States Patent No. 3,963,264

(the "Down" patent). (Ex. 20)  The Federal Circuit invalidated claims 15, 19, 21 and 24

in view of Down.  *Wyers*, 616 F.3d at 1240-41.  Claim 23 is not similarly vulnerable.

The Down patent does not address hitch bar and receiver towing systems and

therefore has limited relevance to Claim 23, which incorporates the two systems.  (Ex.

3, ¶23)  Mr. Wyers has been designated as an expert in this matter and will testify

regarding the differences between Claim 23 and Down. (Ex 3, 22-24) Namely, Down

does not feature a receiver lock, a hitch bar or a receiver. As a result, Down does not

have the need for alignment of apertures of two competing components as required in

Claim 23.   Down does not feature the scissor/hammer forces that are inherent in

receiver/hitch towing systems. In designing a universal receiver lock, the person of

ordinary skill in the art would have to account for significant scissor/hammer forces.  On

this issue, Down provides no guidance.

The differences continue.  The Down pin shares the load with the other

component parts.  (Ex. 20, Fig. 1)  Conversely, the shank, sleeved or unsleeved, bears

the entire load in receiver/hitch systems.  (Ex 3, ¶ 23)  The Down sleeve is optional.

(Ex. 20, Col 3, ll 10-23)  The sleeve, as described in Claim 23, is mandatory in the

heavy towing systems. The Down bushing sits between the lugs, not within the

7

22001518v1

apertures as required by Claim 23.  (Ex 3, ¶ 23)  As a result of this fundamental

difference, the Down bushing is neither load bearing nor load increasing.  *Id.*  Tim

Vanderkoy, project leader for Cequent's sleeved receiver lock, testified that such a

sleeve would not work in the receiver/hitch systems. (Ex. 21, Vanderkoy Depo., p 183)

The sleeve described in Claim 23 sits on the shank and within the aligned

apertures of the Class III/IV towing system for the purposes increasing the overall load

bearing capacity of the Class II shank.  (Ex 3, ¶ 23)  The Down bushing supports the

upper lug during towing, and serves as a rub surface for a loosely articulating towing

eye.  (Ex. 20, Col 3, ll 10-25)  There is no limitation placed on the bushing's thickness.

(Ex 3, ¶ 23)  Conversely, the sleeve in Claim 23 has a definite thickness based upon the

two towing systems the lock completes.  Nor does the Down bushing alter the

capabilities of the shank.  Removal of the Wyers' sleeve converts the shank into a Class

II receiver lock that can only be used in a different towing system.  The Down sleeve

and shank operate in a singular towing system.  *Id.*

These differences become amplified when the court considers the motivations

against use of a sleeve to convert a Class II shank into a Class III/IV shank. *United*

*States v. Adams*, 383 U.S. 39, 40 (1966); *Crocs v. Int'l Trade Comm'n*, 598 F.3d 1294,

1308 (Fed.Cir. 2010)(stating the evidence that a person of ordinary skill would have

reason to doubt the invention supports non-obviousness).  The prior art taught against

the use of a sleeve on a receiver lock.[2]  (Ex. 3, ¶ 24)  Evidence developed in this case

demonstrates Cequent's own healthy level of skepticism and criticism for the invention.

---

[2] Wyers incorporates by reference Pages 1-3 of Doc. 119 as additional detail.

22001518v1

(Fact 5)  Cequent ridiculed the invention in 2005 to Wal-Mart.  (Fact 10)  Once it gained

traction with its accused products, these criticisms disappeared.  (Ex. 16) Today,

Cequent appears to rely upon this skepticism in support of its non-infringement position,

namely that the lock is not universal.  (Fact 5)   Cequent's internal testing confirms that

the skepticism is unwarranted.  (Facts 6, 7, 9)

### C.      Graham factor 4 – objective indicia

Objective indicia of non-obviousness identified through discovery supports Claim

23's validity. *Mintz*, 679 F.3d at 1378.  Such evidence is particularly important in cases

involving less complex technology. Id. at 1379 ("objective consideration of simple

technology is often the most difficult because, once the problem and solution appear

together in the patent disclosure, the advance seems self-evident.)

(Fact 5)

(Fact 10)                                                                                 (Ex. 16)

Today, Cequent's packaging and product information emphasize that the lock

completes all towing systems. (Ex. 16 and 27)

Second, a nexus between commercial success and the patent features has

developed.  After close of discovery in the *Master Lock* matter, Wal-Mart switched from

Master Lock to Cequent.

(Fact 12)

9

████████████████████████████████████ (Ex. 15 and 16)  Cequent calls out the

patented feature for the consumer, establishing the necessary nexus.

████████████████████████████████████████████████

████████████████████████████████████████████████ (Facts 6, 7, 9)

Cequent's reasons for embracing the technology demonstrate nonobviousness.

*Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997).

████████████████████████████████████████████████

████████████████████ (Fact  4)   ██████████████████████████████

████████████████████████████

## II.   WYERS HAS NOT HAD A FULL AND FAIR OPPORTUNITY TO LITIGATE THE VALIDITY OF CLAIM 23

Issue preclusion is neither automatic nor absolute.  "The Supreme Court has

urged relitigation of issues, when the prior litigation raises questions about the quality,

extensiveness, or fairness of its procedures."  *Innovad Inc. v. Microsoft Corp.*, 260 F.3d

1326, 1334 (Fed. Cir. 2001).   Issue preclusion is premised on principles of fairness.

*Blonder-Tongue*, 402 U.S. at 324-325 (doctrine is one of "overriding fairness").  The

Court has discretion in this regard.  *A.B. Dick Co.*, 713 F.2d at 702.

As Claim 23 was not at issue in *Master Lock*, Wyers has not "had a full and fair

opportunity to litigate the issue." *Comair Rotron,* 49 F.3d at 1537.  More importantly,

Wyers did not have a full and fair opportunity to address obviousness in view of Down.

Wyers' trial counsel Tim Martin was disbarred, in part, for his management of the

*Master Lock* case.  (Ex. 22, Decision and Order, p. 4)  Mr. Martin converted Wyers

funds set aside for experts. *Id*.  Martin failed to designate Wyers as an expert, failed to

22001518v1

respond to requests for admissions and failed to respond to Master Lock's motion for summary judgment.  On March 17, 2008, Magistrate Judge Watanabe issued a blistering Show Cause Order regarding Martin's failures.  (Ex. 23, Show Cause Order). To that point, Master Lock had not disclosed Down and it was not listed as a trial exhibit.  (Ex. 24, 2/28/01 FPTO, p 10).  On May 22, 2008, Judge Babcock issued an order and noted that Wyers' testimony would be limited by F.R.E. 701. (Ex. 25, Order, 15-16)  Master Lock disclosed Down eight months after the close of discovery when it added it as its final trial exhibit.  (Ex. 26, FPTO, Def. Ex. List, p 11)  At trial, Master Lock's own expert, Brian Costly did not testify regarding the Down patent as it was not referenced in either of his two reports.  Rather, the trial focused upon other prior art that neither the Federal Circuit nor Cequent point to as primary references.  Wyers did not have a full and fair opportunity to litigate the issue of obviousness in view of Down. Given the totality of the circumstances, fairness weighs heavily in Wyers' favor.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order dismissing Cequent's affirmative defense of issue preclusion.

Dated this 25th day of July, 2014.

Respectfully submitted,

LATHROP & GAGE LLP

s/ *Aaron P. Bradford*
Aaron P. Bradford
Jessie L. Pellant
950 17th Street, Suite 2400
Denver, Colorado 80202
Phone:        (720) 931-3200
Email: abradford@lathropgage.com
*Attorneys for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2014, I electronically filed the foregoing **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: ISSUE PRECLUSION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David B. Cupar
Matthew J. Cavanagh
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

Andrew J. Petrie
Featherstone Petrie DeSisto LLP
600 17th Street, Suite 2400 S
Denver, Colorado 80202
apetrie@featherstonelaw.com

s/ *Aaron P. Bradford*
Aaron P. Bradford

22001518v1