**IN THE UNITED STATES DISTRICT COURT**
**ProFOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 12-CV-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation, and
PHILIP W. WYERS

      Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC., and
CEQUENT CONSUMER PRODUCTS, INC.

      Defendants.

---

## FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

A combined Trial Preparation Conference and Final Pretrial Conference is set for

October 1, 2014, at 1:15 p.m., in courtroom A1001, Alfred A. Arraj United States

Courthouse, 901 19th Street, Denver, CO 80294.

Plaintiffs Wyers Products Group, Inc. ("Wyers") and Philip W. Wyers ("Mr.

Wyers") (collectively, "Plaintiffs"), will be represented by Aaron P. Bradford, Jessie L.

Pellant and Alexander C. Clayden, of Lathrop & Gage LLP, 950 17th Street, Suite 2400,

Denver, CO 80202.

Defendants Cequent Performance Products, Inc. and Cequent Consumer

Products, Inc., ("Cequent") will be represented by David B. Cupar and Matthew

Cavanagh, McDonald Hopkins, LLC, 600 Superior Avenue, Suite 2100, Cleveland, Ohio

44114.

## 2. JURISDICTION

Wyers asserts that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this case concerns claims of patent infringement.   Cequent disputes that the Court has subject matter jurisdiction because, as explained in its Motion to Dismiss Under Rule 12(b)(1) [#23] and its supporting briefs and evidence [#24 and 32], which the Court denied [#60], (1) Wyers Product Group does not own either the '115 or the '121 patent; (2) Wyers Product Group has not provided evidence that it is the exclusive licensee of either the '115 patent or the '121 patent; and (3) Phillip Wyers, the owner of the '115 and the '121 patent, was not named as a plaintiff in the complaint.

## 3. CLAIMS AND DEFENSES

### a.      Philip W. Wyers and Wyers Products Group

Philip W. Wyers and Wyers Products Group ("Wyers") assert that Cequent Consumer Products and Cequent Performance Products ("Cequent") infringe Claim 23 of U.S. Patent No. 6,672,115 ("the '115 patent") and Claim 5 of U.S. Patent No. 7,121,121 ("the '121 patent").   Wyers further asserts that Cequent has failed to produce clear and convincing evidence that either patent is invalid.   Wyers claims damages in excess of $7.5 million based upon the reasonable royalty that Wyers and Cequent would have negotiated at the time the infringement began.

I.      Claim 23 of U.S. Patent No. 6,672,115

Wyers asserts that Cequent directly and indirectly infringes claim 23 of the '115 patent, which provides as follows:

23.     A locking hitch pin system comprising:

a)  a first hitch bar and a first hitch receiver, said first hitch bar and said first hitch receiver each including first apertures of a first size disposed therein and aligned for registration with one another;

b)  a second hitch bar and second hitch receiver, said second hitch bar and said second hitch receiver each including second apertures of a first size disposed therein and aligned for registration with one another said first apertures being smaller than said second apertures;

c)  a convertible hitch pin including

   1)  a hitch pin shank having first and second ends and a shank outer dimension size and adapted for closed fitted engagement with the first apertures;

   2)  a latch portion disposed at said first end;

   3)  a stop member disposed at said second end;

   4)  a sleeve for selective engagement with said pin shank and having an outer dimension sized and adapted for closed fitted engagement with the second apertures and

d)  a locking head member moveable between locked and unlocked states a configured for selective engagement with said latch portion.

Consistent with his expert disclosure, Philip Wyers, President of Wyers Products Group, will testify that Cequent manufactures, distributes and/or sells products which directly or indirectly infringe (through inducement), literally or under the doctrine of equivalents, Claims 23 of the '115 patent including, without limitation, Cequent part numbers : SSCL 0600, SRL63, SRL63 0600, SRL63KA, 580405, 580406, 580407, 63234, 63250, 70056 (including 7005600, 7005633 and 7005677), 70059 (including 7005900), 70067 (including 7006700, 7006730, 7006777 and 7006780), 70093

(including 7009300, 7009330, 7009333 and 7009342), 70101 (including 7010100 and 7010130), 70102 (including 7010200 and 7010233), 70212 (including 7021200), 70239 (including 7023900, 7023933 and 7023942), 70316 (including 7031600), 70390 (including 7039000 and 7039030), 70391 (including 7039100), 70546 (including 7054600, 7054630 and 7054680), 70570 (including 7057030, 7057039 and 7057042), 72777, 72792, 74503, 74515, 74531 and 74532.  Collectively, the foregoing part numbers sold by Cequent are referred to as the "Accused Cequent Receiver Locks." Wyers contends that continued infringement is willful.

In this action, Wyers seeks to enjoin Cequents' continued infringement of the '115 patent, to recover damages for Cequents' past infringement, and to recover such additional sums, fees and costs as provided under applicable law. Wyers also contends that Cequent has failed to establish, by clear and convincing evidence, that prior art available prior to conception would have rendered the claimed invention obvious under 35 U.S.C. 103.  Consistent with his expert report disclosed on July 18, 2014, Mr. Wyers will testify that a person of ordinary skill in the art would not have regarded Claim 23 as obvious in light of the available receiver locks and the Down reference.  Mr. Wyers will further provide evidence regarding the secondary considerations of non-obviousness that support the validity of Claim 23 of the '115 patent, as set forth in his expert declarations submitted to the court with its Motion for Summary Judgment. [Doc.158]

II.     Claim 5 of U.S. Patent No. 7,121,121 ("the '121 patent").

Claim 5 of the '121 patent claims a universal coupler lock with the following limitations:

5.  A locking device adapted to secure to a coupler section of a trailer that has a hitch ball recess, comprising:

(A) a lock housing including a hitch ball element supported thereby that is sized and adapted to be engaged with and disengaged from the hitch ball recess of a coupler section of a trailer, wherein said lock housing includes a body portion having a longitudinal throughway extending therethrough and a traverse bore intersecting the throughway with said hitch ball oriented generally orthogonally to the throughway and to the bore, and including an elongated tubular casing disposed in the throughway;

(B) a shackle member releasably securable to said lock housing to define a retain state, said shackle member a bridge portion that extends across said hitch ball element when in a retain state whereby said coupler section becomes non-removably trapped between said hitch ball element and said bridge section when in retain state, said shackle member releasable from said lock housing to define a release state wherein said coupler section can be released from said hitch ball element; and

(C) a selectively lockable latch assembly disposed in and integral with said lock housing and operative to move between a latch state wherein said shackle member is latched in retain state and an unlatch state wherein said shackle member may be moved to the release state.

Cequent manufactures, distributes and/or sells products which directly or indirectly infringe, literally or under the doctrine of equivalents, Claims 5 of the '121 patent including, without limitation, Cequent part numbers UTL100, UTL100 060, UTL100 0600, UTL100 9999, UTL100 KA, 55003, 55003 (including 5500342), 63226 (including 63226KA), 70147 (including 701471, 701472 and 7014700) 701474, 7014777, 7014780, 72783 (including 72783HD, 7278309, 7278330, 7278333, 7278377, 7278380 and 727831142.   Collectively, the foregoing part numbers sold by Cequent are referred to as the "Accused Cequent Coupler Locks."  Through his expert disclosure and depositions, Mr. Wyers has set forth the manner in which the Accused Cequent

Coupler Locks infringe each of the above limitations, either literally or under the doctrine of equivalents.  Wyers contends that continued infringement is willful.

Wyers seeks to enjoin Cequent's continued infringement of the '121 patent, to recover damages for Cequent's past infringement, and to recover such additional sums, fees and costs as provided under applicable law.  Cequent has not disclosed an expert or a witness to testify that the '121 patent is invalid.  As a result, Wyers contends that Cequent has failed to establish, by clear and convincing evidence, that prior art available prior to conception would have rendered the claimed invention obvious under 35 U.S.C. 103.  To the extent any new evidence of invalidity is advanced, Mr. Wyers will testify that a person of ordinary skill in the art would not have regarded Claim 5 as obvious in light of the available locking art.  Mr. Wyers will further provide evidence regarding the secondary considerations of non-obviousness that support the validity of Claim 5 of the '121 patent, as set forth in his expert declarations.

III.    Claims 4-16 of United States Patent 6,722,686

Wyers manufactures, distributes and/or sells the UMAX 50 and UMAX 100. Cequent has accused Wyers of infringing Claims 4-16 of United States Patent 6,722,686.   Neither UMAX lock can infringe the '686 patent as it is invalid due to anticipation, obviousness and prior inventorship.   As set forth in Wyers' Motion for Summary Judgment of Invalidity [Doc. 163],  the '686 patent was conceived by Mr. Tim Vander Koy years after Mr. Wyers conceived and reduced the patented coupler lock to practice.  Further, Wyers filed the '121 patent two months prior to the filing of the '686 patent, rendering the '686 patent invalid and non-infringed.  Wyers also claims that

Cequent has failed to prove infringement as the UMAX 50 and UMAX 100 lack the integral lock claimed and described in Claims 4-16 of the '686 patent.

Wyers further asserts that combinations of prior art present in Fulton's design file for coupler locks renders Claims 4-18 of the '686 patent obvious, namely United States Patent Number 6,139,235 and Master Lock's universal coupler lock (277DAT).  Wyers further asserts that the combination of the following prior art references render Claims 4-18 obvious:

U.S. Patent No. 1,543,397 ("Schroeder") (issued June of 1925)

U.S. Patent No. 3,884,055 ("Vuillemot") (issued May of 1975)

U.S. Patent No. 4,141,569 ("Dilk") (issued February of 1979)

U.S. Patent No. 5,094,423 ("Almquist") (issued March of 1992)

U.S. Patent No. 5,823,021 ("Chang") (issued October 1998)

U.S. Patent No. 5,873,271 ("Smith") (issued February of 1999)

U.S. Patent No. 7,121,121 ("Wyers") (issued October of 2006)

Wyers has sold the UMAX 50 and 100 since 2004.   Cequent Performance asserted that the UMAX 50 and 100 infringed the '686 patent in 2004.   Through counsel, Wyers immediately responded with correspondence indicating that his product did not infringe a valid patent and that the '686 patent was invalid due to Wyers prior inventorship and priority patent filing. Cequent delayed filing suit on the '686 patent for an unreasonably long and inexcusable period of time and Wyers has been or will be prejudiced in a significant way due to Cequent's delay in filing suit.  Thus, laches bars Cequent from recovering damages for acts that occurred before it filed its lawsuit.

**b**.     **Cequent Consumer Products and Cequent Performance Products**

**I.     The '115 Patent**

A.     Collateral Estoppel

The Federal Circuit has already ruled that claims of the '115 patent that are substantially similar to claim 23 are invalid. *Wyers v. Master Lock*, 616 F.3d 1231, 1233 (Fed. Cir. 2010). Because the claim asserted by Wyers in this litigation does not recite any language materially different from the patent claims invalidated by the Federal Circuit, Wyers' is collaterally estopped from asserting claim 23 against Cequent.

B.     The '115 Patent is Invalid as Obvious

Cequents alleges that combinations of these prior art references render claim 23 of the '115 patent obvious:

Wyer's Trimax T2 and T3 locks

U.S. Patent No. 3,963,264 ("Down") (issued June 15, 1976)

U.S. Patent No. 4,711,106 ("Johnson") (issued December 8, 1987)

U.S. Patent No. 5,664,445 ("Chang") (issued September 9, 1997)

Cequent also alleges that the '115 patent would have been obvious to one of skill in the art for at least the reasons set forth in *Wyers v. Master Lock*, 616 F.3d 1231 (Fed. Cir. 2010).

C.     Cequent Does Not Infringe Claim 23 Of The '115 Patent

Wyers has offered no evidence that Cequent or any Cequent customer directly infringes the '115 patent. And because Wyers cannot prove direct infringement by any third party, by definition, it cannot prove indirect infringement by Cequent.

In addition, Wyers cannot prove indirect infringement because it has no evidence that Cequent Performance and Cequent Consumer: (i) had knowledge of Wyers' '115 patent until after it sued them on October 5, 2012 and March 21, 2014, respectively; (ii) induced others to use all of the elements of claim 23 together as a system; or (iii) had specific intent that they do so. All three of those element (as well as direct infringement by a third party) must be proven to recover for induced infringement.

D.   Laches

Cequent Performance has sold the receiver locks with sleeves since 2002 – two years before Wyers' '115 patent issued on January 6, 2004. Despite that, Wyers never threatened or actually sued until October 5, 2012 – nearly nine years later. And Wyers did not sell Cequent Consumer until two years after that, on March 21, 2014. Wyers delayed filing suit on the '115 patent for an unreasonably long and inexcusable period of time and Cequent has been or will be prejudiced in a significant way due to Wyers' delay in filing suit.  Thus, laches bars Wyers from recovering damages for acts that occurred before it filed its lawsuits.

II.   **The '121 Patent**

A.   Cequent Does Not Infringe Claims 5 Of The '121 Patent

Wyers' own party admissions show that Cequent's coupler lock is missing at least three limitations in claim 5 of the '121 patent, thus, Cequent does not infringe the '121 patent. Specifically, Wyers presents no evidence establishing Cequent's coupler lock has, among other missing features, (1) an "elongated tubular casing" that is (2)

"disposed in" (3) a longitudinal throughway as recited in claim 5. And Wyers offers no credible evidence that Cequent infringes under the doctrine of equivalents.

### B.   Wyers' Is Not Entitled to Pre-Suit Damages

#### 1.   No Marking

Wyers cannot meet its burden of proving patent marking because: (1) Wyers continued to sell unmarked coupler locks all the way through the filing of this suit; and (2) Wyers kept no business records regarding whether, when or how many coupler locks it correctly marked with the '121 patent.

#### 2.   Laches

Wyers delayed filing suit on the '121 patent for an unreasonably long and inexcusable period of time and Cequent has been or will be prejudiced in a significant way due to Wyers' delay in filing suit.  Thus, Wyers is not entitled to recover damages for acts that occurred before it filed its lawsuits.

### III.   Wyers Infringes the '686 Patent

Wyers directly infringes claims 4-16 of Cequent Performance's '686 patent both literally and under the doctrine of equivalents. Wyers also has contributed to the infringement of claims 4-16 of the '686 patent by others both literally and under the doctrine of equivalents. Wyers has admitted that if the Court adopts Cequent's proposed claim constructions for the '686 patent, Wyers infringes the '686 patent.

DAMAGES

a.   **Plaintiffs**:   Wyers seeks recovery of damages for infringement of Claim 23 of the '115 patent and Claim 5 of the '121 patent.  For the '115 patent, Wyers seeks

recovery of a reasonable royalty for the sales of accused receiver locks enjoyed by Cequent Consumer and Cequent Performance from October 5, 2006 through the present.  Cequent has been on notice of the patent since that time by virtue of Wyers' product packaging, the small number of competitors in the market place, Cequent's attendance at Wyers' booths during trade shows and the products purchased by Cequent.  For the '121 patent, Wyers seeks a reasonable royalty for the sales of accused coupler locks enjoyed by Cequent Consumer and Cequent Performance from January 15, 2007 through the present.  Cequent has been on notice of the patent since that time by virtue of Wyers' product packaging, the small number of competitors in the market place, Cequent's knowledge gained through litigation with Diversi-Tech, Cequent's attendance at Wyers' booths during trade shows and products purchased by Cequent.   Using accepted methodologies approved by the Federal Circuit, Mr. Wyers and Mr. Gardemal will testify regarding the damages that have been sustained.  Based upon an extensive analysis disclosed on June 13, 2014 and his deposition that was completed on August 22, 2014, Mr. Gardemal has opined that a 12% royalty on the receiver locks and 22% royalty on the coupler locks would be reasonable, resulting in over $7.5 million in damages.  Cequent has failed to timely challenge the methodology utilized by Mr. Gardemal or Mr. Wyers.  Cequent Consumer has also failed to disclose sales for two years due to destruction of records, rendering Mr. Gardemal's opinions conservative. Mr. Wyers has been designated to testify that he would have negotiated a royalty on both products that mirrored the royalty rates he has secured in the course of transacting business with similarly sized entities, such as Curt Manufacturing.  Mr. Wyers will testify

that he agrees that the damages sustained by the Plaintiffs likely exceed the $7.5 million figure presented by Mr. Gardemal.

Cequent is not entitled to damages for its claim of infringement relative to the '686 patent as Cequent's expert improperly included pre-suit damages even though Cequent is not entitled to such damages because of laches. The earliest possible date to begin tolling damages is the date Wyers was sued for infringement of the '686 patent: October of 2013. Cequent is also not entitled to damages as Wyers was the first to invent the Universal Coupler Lock described in the '686 patent and neither the UMAX 50 or 100 employ the integral lock claimed in the '686 patent.

Wyers is entitled to damages for sales enjoyed by Cequent Consumer of both sleeved receiver locks and universal coupler locks from 2007 to 2008. Wyers' initial complaint named Trimas, Cequent Consumer's parent, along with Cequent Performance Products. [Doc. 1] In the initial complaint, Wyers specifically enumerated Cequent Consumer's product numbers. Counsel for Trimas (also counsel for Cequent Performance and Cequent Consumer) indicated that sales for Cequent Consumer would be captured through a suit directed exclusively against Cequent Performance. As a result of this attorney conference, the First Amended Complaint was filed. When it became apparent that Cequent would not produce sales from Cequent Consumer, the Second Amended Complaint was filed. Under no circumstances should Cequent Consumer be permitted to avoid payment of damages for infringing sales in 2007 and 2008 when its products were the subject of the initial complaint, its parent indicated that all sales would flow through Cequent Performance, and all Cequent entities retained the same law firm

both before and during this suit.   As a result, Cequent Consumer's attempt to avoid damages for infringing sales for this time period lacks procedural and substantive merit.

     b.   **Cequent**:

As an initial matter, Wyers' statement above that Cequent Consumer "failed to disclose sales for two years due to destruction of the records" is a false and misleading statement.  In May 2010, Cequent Consumer, in its ordinary course of business and under its document retention policy, got rid of its financial records that were more than three years old (i.e., pre-May 2007 records).  Wyers did not file this suit until October 2012, and did not sue Cequent Consumer until March 2014. Further, Wyers _never_ provided any pre-suit threat or notice to Cequent Consumer about a potential infringement claim for the '115 or '121 patents. Therefore, Wyers has no valid spoliation argument because Cequent Consumer: (1) had no knowledge of any imminent litigation; (2) had no duty to preserve those financial documents; and (3) did not destroy such documents in bad faith. Wyers is falsely attempting to create a spoliation issue where there is none. If anything, because Wyers waited more than _8 years_ to sue Cequent Performance and _10 years_ to sue Cequent Consumer, any evidentiary prejudice caused by the loss of these records should support Cequent's laches defense.

Further, Wyers is not entitled to damages because Cequent does not infringe either the '115 patent or the '121 patent. For the '115 patent, Wyers' damages analysis is flawed because:

(1) Wyers has not provided any evidence of direct infringement of the '115 patent and, thus, cannot provide adequate evidence for the amount of damages it has incurred.

(2) Wyers' expert improperly included pre-suit damages even though Wyers is not entitled to such damages because of laches. Thus, the earliest possible date to begin tolling damages is the date each was sued: October 5, 2012 for Cequent Products and March 21, 2014 for Cequent Consumer.

(3) Even when not considering laches, Wyers' expert used the wrong date to start the damages calculation for Cequent Consumer.  Cequent Consumer was not sued until March 21, 2014; thus, the earliest possible date to begin tolling damages for Cequent Consumer is March 21, 2008, not November 6, 2006 as stated by Wyers' expert.

(4) Wyers' expert used improper methodology for calculating the royalty base and did not provide supporting evidence to support his royalty base calculations. To the extent that Mr. Wyers' opinion differs from the opinion of Wyers' expert Mr. Gardemal, Mr. Wyers opinion should not be considered because he is not a damages expert, provides only his biased and unsupported personal belief on damages. Assuming that the proper date for damages to begin accruing is the filing date, the correct royalty base is $8,342.06 and $66,163.69 for Cequent Products and Cequent Consumer, respectively.

For the '121 patent, Wyers' damages analysis is flawed because:

(1) Wyers' expert improperly included pre-suit damages even though Wyers is not entitled to such damages because Wyers did not comply with the marking statute (35 U.S.C. § 287) and did not provide actual notice of infringement until it filed suit.  Thus, the earliest possible date to begin tolling damages is October 5, 2012 for Cequent Products and March 21, 2014 for Cequent Consumer.

(2) Wyers' expert improperly included pre-suit damages even though Wyers is not entitled to such damages because of laches; thus, the earliest possible date to begin tolling damages is October 5, 2012 for Cequent Products and March 21, 2014 for Cequent Consumer.

(3) Even when not considering laches, Wyers' expert used the wrong date to start the damages calculation for Cequent Consumer.  Cequent Consumer was not sued until March 21, 2014; thus, the earliest possible date to begin tolling damages for Cequent Consumer is March 21, 2008, not November 6, 2006 as stated by Wyer's expert.

(4) Wyers' expert used improper methodology for calculating the royalty base and did not provide supporting evidence to support his royalty base calculations.  To the extent that Mr. Wyers' opinion differs from the opinion of Wyers' expert Mr. Gardemal, Mr. Wyers opinion should not be considered because he is not an unbiased independent damages expert. Depending on the proper date for beginning the damages calculation, the proper royalty base is set forth in the Rebuttal Report of Mr. Haas. Assuming that the proper date for damages to begin accruing is the filing date against each defendant, the correct royalty base is $75,319.71 and $318,691.99 for Cequent Products and Cequent Consumer respectively.

For the '686 patent, Cequent is entitled to damages for direct and contributory infringement as set forth in the Affirmative Report of Mr. Haas of approximately $818,229 for the period of January 7, 2007 and December 31, 2013, the time period for which Wyers provided financial information. Wyers did not rebut Mr. Haas' report.

## 4. STIPULATIONS

The parties stipulate to the following facts:

1.      Philip W. Wyers is a resident of the state of Colorado with the professional address of 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112

2.      Wyers Products Group, is a Colorado corporation having its principal place of business at 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112.

3.      Philip Wyers is the owner and President of Wyers Products.

4.      Defendants Cequent Performance Products and Cequent Consumer Products (both herein referred to as "Cequent") are separate divisions of TriMas Corporation.  Defendant Cequent Performance has its principal place of business at 47912 Halyard Drive, Suite, 100, Plymouth, MI 48170 and Defendant Cequent Consumer has its principal place of business at 29000-2 Aurora Rd Solon, OH 44135.

## 5. PENDING MOTIONS

1.      Plaintiffs' Opening Claim Construction Brief [Doc. 85], Cequent Responsive Claim Construction Brief [Doc. 117], and Plaintiffs Reply in Support of its Opening Claim Construction Brief.  [Doc. 119]

2.      Cequent's Opening Brief on Claim Construction of the '686 patent [Doc. 120], Plaintiffs' Responsive Claim Construction Brief for the '686 patent [Doc. 122], and Cequent's Reply Claim Construction Brief of the '686 Patent. [Doc. 123]

3.      Cequent Performance Products' Renewed Motion to Partially Dismiss the Second Amended Complaint [Doc. 139], Response Brief [Doc. 147] and Reply Brief. [Doc. 152]

4.     Cequent Consumer Product's Motion to Partially Dismiss the Second Amended Complaint [#146]; Response Brief [Doc. 151] and Reply Brief.  [Doc. 153]

5.     Defendants' Summary Judgment Motion [Doc. 158], Wyers' Opposition Brief [Doc. 174], and Defendants' Reply Brief. [Doc. 187]

6.     Wyers Motion for Summary Judgment RE: Issue Preclusion [Doc. 159], Cequents' Opposition Brief [Doc. 176], and Wyers Reply Brief.  [Doc. 188]

7.     Wyers Motion for Summary Judgment of Invalidity and Non-Infringement of U.S. Patent No. 6,722,686 [Doc. 163]; Cequents' Opposition Brief [Doc. 177], and Wyers' Reply Brief.  [Doc. 186]

8.     Cequents' Motion to Continue Trial [Doc. 182], Wyers Response Brief [Doc. 184], Cequents' Reply Brief.  [Doc. 185]

## 6. WITNESSES

**a.     List the nonexpert witnesses to be called by each party.  List separately:**

**Plaintiff:**

(1)     witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1.     Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers is the plaintiff and president of Wyers Product Group.  Mr. Wyers will testify regarding the conception, reduction to practice, patenting of the products claimed in Claim 23 of the '115 patent and Claim 5 of the '121 patent.  Mr. Wyers will testify, consistent with his declarations and depositions, regarding the issues of infringement, validity and damages as they relate to the '115, '121 and '686 patents.  Mr. Wyers will testify that Cequent's accused products infringe the claims of his patents and that his

UMAX products cannot infringe the '686 patent due to prior inventorship.  Mr. Wyers will testify regarding damages, including marking, reasonable royalties and the impact Cequent's infringement had on Wyers Products Group.  Mr. Wyers will testify regarding all trial exhibits, if needed, and will provide testimony in rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise in the area of lock design.

2.    David Estes of Buchtel Motors, Inc.

Mr. Estes was the Director of Marketing for Wyers Products Group during the relevant time frame and will testify consistent with his deposition and his knowledge of Wyers Products Groups' marketing and sale of receiver locks and coupler locks.  Mr. Estes will also testify regarding his knowledge of Cequent, the accused products, and his interactions with Cequent over the years as a competitor for sales in the towing accessory market place.  Mr. Estes will testify regarding all trial exhibits, if needed, and will provide testimony in rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise.

3.    Jim Sentz of Wyers Products Group, Inc.

Mr. Sentz was a Sales Manager for Wyers Products Group during the relevant time frame and will testify consistent with his deposition and his knowledge of Wyers Products Groups' sale of receiver locks and coupler locks.  Mr. Sentz will also testify regarding his knowledge of Cequent, the accused products, and his interactions with Cequent over the years as a competitor for sales in the towing accessory market place. Mr. Sentz will testify regarding all trial exhibits, if needed, and will provide testimony in

rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise

        4.      Tim Vander Koy of Cequent Performance Products, Inc.

Mr. Vander Koy is an employee of Cequent Performance Products and was involved with the design, testing and production of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks.  Mr. Vander Koy is expected to testify regarding the conception and development of the accused products. Mr. Vander Koy is expected to provide factual evidence supporting Wyers allegations of infringement/validity of the '115 and '121 patents as well as the invalidity/non-infringement of the '686 patent.

        5.      Todd Walstrom of Cequent Performance Products, Inc.

Mr. Walstrom is an employee of Cequent Performance Products and was involved with the design, testing and production of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks.  Mr. Walstrom is expected to testify regarding the conception and development of the accused products.  He will also discuss marketing and sale of the accused products.  Mr. Walstrom is expected to provide factual evidence supporting Wyers allegations of infringement/validity of the '115 and '121 patents as well as the invalidity/non-infringement of the '686 patent.

        6.      Eric Yukich of Cequent Consumer Products, Inc.

Mr. Yukich is an employee of Cequent Consumer Products and was involved marketing and sale of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks.  Mr. Yukick is expected to provide factual evidence supporting Wyers

allegations of infringement/validity of the '115 and '121 patents as well as the invalidity/non-infringement of the '686 patent.

      7.     John Stephens of Cequent Consumer Products, Inc.

Mr. Stephens is an employee of Cequent Consumer Products and has been involved marketing and sale of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks.  Mr. Stephens is expected to provide factual evidence supporting Wyers allegations of infringement/validity of the '115 and '121 patents as well as the invalidity/non-infringement of the '686 patent.

    (2)    witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));

      1.     Calvin Wang

Mr. Wang is the President of Pilot Automotive.  Mr. Wang is expected to testify consistent with his knowledge of the attempts to develop receiver locks that could operate in both Class I/II systems and Class III/IV systems prior to Wyers disclosure of the invention claimed in Claim 23 of the '115 patent.  Mr. Wang is expected to testify regarding the industry's response to Wyers' disclosure, copying and commercial success of the claimed invention.

      2.     Paul Budge

Mr. Paul Budge was the president and owner of Diversi-Tech.  Mr. Budge filed for a patent on a universal coupler lock.  In 2005, Diversi-Tech was sued by Cequent for allegedly infringing the '686 patent.  Mr. Budge will testify regarding the decision to resolve the case with Cequent, the royalty agreement he entered with Cequent, and the

correspondence he sent to Cequent advising that he would no longer pay the contractual royalties as the '121 patent was issued and rendered the '686 patent invalid.

      3.    Any witness necessary to rebut or impeach any witness offered in this matter.

    (3)    witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

      1.    None, unless needed for impeachment or rebuttal.

**Defendant:**

    (1)    witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

      1.    Todd Walstrom of Cequent Performance Products, Inc.

Mr. Walstrom is a Vice-President at Cequent Performance Products and was involved with the design, testing and production of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks. Mr. Walstrom is expected to testify regarding the Cequent Performance business, the conception and development of the Cequent's products and the '686 patent. Mr. Walstrom is expected to provide factual evidence supporting Cequent's defenses of invalidity and non-infringement of the '115 and non-infringement of the '121 patent. Mr. Walstrom is also expected to provide factual evidence supporting Cequent's allegations regarding the validity and infringement of the '686 patent.

      2.    Eric Yukich of Cequent Consumer Products, Inc.

Mr. Yukich is the Director of Marketing at Cequent Consumer Products and was involved in the marketing and sale of Cequent's Receiver Locks and the Cequent Accused Coupler Locks. Mr. Yukich is expected to provide factual evidence supporting

Cequent's defenses of non-infringement and invalidity of the '115 and non-infringement of the '121 patent.  Mr. Yukich is also expected to provide factual evidence supporting Cequent's allegations of infringement and validity of the '686 patent.

   3. Tim Vander Koy of Cequent Performance Products, Inc.

  Mr. Vander Koy is an employee of Cequent Performance Products and was involved with the design, testing and production of Cequent's Receiver Locks and Coupler Locks.  Mr. Vander Koy is expected to testify regarding the conception and development of the invention claimed in the '686 patent. Mr. Vander Koy is expected to provide factual evidence supporting Cequent's allegation of infringement and validity of the '686 patent.

   4. Michael Maurer of Cequent Consumer  Products, Inc.

  Mr. Maurer is an employee of Cequent Consumer Products and is expected to testify regarding the lack of patent marking on Wyers' UMAX50 and UMAX100 products.

   5. Tabitha Volz of Cequent Performance Products, Inc.

  Ms. Volz is an employee of Cequent Performance Products and is expected to testify regarding the lack of patent marking on Wyers' UMAX50 and UMAX100 products.

   6. Kawa-She-Quoen Okerlund of Cequent Performance Products, Inc.

  Mr. Okerlund is an employee of Cequent Performance Products and is expected to testify regarding Cequent's development of the coupler lock and the timing of Mr. Vander Koy's conception of the invention claimed by the '686 patent.

7. Jim Sentz of Wyers Products Group, Inc.

Mr. Sentz was a Sales Manager for Wyers Products Group during the relevant time frame and will testify about Cequent's and Wyers Products Group's accused products.

8. David Estes of Buchtel Motors, Inc.

Mr. Estes was the Director of Marketing for Wyers Products Group during the relevant time frame and will testify about Cequent's and Wyers Products Group's accused products.

(2) witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));

1. Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers is the plaintiff and president of Wyers Product Group. Mr. Wyers is expected to offer testimony in support of Cequent's defenses of invalidity and non-infringement of the '115 patent and non-infringement of the '121 patent. Mr. Wyers is also expected to offer testimony in support of Cequent's allegation that Wyers infringes the '686 patent.

2. Deserae Abed-Rabbo Weitmann of Amazon.com

Ms. Weitmann is a litigation paralegal at Amazon.com. Ms. Weitmann is expected to testify regarding when Wyers provided products to Amazon.com and to certify and authenticate Amazon's inventory records for the Wyers UMAX50 and UMAX 100 products.

3. Any witness necessary to rebut or impeach any witness offered in this matter.

(3)     witnesses where testimony is expected to be presented by means of a

deposition and, if not taken steno graphically, a transcript of the pertinent

portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

1.     None, unless needed for impeachment or rebuttal.

**b.     List the expert witnesses to be called by each party.  List separately:**

**Plaintiff:**

(1)     witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1.     Joseph T. Gardemal III, Alvarez & Marsal Global Forensic and

Dispute Services, LLC.

Mr. Gardemal will testify on all subject matters referenced, discussed and

disclosed in Plaintiffs' expert witness disclosures regarding his testimony, Mr.

Gardemal's reports and his deposition.  Mr. Gardemal will testify exclusively on the topic

of damages.

2.     Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers will testify on all subject matters referenced, discussed and

disclosed in each of Mr. Wyers declarations and depositions.  Mr. Wyers will testify

regarding topics of infringement, validity and damages relative to the patents-in-suit.

(2)     witnesses who may be present at trial (see Fed. R. Civ. P.
26(a)(3)(A));

1.     None, unless needed for impeachment or rebuttal.

(3)     witnesses where testimony is expected to be presented by means of a
deposition and, if not taken steno graphically, a transcript of the pertinent
portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

1.     None, unless needed for impeachment or rebuttal.

**Defendant:**

(1)     witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1.     Lee A. Swanger, Ph.D., P.E., Exponent, Inc.

Dr. Swanger will testify on all subject matters referenced, discussed and disclosed in each of Dr. Swanger's reports and depositions.   Dr. Swanger will testify regarding topics of infringement and validity of the patents-in-suit.

2.     David A. Haas, Stout Risius Ross, Inc.

Mr. Haas will testify on all subject matters referenced, discussed and disclosed in each of Mr. Haas' reports and depositions.   Mr. Haas will testify regarding topics of damages.

(2)     witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1.  None, unless needed for impeachment or rebuttal

(3)     witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

1.     None, unless  as needed for impeachment or rebuttal

## 7. EXHIBITS

a.     Exhibit lists

At the outset of the Final Pretrial Conference, the parties shall submit one

Parties' Joint Exhibit List.

b.      Copies of listed exhibits must be provided to opposing counsel and any pro se

party no later than 45 days before trial.  Objections to the exhibits must be served by

personal delivery, electronic mail, or facsimile no later than 30 days before trial.

### 8. DISCOVERY

**I.      Wyers Position**

1.      Wyers is currently in the process of conferring with Cequent regarding the

following issues:

a.      Disclosure of all depositions, declarations or discovery exchanged

by the parties to the following lawsuit that Cequent Performance initiated to enforce the

'686 patent: 2005 CV 00074 captioned Cequent Trailer Products, Inc. v. Diversi-tech

Corp.

b.      Disclosure of sales figures from Cequent Consumer Products from

2007 through 2009.

**II.      Cequent's Position**

1.a. Cequent and Wyers resolved this issue months ago to Wyers' satisfaction.

Cequent Consumer has no responsive documents because it was not a party to that

case. And in March 2014 Cequent Performance formally objected on the basis that it

was vague, overly broad, unduly burdensome – including the fact that there are over 20

banker boxes of materials to review, and would have violated the protective order in that

case. Wyers never responded to Cequent's objections or asked to meet and confer with

Cequent regarding the overly broad language in its discovery request or ways to narrow

it. Now, long after the close of discovery and on the eve of trial, Wyers is trying to resurrect this dead issue. The Court should consider this matter closed.

1.b. In May 2010, Cequent Consumer, in its ordinary course of business and under its document retention policy, got rid of its financial records that were more than three years old (i.e., pre-May 2007 records). Wyers did not file this suit until October 2012, and did not sue Cequent Consumer until March 2014. Further, Wyers *never* provided any pre-suit threat or notice to Cequent Consumer about a potential infringement claim for the '115 or '121 patents. Therefore, Wyers has no valid spoliation argument because Cequent Consumer: (1) had no knowledge of any imminent litigation; (2) had no duty to preserve those financial documents; and (3) did not destroy such documents in bad faith. Wyers is falsely attempting to create a spoliation issue where there is none. If anything, because Wyers waited more than *8 years* to sue Cequent Performance and *10 years* to sue Cequent Consumer, any evidentiary prejudice caused by the loss of these records should support Cequent's laches defense.

## 9. SPECIAL ISSUES

None

## 10. SETTLEMENT

a.     Counsel for the parties met by telephone, in person and through electronic mail at various times during this case to discuss settlement of the case.

b.     The participants in the settlement discussions included counsel and party representatives.

c.   The parties were promptly informed of all offers of settlement.

d.   Counsel for the parties and any pro se party do (NOT) intend to hold future settlement conferences.

e.   It appears from the discussion by all counsel and any pro se party that there is (no)(limited)(good) possibility of settlement.

f.   Counsel for the parties and any pro se party considered ADR in accordance with D.C.COLO. LCivR.16.6.

## 11. OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.   Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein.   This Final Pretrial Order supersedes the Scheduling Order.   In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

### 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

Trial by jury shall commence **October 20, 2014**, at 8:30 a.m., in courtroom

A1001, located on the 10th Floor North, of the Alfred A. Arraj, United States Courthouse

Annex, 901 19th Street, Denver, Colorado 80294.

The Court has reserved twelve (12) days for trial:

- Monday, October 20, 2014, through Thursday, October 23, 2014;
- Monday, October 27, 2014 through Thursday, October 30, 2014; and
- Monday, November 3, 2014 through Thursday, November 6, 2014.

Counsel and any pro se party shall appear in courtroom A1001 on the first day of trial at

8:00 a.m., to review and discuss with the courtroom deputy clerk and the court, if

necessary, any final details, arrangements, or requirements concerning the trial.

DATED this _____ day of _____, 2014.

BY THE COURT

_____
United States District Judge

APPROVED:

LATHROP & GAGE LLP

McDONALD HOPKINS, LLC

s/*Aaron P. Bradford*
Aaron P. Bradford, Esq.
Jessie L. Pellant, Esq.
Alexander C. Clayden, Esq.
950 17th Street, Suite 2400
Denver, Colorado 80202
Phone:   720.931.3200
Fax:      720.931.3201
Email:    abradford@lathropgage.com
             jpellant@lathropgage.com
             aclayden@lathropgage.com

s/*David Cupar*
David Cupar, Esq.
Matthew Cavanagh, Esq.
600 Superior Avenue, Suite 2100, Cleveland,
Ohio 44114
Phone:      216-430-2036
Fax:         216-348-5474
Email:      dcupar@mcdonaldhopkins.com
                mcavangh@mcdonaldhopkins.com

*Attorneys for Plaintiffs and Counter
Claim Defendants Philip Wyers and
Wyers Products Group*

*Attorneys for Defendants Cequent
Performance Products and Cequent
Consumer Products as well as Counter Claim
Plaintiff Cequent Performance Products*