**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02640-REB-KIT
(consolidated with Civil Action No. 13-cv-02976-REB-KIT)

WYERS PRODUCTS GROUP, INC., a Colorado corporation, and
PHILIP W. WYERS,

      Plaintiffs,

vs.

CEQUENT PERFORMANCE PRODUCTS, INC., and
CEQUENT CONSUMER PRODUCTS, INC.,

      Defendant.

---

**ORDER CONSTRUING DISPUTED PATENT CLAIM TERMS &
RESOLVING MOTIONS FOR SUMMARY JUDGMENT**

---

Blackburn, J.

      This matter is before me on the following filings concerning claim construction:

(1) **Wyers Products Group, Inc.'s Amended Opening Claim Construction** [#54][1]

filed June 3, 2013 (addressing the '121 patent); [2] (2) the **Joint Claim Construction**

**Statement** [#69] filed October 10, 2013 (addressing the '121 patent); (3) the **Plaintiffs'**

**Opening Claim Construction Brief** [#85] filed November 11, 2013 (addressing the

'121 patent); (4) the **Joint Claim Construction Statement Regarding US Patent No.**

**6,722,686** [#106] filed December 9, 2013; (5) **Cequent's Responsive Claim**

---

      [1]  "[#54]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

      [2]  Many of the claim construction briefs address also the '115 patent.  In a separate order, the infringement claims based on the '115 patent were resolved on a basis that does not require construction of the claims in that patent.  Therefore, I do not discuss the '115 patent here.

**Construction Brief** [#117] filed December 20, 2013 (addressing the '121 patent); (6)

**Cequent's Opening Claim Construction Brief for the '686 Patent** [#120] filed

January 15, 2014; (7)  **Plaintiffs' Responsive Claim Construction Brief for the '686**

**Patent** [#122] filed January 31, 2014; and (8) **Cequent's Reply Claim Construction**

**Brief for the '686 Patent** [#123] filed February 12, 2014.

In addition, this matter is before me on the following motions for summary

judgment: (1) **Defendants' Summary Judgment Motion** [#158] filed July 25, 2014;[3]

and (2) **Plaintiffs' Motion for Summary Judgment of Invalidity and Non-**

**Infringement of U.S. Patent No. 6,722,686** [#163] filed July 25, 2014.  As to the

summary judgment motions, the parties filed responses [#174 & #177] and replies

[#186 & #187] addressing those motions.

I heard oral argument on the claim construction issues on February 21, 2014,

and took the matter under advisement.  I now construe the disputed claim terms of the

two patents in suit.  In addition, I grant the motion for summary judgment [#158] of the

defendants and deny the motion for summary judgment of the plaintiffs.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and

28 U.S.C. § 1338(a) (patent infringement).

## II.  BACKGROUND

This is a patent infringement action concerning two patents.  The '121 patent is a

patent owned by the plaintiffs, Wyers Products Group, Inc. and Philip Wyers

---

[3]  In a separate order, I address the collateral estoppel contentions of the defendants, as stated in their motion for summary judgment [#158].  In that order, I dismiss the infringement claims of the plaintiffs based on the '115 patent.  This order resolves all other issues raised in the motion for summary judgment [#158] of the defendants.

(collectively Wyers).  The '686 patent is owned by the defendants, Cequent

Performance Products, Inc., and Cequent Consumer Products, Inc. (collectively

Cequent)[4].  Both patents concern locking devices used to secure a trailer when the

trailer is not attached to the hitch of a towing vehicle.  Many trailers have a hitch ball

recess on the end of the trailer tongue.  When such a trailer is being towed, the hitch

ball recess on the end of the trailer tongue is placed over and secured to the hitch ball

on the towing vehicle.  The hitch ball recess is the coupler used to couple the trailer to a

towing vehicle.  Generally, the locking devices at issue in the patents of the parties

prevent use of the hitch ball recess on a trailer.  This is done by inserting a hitch ball

into the hitch ball recess of a trailer and securing the hitch ball in the recess with a

locking device.  This prevents a thief from inserting the hitch ball recess of the trailer

onto the hitch ball of his or her vehicle and then driving away with the trailer in tow.  I

will refer to these devices generally as coupler locks.  The diagrams below give an

overall depiction of the Wyers and Cequent coupler locks.




Wyers '121 patent - figure 2.



Cequent '686 patent - figure 3.

---

[4]  In the consolidated case, Civil Action No. 12-cv-02976-REB-KMT, Cequent asserts claims
against Wyers for infringement of the '686 patent.

In its complaint, [#133], Wyers alleges that the locking devices manufactured and sold by Cequent infringe the Wyers '121 patent.  In its complaint in the consolidated case, Civil Action No. 13-cv-02976-REB-KMT, Cequent alleges that the locking devices manufactured and sold by Wyers infringe the Cequent '686 patent.  In the briefs listed above, the parties seek construction of the disputed terms in the two patents and resolution of the related claims via summary judgment.  In this order, I construe the disputed claims of the two patents, resolving the **_Markman_**[5] issues presented by the parties.  After applying my construction of the disputed terms, I then address the contentions of the parties in their motions for summary judgment.

A patent infringement claim involves a two-step analysis.  First, the court "must determine, as a matter of law, the correct scope and meaning of a disputed claim term." **_CCS Fitness, Inc. v. Brunswick Corp._**, 288 F.3d 1359, 1365 (Fed. Cir. 2002). Second, the properly construed patent claims must be compared to the accused device to determine if the accused device device contains all of the limitations of the claimed invention.  **_Id_**.  The accused device is the device that allegedly infringes the patent of the plaintiff.  If the accused device contains all of the limitations of the patented invention, then the accused device infringes the patent.

### III.  CLAIM CONSTRUCTION

Claim construction is a matter of law for the court.  **_Markman v. Westview Instruments, Inc._**, 517 U.S. 370, 384-88 (1996).  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  **_Embrex, Inc. v. Service_**

---

[5] **_Markman_** is the customary and convenient short-hand reference for the claim construction process enunciated in **_Markman v. Westview Instruments, Inc._**, 517 U.S. 370, 384-88 (1996).

*Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (internal quotations and citation omitted).  Claim construction begins with a "heavy presumption" that the claim terms carry the ordinary and customary meaning that would be given to them by one skilled in the relevant art.  *Texas Digital Systems, Inc. v Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

The person of ordinary skill in the art is deemed to read the claim term in the context of both the particular claim in which the disputed term appears and the entire patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  According appropriate weight to the context in which the claim term appears requires that all claim terms be given effect:

> Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting proposed claim construction that would treat claim terms as meaningless).

Claim construction begins with an examination of the intrinsic evidence.  Intrinsic evidence includes the claims, the specification, and the prosecution history, if the history is in evidence.  *CCS Fitness*, 288 F.3d at 1365.  In addition, dictionaries, encyclopedias, and treatises may be used as intrinsic evidence to assist in determining the ordinary and customary meanings of claim terms.  *Texas Digital Systems*, 308 F.3d at 1202.

Extrinsic evidence may be consulted only when, after considering the intrinsic evidence, there remains ambiguity in the meaning of the claim language.  *Phillips*

*Petroleum Co. v. Hunstman Polymers Corp*., 157 F.3d 866, 876 (Fed. Cir. 1998).

Extrinsic evidence also may be consulted to enhance the court's understanding of the

technology involved in the patent. *DeMarini Sports, Inc. v. Wroth, Inc*., 239 F.3d

1314, 1323 (Fed. Cir. 2001). Extrinsic evidence includes expert testimony.

"In most situations, an analysis of the intrinsic evidence alone will resolve any

ambiguity in a disputed claim term. In such circumstances, it is improper to rely on

extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.

Cir. 1996). In my construction of the disputed claims of the patents in suit, I have not

considered extrinsic evidence.

The specification portion of a patent in which a claim term appears "is the single

best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*,

90 F.3d 1576, 1582 (Fed. Cir. 1996). "[A] claim must be read in view of the

specification of which it is a part." *Renishaw PLC v. Marposs Societa' per Azioni*,

158 F.3d 1243, 1248 (Fed. Cir. 1998). Two fundamental rules guide claim construction

in light of the specification. First, a limitation may not be read into a claim based on the

specification or written description. Second, one may look to the specification to define

a term already in a claim limitation. *Id*.

I have considered the intrinsic evidence submitted by the parties in their

*Markman* briefs, the written argument submitted by the parties, and the oral argument

presented by the parties at the February 21, 2014, *Markman* hearing. In addition, I

have considered definitions from *Webster's Third New International Dictionary*,

(1971), as described in this order. Having considered the relevant intrinsic evidence,

the arguments of the parties, and the applicable law, I construe the disputed terms of

the '121 and '686 patents as stated in this order.

## A.  The '121 Patent

Wyers claims the coupler locks of Cequent infringe the '121 patent.  The parties seek construction of six terms in the '121 patent.  Wyers has withdrawn its infringement claim concerning claim 7 of the '121 patent.  *Plaintiffs' Opening Claim Construction Brief* [#85], p. 2 n. 2.  At one point, Cequent had a counterclaim for a declaratory judgment of non-infringement on claim seven.  *Answer* [#99].  However, the operative answer [#196] no longer includes this counterclaim.

The portion of claim five of the '121 patent for which the parties seek claim construction reads as follows:

> 5.  A locking device adapted to secure to a coupler section of a trailer that has a hitch ball recess, comprising:
>
>> (A) a lock housing including a hitch ball element supported thereby that is sized and adapted to be engaged with and disengaged from the hitch ball recess of a coupler section of a trailer, wherein said lock housing includes a body portion having a **longitudinal throughway extending therethrough** and a **transverse bore intersecting the throughway** with such hitch ball **oriented generally orthogonally** to the throughway and to the bore, and including an **elongated tubular casing disposed in the throughway**;

The disputed claim terms are highlighted in bold.  Figure 3 and Figure 4 of the patent provide some graphic explanation of this language, although these depictions of a preferred embodiment do not control the interpretation of claim terms.



Wyers '121 patent - figure 3.



Wyers '121 patent - figure 4.

As depicted in Figure 4, the body portion is labeled 38, the tubular casing is labeled 40,

the longitudinal throughway is labeled 64, and the transverse bore is labeled 48.  '121

patent, col. 6, ll. 30 - 32, 53 - 59.

   **1) Longitudinal throughway extending therethrough** - Addressing this term,

Cequent proposes a construction which construes this term as "a passageway

extending entirely through the lengthwise part of the body portion having openings on opposite sides of the body portion." *Joint Claim Construction Statement* [#69], p. 6. Wyers contends this term does not require a passageway extending entirely through the lengthwise portion of the body of the lock, with openings on both ends. *Plaintiff's Opening Claim Construction Brief* [#85], p. 17.

As used in claim five, the "there" portion of the term "therethrough" refers to the body portion.  Generally, the word "through" means a passage through an object, from one side or surface to another side or surface. ***Webster's Third New International Dictionary***, 2384 (1971).  Of course, the word "through" can be qualified with words such as "partially," but "therethrough" is not so qualified in claim five.  In this context, the "through" portion of the word "therethrough" must be construed to mean all of the way through the body portion, meaning that the throughway must have openings at both ends.

The parties do not dispute that the term "longitudinal" means "of or relating to the lengthwise dimension." ***Webster's Third New International Dictionary***, 1333 (1971). However, Wyers contends Cequent improperly seeks to add a requirement that the throughway be "lengthwise." *Response to Defendants' Motion for Summary Judgment* [#174], p. 16.  Because the throughway is described as longitudinal, the throughway must be longitudinal, meaning through the lengthwise dimension of the body.

**Construction:** "Longitudinal throughway extending therethrough" is construed to mean a throughway extending all of the way through the body portion and parallel to the lengthwise dimension of the body portion.

**2) A transverse bore intersecting the throughway** - Addressing this term, Cequent proposes a construction which construes the term as "a cavity in the body

portion that intersects the longitudinal throughway at a 90 degree angle." *Joint Claim Construction Statement* [#69], p. 6. Wyers objects to the use of the term "cavity" to describe a bore. The parties do not dispute that "transverse," as used in relation to this bore, means at a 90 degree angle.

**Construction:** "a transverse bore intersecting the throughway" is construed to mean "a bore in the body portion that intersects the longitudinal throughway at a 90 degree angle."

**3) Oriented generally orthogonally** - Addressing this term, Wyers proposes a construction which construes the term as "in perpendicular orientation thereto." *Plaintiff's Opening Claim Construction Brief* [#85], p. 16. Cequent proposes "the ball element intersects both the throughway and the bore at about a 90 degree angle." *Id.* The parties do not dispute that the word "orthogonal" means perpendicular or at a 90 degree angle. The proposed construction of Cequent adds words, "the ball element," which immediately precede "oriented generally orthogonally" in the claim. I conclude that the addition of these words to the construction of the term "oriented generally orthogonally" is not necessary.

Cequent proposes that perpendicular or at a 90 degree angle requires also that the parts referenced must intersect and intersect at a 90 degree angle. *Plaintiffs' Opening Claim Construction Brief* [#85], pp. 18 - 19. The common definition of "perpendicular" is "being or set at right angles to a given line or plane." *Webster's Third New International Dictionary*, 1684 (1971). When considering perpendicular in reference to a plane, as commonly conceived, any item set at a right angle to the plane will intersect the plane at some point because a plane has no end. As depicted in figures 3, 4, and 5 of the '121 patent, the vertical line through the center of the hitch ball

element does not intersect with the longitudinal bore.  Rather, the hitch ball element is slightly offset.  However, the vertical line through the center of the hitch ball element does intersect with the plane of the longitudinal bore at a 90 degree angle.  This common conception of perpendicular, set at a right angle to a given plane, is applicable to claim five.

**Construction:** "oriented generally orthogonally" is construed to mean "oriented generally at a 90 degree angle to a given plane."

**4) Tubular casing disposed in the throughway** - Addressing this term, Cequent proposes a construction which construes the term as "a hollow tube that is a separate piece from and fits within the longitudinal throughway." *Plaintiff's Opening Claim Construction Brief* [#85], p. 16.  Wyers argues that the term needs no construction.  *Id*.  In addition, Wyers argues that the construction proposed by Cequent improperly narrows this term to require the tubular casing to be hollow.

By definition, a tube is hollow.  For example, ***Webster's Third New International Dictionary***, (1971) defines a tube as "a hollow elongated usu. cylindrical body . . . ."  ***Id***. at 2459.  Describing exemplary embodiments, the patent describes this piece as "tubular casing 40 is in the form of a hollow tubular member constructed, for example, of case hardened steel." '121 patent, col. 6, ll. 58 - 59.

The phrase "disposed in" also generates a construction dispute.  Wyers proposes no additional construction of this term, or any other language in this six word claim term.  In the context of a tubular casing, Cequent reads the term "disposed in" to define the tubular casing as a piece separate from the longitudinal throughway which fits in the longitudinal throughway.  *Cequent's Responsive Claim Construction Brief* [#117], p. 19.  Construing the competing '686 patent of Cequent, Wyers contends the

tubular casing could be an integral part of the body of the lock rather than a separate piece.

In the context of the language of claim five, the verb "dispose" means "to put in place or order" or "to assign to a particular place or position."   ***Webster's Third New International Dictionary***, 654 (1971).  Given the context of claim five, I conclude that the phrase "disposed in" refers to placing the "tubular casing" into the "throughway."  If, as Wyers argues, the "throughway" and the "tubular casing" could be the same thing in some embodiments, then the phrase "disposed in" is read out of the claim.  That, of course, is not permissible.

**Construction:** "tubular casing disposed in the throughway" is "a hollow tube casing placed in the throughway."

### B.  The '686 Patent

The '686 patent concerns a device which serves the same purposes as the device covered in the '121 patent.  Cequent claims the coupler locks of Wyers infringe the '686 patent.  The parties seek construction of three terms in the '686 patent.

#### i.  Claims four, eight, thirteen, seventeen &/or eighteen.

The claim terms "locking bar" and "an integral lock" both appear in claims four, eight, thirteen, seventeen, and eighteen of the '686 patent.  I construe these terms as used in all of these numbered claims.[6]  To the extent the claim terms in question appear in multiple claims of the patent, the parties seek a unitary construction of these terms.  In addition, the parties seek construction of the term "for lockingly engaging said locking bar within said aperture," as used in claim four.  With each construction, I specify which

---

[6] Cequent has withdrawn its claims using the term "integral locking means."  *Cequent's Opening Claim Construction Brief for the '686 Patent* [#120], p. 16.  Therefore, I do not construe the term "integral locking means."

claims of the '686 patent contain the term at issue.

Claim four of the '686 patent provides a good example of how these terms are used in the '686 patent.

4.  A device for closing a socket of an unhitched trailer hitch coupler, said device comprising:

a **locking bar** wherein at least a portion thereof rests on top of the trailer hitch coupler; and

a base comprising a plug member for receipt within said trailer hitch coupler socket , a locking bar -receiving apeture, and an **integral lock** for **lockingly engaging said locking bar within said aperture**.

The disputed claim terms are highlighted in bold.  Figure 3 of the patent provides some graphic explanation of this language, although this depiction of a preferred embodiment does not control the interpretation of claim terms.



Cequent '686 patent - figure 3.

**1) Locking bar** (claims 4, 8, 13, 17, and 18) - Addressing this term, Cequent contends no construction is necessary or, in the alternative, proposes "a bar that holds the plug member to the coupler when the bar is locked to the base." *Joint Claim Construction Statement Regarding US Patent No. 6,722,686* [#106], p. 2. Wyers proposes a construction that is more that 40 words in length which improperly imports numerous additional limitations into the two word phrase "locking bar." *Id*. In the context of the claims of the '686 patent, I conclude that the claim term "locking bar" is clear and needs no additional construction.

**Construction:** No construction necessary.

**2) An integral lock** (claims 4, 8, 13, 17, and 18) - Addressing this term, Cequent contends no construction is necessary or, in the alternative, proposes "the lock is housed within the base to prevent tampering with or breaking the lock." *Joint Claim Construction Statement Regarding US Patent No. 6,722,686* [#106], p. 3. Wyers proposes a construction that is more that 30 words in length which improperly imports numerous additional limitations to the three word phrase "an integral lock." *Id*.

In the alternative, Wyers proposes a means-plus-function limitation and an alternative construction. Under 35 U.S.C. § 112, ¶ 6, a patentee may express a limitation in a patent claim "as a means or a step for performing a specified function without the recital of structure ... in support thereof. . . ." 35 U.S.C. § 112, ¶ 6. Such a claim, however, will not be interpreted to cover all structures ... which would perform that function, but only "the corresponding structure ... described in the specification and equivalents thereof." *Id*. The applicability of § 112, ¶ 6 to a given patent claim limitation is a question of law. *Linear Technology Corp. v. Impala Linear Corp*., 379 F.3d 1311, 1318 (Fed. Cir. 2004). If the word "means" appears in a claim limitation in

combination with a function, then § 112, ¶ 6 is presumed to apply. ***Micro Chem., Inc.***

***v. Great Plains Chem. Co***., 194 F.3d 1250, 1257 (Fed. Cir. 1999).

If a claim term is used in common parlance or by persons of skill in the pertinent

art to designate a structure, the term does not fall under § 112, ¶ 6, even if the term

covers a broad class of structures and identifies the structures by their function.

***Greenberg v. Ethicon Endo-Surgery, Inc***., 91 F.3d 1580, 1583 (Fed. Cir. 1996).  A

term that has achieved recognition as a noun denoting a structure does not trigger the

application of § 112, ¶ 6, even if the noun is derived from the function performed.

***Lighting World, Inc. v Birchwood Lighting, Inc***., 382 F.3d 1354, 1360 (Fed. Cir.

2004).

As used in the '686 patent, the phrase "integral lock" does not trigger a means-

plus-function limitation.  The parties debate this issue in some detail in the *Plaintiffs'*

*Responsive Claim Construction Brief for the '686 Patent* [#122] and *Cequent's Reply*

*Claim Construction Brief for the '686 Patent* [#123].  On this issue, I approve and adopt

the arguments advanced and the authorities cited by Cequent in its reply [#123].

The proposals of Wyers complicate the meaning of "an integral lock" well beyond

the meaning of that phrase as used in the '686 patent.  In the context of the claims of

the '686 patent in which the phrase "an integral lock" is used, the word "integral" means

housed within the base.  I construe this claim term to mean "a lock housed within the

base."

**Construction:** "an integral lock" is "a lock housed within the base."

**3) For lockingly engaging said locking bar within said aperture** (claim 4) -

Addressing this term, Cequent contends no construction is necessary or, in the

alternative, proposes "the lock engages the locking bar within the aperture to prevent

removal of the locking bar from the aperture." *Joint Claim Construction Statement Regarding US Patent No. 6,722,686* [#106], p. 4.  Wyers proposes a construction that is more that 40 words in length and which improperly imports numerous additional limitations to this claim term.  In the alternative, Wyers proposes a means-plus-function limitation and an alternative construction.  Based on the law discussed above, I reject the means-plus-function limitation proposed by Wyers.  The proposals of Wyers complicate the meaning of "for lockingly engaging said locking bar within said aperture" well beyond the meaning of that phrase as used in the '686 patent.  In the context of the claims of the '686 patent in which this term is used, I conclude that the claim term "for lockingly engaging said locking bar within said aperture" is clear and needs no additional construction.

**Construction:** No construction necessary.

## C.  Conclusion

For the reasons outlined above, I construe the disputed terms in the '121 and '686 patents as specified in Section III, above.

## IV.  SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[7]  FED. R. CIV. P. 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**,

_____

[7] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers.

39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 514 U.S. 1004 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 528 U.S. 815 (1999) (abrogated on otr grounds, ***Martinez v. Potter***, 347 F.3d 1208, 1210 - 1211 (10th Cir. 2003); ***Eisenhour v. Weber Cnty.***, 744 F.3d 1220, 1227 (10th Cir. 2014)).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999).

When comparing a properly construed patent claim to an accused product, patent infringement is present when every limitation set forth in the patent claim is found in the accused product, either literally or by a substantial equivalent.  ***Wolverine World Wide, Inc. v. Nike, Inc***., 38 F.3d 1192, 1196 (Fed, Cir. 1994).  A substantial

equivalence between a patented device and an accused device may be found when the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Id*. A claim limitation is "equivalently present" in an accused device if the differences between the claim limitation and the corresponding aspects of the accused device are only insubstantial. ***CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG***, 224 F.3d 1308, 1319 (Fed. Cir. 2000). Generally, a determination of whether a device infringes a particular patent is a question of fact. However, a summary judgment of noninfringement may be granted if "on the correct claim construction, no reasonable jury could (find) infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." ***Netword, LLC v. Centraal Corp***., 242 F.3d 1347,1353 (Fed. Cir. 2001).

## B.  Claim of Infringement of the '121 Patent

In its motion for summary judgment [#158], Cequent seeks summary judgment on the claim of Wyers that the coupler lock product of Cequent infringes claim five of the '121 patent of Wyers. Cequent contends its accused coupler lock does not infringe the '121 patent because it does not include: (1) a "longitudinal throughway"; (2) a "transverse bore"; (3) a hitch ball "oriented generally orthogonally" to the "longitudinal throughway" and "transverse bore"; and (4) an "elongated tubular casing." All of these items, Wyers asserts, are elements of claim five of the '121 patent but none of these items are included in the accused Cequent product. Wyers contends all of the elements of claim five are present in the Cequent product. Cequent is correct. A review of the graphic depictions of the Cequent product shows why this is true.

As discussed in the claim construction of the '121 patent, above, the "longitudinal

throughway" which is an element of claim five must be parallel to the lengthwise dimension of the body.  Otherwise, the word "longitudinal" is written out of claim five.  In the '686 patent, nothing depicts or describes a throughway in the body of the Cequent product that is parallel to the lengthwise dimension of the body.  The Cequent product does not include a longitudinal throughway.

In his Rule 30(b)(6) deposition testimony, Mr. Wyers was asked about the longitudinal throughway in the Cequent product.  On a cross-section diagram of the Cequent product, Mr. Wyers highlighted a channel under the hitch ball portion of the Cequent product, as shown below, and contended that channel is the longitudinal throughway.



In relation to the Cequent product, the channel highlighted above is not longitudinal.  In addition, Mr. Wyers suggested that another channel in the Cequent product can be seen as the longitudinal throughway.



Fig.3

Using figure three of the '686 patent, Mr. Wyers highlighted the area shown in blue, an internal channel in which the lock mechanism of the Cequent product operates. This channel is not longitudinal in relationship to the Cequent product. Rather, the red line in the diagram above shows the longitudinal dimension of the Cequent product. In addition, the internal channel highlighted in blue above is not a throughway extending therethrough. This channel does not extend through the body of the Cequent product.

Absent a longitudinal throughway, it is not possible to have a transverse bore which intersects the longitudinal throughway or a hitch ball oriented generally orthogonally to the throughway and to the bore. The Cequent product does not satisfy these elements of claim five. Finally, the Cequent product does not include a tubular casing disposed in the non-existent longitudinal throughway. Wyers has not identified any tube placed or disposed in the Cequent product which satisfies that term, as used in claim five.

Wyers contends also that the Cequent product infringes the '121 patent under the doctrine of equivalents. The Federal Circuit applies two articulations of the test for equivalence.

> Under the insubstantial differences test, "[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004). Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it "performs substantially the same function in substantially the same way to obtain substantially the same result." *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209 - 10 (Fed. Cir. 2001).

*Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008). The differences between the elements of claim five of the '121 patent and the accused Cequent device are significant and not insubstantial. The Cequent product does not infringe the '121 patent under the doctrine of equivalents.

Viewing the undisputed facts in the record in the light most favorable to Wyers, and applying the claim construction contained in this order, no reasonable fact finder could find in favor of Wyers on its claim for infringement of the '121 patent. The undisputed facts in the record do not support a finding that every limitation set forth in claim five of the '121 patent is found in the accused Cequent product, either literally or by a substantial equivalent. Thus, Cequent is entitled to summary judgment on the claim of Wyers that Cequent infringes the '121 patent of Wyers.

### C.  Validity of the '686 Patent

In its motion for summary judgment [#163], Wyers contends the '686 patent of Cequent is invalid. If so, of course, there can be no claim of infringement. In response to the motion of Wyers and in its motion for summary judgment [#158], Cequent contends the '686 patent is valid. Patent invalidity must be proven by clear and convincing evidence. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013).

*i. 35 U.S.C. § 102 - Prior Art*

Philip Wyers says he invented the device depicted in the '121 patent in 1997.

Mr. Wyers claims drawings from 1998 and 1999 reflect the invention, and he says he

reduced the invention to practice in 2000.  *Motion for Summary Judgment* [#163] pp. 5 -

6.  According to Mr. Wyers, Tim Vander Koy conceived of an unattended trailer coupler

lock for the first time on February 8, 2001.  This, Mr. Wyers says, was the origin of the

Cequent coupler lock.  According to Cequent, Mr. Vander Koy reduced his invention to

practice by April 5, 2001.  *Response* [#177], p. 3, with exhibits cited.  Mr. Wyers does

not dispute this fact.  On March 11, 2002, Wyers filed a provisional application for his

lock.  *Motion for Summary Judgment* [#163] p. 3, ¶ 18.  On May 1, 2002, Mr. Vander

Koy filed a patent application which matured into the '686 patent.  *Response* [#177], p.

4, ¶ 21.  The '686 patent was issued on April 20, 2004.  *Motion for Summary Judgment*

[#163] p. 3, ¶ 21.  The '121 patent was issued on October 17, 2006.  *Id.*, p. 3, ¶ 23

Under 35 U.S.C. § 102(e)(2), a provisional patent application filed prior to

another patent application may be considered prior art.[8]  "(T)he claims of a patent are

invalid if they read on the invention disclosed in a different U.S. patent application that

was filed before, but issued after, the filing date of the inventor's patent."  **Taurus IP**,

726 F.3d at 1322.  "[P]riority of invention goes to the first party to reduce an invention to

practice unless the other party can show that it was the first to conceive the invention

and that it exercised reasonable diligence in later reducing that invention to practice."

**Id**.  Thus, to remove a patent application as a prior art reference, a party must show

either: (1) a conception and reduction to practice before the filing date of the competing

---

[8]   Cequent argues also that Wyers did not timely assert its § 102 defense.  Wyers asserted § 102 as a defense in its answer to the first amended complaint and counterclaim [#112].  Thus, the defense was timely asserted.

patent application; or (2) a conception before the filing date of the competing patent application combined with diligence and reduction to practice after that date. *Id*.

The undisputed facts summarized above show that Mr. Vander Koy conceived of and reduced to practice the invention which became the Cequent lock and the '686 patent about eleven months before Wyers filed its application for its invention, which application ripened into the '121 patent. Under *Taurus IP*, Wyers has not shown by clear and convincing evidence that the '686 patent is invalid under § 102.

### ii.  35 U.S.C. § 291 - Interfering Patent

Wyers asserts interference under 35 U.S.C. § 291 as a basis to invalidate the '686 patent. However, Wyers did not plead the defense of interference in its answer and counterclaims [#112], in which Wyers responded to the first amended complaint of Cequent.   That failure is fatal to the § 291 interference claim of Wyers.

> Absent interference, a court has no power under § 291 to adjudicate the validity of any patent. We hold that the court has no jurisdiction under § 291 unless interference is established.  Mere citation of that statute or recitation in a pleading as a basis for suit is not enough. When challenged, the pleader must establish that interference does in fact exist.

*Albert v. Kevex Corp.*, 729 F.2d 757, 760-61 (Fed. Cir. 1984).

Even if the § 291 claim of Wyers were pled adequately, the claim fails on this record.  "(F)or two claims to interfere, each claim must anticipate or render obvious the other; failure of either claim to anticipate or render obvious the other defeats the test for interfering patents."  *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc*., 655 F.3d 1291, 1302 (Fed. Cir. 2011).  The evidence in the record does not establish a claim of interference.

### D.  Claim of Infringement of the '686 Patent

Cequent seeks summary judgment on its claim that Wyers infringes claims four, five, eight, and nine of the '686 patent.  Cequent asserts infringement of additional claims in the '686 patent, but does not seek summary judgment concerning those additional claims of infringement.  Cequent says it will prove those infringement claims at trial.  *Motion for summary judgment* [#158], p. 17, n. 6.  In response, Wyers notes its claim that the '686 patent is invalid and its position on the construction of "integrated lock" in the '686 patent.  "Assuming the Court does not adopt Wyers' construction of the 'integrated lock' limitation as set forth in Document #122, pp. 9 - 18, Wyers agrees" that its coupler locks, known as UMAX products, infringe the '686 patent.  *Plaintiffs' Response To Defendants' Motion for Summary Judgment* [#174], p. 20.  In the claim construction above, the court does not adopt the position of Wyers on the construction of the 'integrated lock' limitation in the '686 patent.  On this basis, Cequent is entitled to summary judgment on its claim that Wyers infringes four, five, eight, and nine of the '686 patent.

## V.  CONCLUSION & ORDERS

Based on the foregoing, I construe the disputed terms in the '121 and '686 patents as specified in Section III, above.   Viewing the undisputed facts in the record in the light most favorable to Wyers, Cequent is entitled to summary judgment on the patent infringement claim of Wyers concerning the '121 patent of Wyers.  Viewing the undisputed facts in the record in the light most favorable to Cequent, Wyers is not entitled to summary judgment on the claim of Wyers that the '686 patent of Cequent is invalid.  Conversely, viewing the undisputed facts in the record in the light most favorable to Wyers, Cequent is entitled to summary judgment on the claim of Wyers

that the '686 patent of Cequent is invalid.  Finally, viewing the undisputed facts in the record in the light most favorable to Wyers, Cequent is entitled to summary judgment in its claim that Wyers infringes claims four, five, eight, and nine of the '686 patent.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the disputed terms in the '121 and '686 patents are construed as specified in Section III of this order;

2.  That under  Fed. R. Civ. P. 56, the **Defendants' Summary Judgment Motion** [#158] filed July 25, 2014, is granted;[9]

3.  That when judgment enters in Civil Action No. 12-cv-02640-REB-KMT, judgment shall enter in favor of the defendants on the patent infringement claim of the plaintiffs based on the '121 patent;

4.  That when judgment enters in in Civil Action No. 12-cv-02640-REB-KMT, judgment shall enter in favor of the defendants on the claim of the plaintiffs that the '686 patent of the defendants is invalid;

5.  That when judgment enters in the consolidated case, Civil Action No. 13-cv-02976-REB-KMT, judgment shall enter in favor of the plaintiffs in that case, Cequent Performance Products, Inc., and Cequent Consumer Products, Inc., on their claim that the defendants in that case, Wyers Products Group, Inc. and Philip Wyers, infringe claims four, five, eight, and nine of the '686 patent; and

---

[9]  The issue of collateral estoppel raised in **Defendants' Summary Judgment Motion** [#158] is resolved in a separate order.

6.   That the  **Plaintiffs' Motion for Summary Judgment of Invalidity and Non-Infringement of U.S. Patent No. 6,722,686** [#163] filed July 25, 2014, is denied.

Dated March 30, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge