# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 12-CV-02640-REB

WYERS PRODUCTS GROUP, INC. a Colorado corporation, and
PHILIP W. WYERS

    Plaintiffs,

v.

CEQUENT PERFORMANCE PRODUCTS, INC., and
CEQUENT CONSUMER PRODUCTS, INC.

    Defendants.

---

# FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

A combined Trial Preparation Conference and Final Pretrial Conference is set for October 1, 2014, at 1:15 p.m., in courtroom A1001, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294.

Plaintiffs Wyers Products Group, Inc. ("Wyers") and Philip W. Wyers ("Mr. Wyers") (collectively, "Plaintiffs"), will be represented by Aaron P. Bradford and Cindy N. Pham of Holland & Knight LLP, 633 17th Street, Suite 2300, Denver, CO 80202.

Defendants Cequent Performance Products, Inc. and Cequent Consumer Products, Inc., ("Cequent") will be represented by David B. Cupar and Matthew Cavanagh, McDonald Hopkins, LLC, 600 Superior Avenue, Suite 2100, Cleveland, Ohio 44114.

## 2. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this case concerns claims of patent infringement.

## 3. CLAIMS AND DEFENSES

**I.    Cequent Consumer Products and Cequent Performance Products**

**A.    Damages for Wyers' Infringement of the '686 Patent**

The Court ruled on summary judgment that Wyers' UMAX 50 and UMAX 100 locks infringe claims 4, 5, 8, and 9 of Cequent's '686 patent. For the '686 patent, Cequent is entitled to damages for direct and contributory infringement as set forth in the Supplemental Affirmative Report of Mr. Haas of approximately $1,105,893 for the period of January 7, 2007 and April 10, 2015, the time period for which Wyers provided financial information. Wyers did not rebut Mr. Haas' report.

**B.    Wyers' Infringement of Claims 6-7, and 10-16**

Wyers below raises new anticipation and obviousness defenses that it abandoned during discovery because it did not produce the necessary evidence to prove (much less by clear and convincing evidence) those defenses. Having lost at summary judgment, Wyers wants the Court to allow it to raise defenses that it abandoned under oath in discovery. Cequent relied in good faith on Wyers' abandonment of those defenses, including Mr. Wyers' own deposition testimony stating that Wyers' only invalidity defenses were the one that Wyers ultimately moved for – but lost – on summary judgment. Concurrently with this pre-trial order, Cequent will file a motion to exclude such invalidity defenses and that motion will detail Wyers' admission

that it no longer sought these defenses during discovery, but rather only pursued only those identified in the summary judgment briefing.

Based on Wyers' representation during discovery and in the dispositive motions, Cequent moved for summary judgment of infringement against Wyers only on claims 4, 5, 8, and 9 of Cequent's '686 patent. Cequent will prove at trial infringement by Wyers of claims 6-7, and 10-16 if Wyers somehow is allowed to raised invalidity defenses that it abandoned at discovery and for which it does not have the necessary evidence since it did not produce it at the discovery stage.

### C. <u>Wyers' Willful Infringement of the '686 Patent</u>

Wyers' infringement of Cequent's '686 patent is willful. Wyers has had knowledge of Cequent's '686 patent since at least prior to 2007. Despite Wyers' knowledge, it has continued to make, offer for sale, and sell the UMAX locks that infringe the claims of the '686 patent. The Court's summary judgment ruling of infringement dispositively establishes that fact. Despite the Court's infringement determination, Wyers continues to unlawfully make, offer for sale and sell the infringing UMAX locks. Therefore, Wyers is a willful infringer.

## II. <u>Wyers Products Group</u>

Philip Wyers and Wyers Products Group ("Wyers") manufactures, distributes and/or sells the UMAX 50 and UMAX 100, a lock that secures the coupler of a trailer. Wyers asserts that their infringement of the '686 patent has not been willful and that the '686 patent is invalid under 35 U.S.C. § 102(g)(2) and 35 U.S.C. § 103, defenses that were not resolved by the Court's Order Construing Disputed Patent Claim Terms &

Resolving Motions for Summary Judgment. [#206] Wyers also asserts laches, equitable estoppel and that the damages for infringement would be limited under a proper analysis of the Georgia Pacific factors.

Mr. Wyers conceived of the UMAX coupler lock in February of 1997, obtained engineering drawings from Merle Matt in March of 2000 and reduced his invention to a working prototype through Jennifer Chen of Handyway by SEMA in October of 2000. The Handyway prototype delivered to Mr. Wyers at SEMA reflected all of the elements Mr. Tim Vander Koy first conceived months later. After Mr. Wyers had reduced the universal coupler lock to practice, Mr. Tim Vander Koy conceived a version of the universal couple lock that featured the very elements of Mr. Wyers' prototype. Mr. Vander Koy used known prior art, including his own lock patented in the 1990s, to design the product that would be described in the '686 patent. In the meantime, Mr. Wyers continued to innovate the locking mechanism that would ultimately be included with his preferred embodiment.

On March 13, 2002, Mr. Wyers filed provisional patent application number 60/363,999 entitled "Locking Device for Trailer Hitches and Method Therefor." This application would ultimately be issued by the Patent Office as United States Patent Number 7,121,121. Two months later, Mr. Vander Koy filed non-provisional patent application number 10/136,044 entitled "Coupler Locking Device and Method". Mr. Vander Koy's patent application would ultimately issue as U.S. Patent Number 6,722,686. During the prosecution of these co-pending patents, Mr. Wyers encountered

prior art and arguments from the examiner that Mr. Vander Koy did not encounter, including citation and arguments involving the following references:

U.S. Patent Number 4,741,454 ("Ray")

U.S. Patent Number 5,839,302 ("Chu")

U.S. Patent Number 6,378,343 ("Lee")

U.S. Patent Number 6,406,052 ("Bale")

U.S. Patent Number 6,698,256 ("Witchey")

Mr. Vander Koy's patent issued on April 20, 2004 and Mr. Wyers patent issued on October 17, 2006. During the prosecution, both parties brought to market preferred embodiments of their respective coupler locks. In general, Cequent and its predecessors have sold a yellow, light weight coupler lock with a locking mechanism that engages a single leg of the shackle bar that is priced around $10. On the other hand, Wyers designed, manufactured and now sells a coupler lock that features a number of additional security features, including a patented locking mechanism that provides 360 degrees of security to the customer. As confirmed by Cequent, the two parties do not actively compete as they sell different products, at different prices.

In 2004, Cequent sent a cease and desist letter to Wyers demanding that Wyers cease the sale of his UMAX product. At that time, Tim Martin represented Mr. Wyers and he wrote two letters to Cequent advising that Mr. Wyers had filed his patent application first, giving him a priority filing, and that Wyers conception and reduction to practice information would likely invalidate the '686 patent under 35 U.S.C. § 102(g)(2). Mr. Wyers, through Mr. Martin, advised Cequent that in view of his prior inventorship, he

would not cease the sale of the UMAX product. Cequent did not sue Wyers thereafter. Rather, Cequent pursued licenses and litigation against other producers of coupler locks. Despite continued knowledge of Wyers' UMAX products, Cequent did not take action until Wyers filed suit against Cequent in 2012. Even then, Cequent filed suit in Detroit and did not serve the complaint on Wyers for almost another year.

Despite this evidence of prior inventorship and obviousness under 35 USC § 102(g)(2) and 35 USC § 103, Cequent claims that Wyers' UMAX 50 and 100 infringe Claims 4-16 of United States Patent 6,722,686. Neither UMAX lock can infringe the '686 patent as it is invalid due to anticipation (Fourth Affirmative Defense), obviousness (Fourth Affirmative Defense) and prior inventorship (Fourth and Tenth Affirmative Defense). The '686 patent was conceived by Mr. Tim Vander Koy after Mr. Wyers conceived and reduced the patented coupler lock to practice. Wyers further asserts that combinations of prior art present in Fulton's design file for coupler locks renders Claims 4-18 of the '686 patent obvious, namely United States Patent Number 6,139,235 and Master Lock's universal coupler lock (277DAT). Wyers further asserts that the combination of the following prior art references render Claims 4-18 obvious:

  U.S. Patent No. 1,543,397 ("Schroeder") (issued June of 1925)

  U.S. Patent No. 3,884,055 ("Vuillemot") (issued May of 1975)

  U.S. Patent No. 4,141,569 ("Dilk") (issued February of 1979)

  U.S. Patent No. 5,094,423 ("Almquist") (issued March of 1992)

  U.S. Patent No. 5,823,021 ("Chang") (issued October 1998)

  U.S. Patent No. 5,873,271 ("Smith") (issued February of 1999)

Further, Cequent delayed filing suit on the '686 patent for an unreasonably long and inexcusable period of time and Wyers has been or will be prejudiced in a significant way due to Cequent's delay in filing suit. Thus, laches (Second Affirmative Defense) and equitable estoppel (Ninth Affirmative Defense) bars Cequent from recovering damages for acts that occurred before it filed its lawsuit.

Cequent asserts that Wyers' infringement of the '686 patent is willful. To the contrary, Wyers sale of UMAX 50 and UMAX 100 was done with an objective good faith belief that these products did not infringe a valid and enforceable patent. Wyers' evidence of conception in 1997 and reduction to practice by SEMA, 2000, along with the filing date of his provisional patent application, confirmed that Wyers was the first to invent the universal coupler lock and that the '686 patent was invalid. Section 102(g)(2) of the Patent Act, which the Court did not address in the Order on Summary Judgment, provides that the evidence of conception and reduction to practice may independently invalidate an issued patent:

> "A person shall be entitled to a patent unless- … before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

A prior inventorship defense under Section 102(g)(2) is also separate and distinct an interference. Solvay S.A. v. Honeywell Int'l Inc., 742 F.3d 998, 1000 (Fed. Cir. 2014) (citing Thomson, S.A. v. Quixote Corp., 166 F.3d 1172, 1175 n. 3 (Fed. Cir.1999). "A patent is invalid under that section if the claimed invention was made in this country by

another before the patent's priority date." Id. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of objective willfulness.

Further, Cequent does not have evidence that Wyers actually knew or should have known that their actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To the contrary, Wyers has not copied the Cequent commercial embodiment but rather offered a universal coupler lock of his own design and creation; Wyers had a reasonable belief that the UMAX 50 and 100 did not infringe the '686 patent due to his prior inventorship; Wyers did not conceal or hide the UMAX 50 or 100 from Cequent or others; and Wyers obtained an opinion of counsel regarding infringement and shared that opinion in writing with Cequent in August and September of 2004. Given Cequent's failure to take action against Mr. Wyers after the September 27, 2004 letter from Wyers' counsel, Wyers had a reasonable and good faith belief that the UMAX 50 and 100 did not infringe a valid and enforceable patent. Further, Wyers had a good faith belief that the '686 patent would be eventually found to be invalid due to the number of references that Vander Koy did not face during prosecution that were asserted against the '121 patent, as well as in view of the Supreme Court's holding in KSR Int'l Co. v. Teleflex, Inc., 550 US 398 (2007). Cequent's inaction over the coming nine years confirmed that their belief was reasonable.

Cequent is not entitled to damages for its claim of infringement relative to the '686 patent as Cequent's expert improperly included pre-suit damages even though Cequent is not entitled to such damages because of laches. The earliest possible date to begin tolling

damages is the date Wyers was sued for infringement of the '686 patent: October of 2013. Under the doctrine of equitable estoppel, Cequent is not entitle to recover damages for infringement due to its decision to sue other manufacturers of universal coupler locks that did not have a priority filing and prior inventorship defenses, while permitting Wyers to continue to sell the UMAX 50 and 100. In view of the correspondence between Cequent and Wyers, the small size of the market place, the differences between Wyers and those targeted for enforcement, Cequent should be estopped from claiming any damages.

The jury may ultimately be asked to calculate a reasonable royalty for use of the '686 patent. A reasonable royalty is defined as the money amount the patent owner and the alleged infringer would have agreed upon as a fee for use of the invention at the time prior to when infringement began. Under the *Georgia Pacific* factors, a willing licensor and a willing licensee would likely have agreed upon the very royalty that Cequent and Wyers agreed upon in 2004: $0.00 per unit sold by Wyers. A royalty is calculated at the time the infringement began, using knowledge that the willing licensee and willing licensor would have possessed at that time of the hypothetical negotiation. Here, both the willing licensee and willing licensor would have reviewed the correspondence between Mr. Robert Earp from Cequent and Mr. Tim Martin from Wyers and would have concluded that Cequent was not entitled to anything more than a negligible royalty during the time when Mr. Wyers' patent was pending. The parties would have also known that Mr. Wyers had evidence of conception and reduction to practice that would pre-date Cequent's evidence of invention, giving Wyers priority under 35 USC § 102(g)(2). The parties would have also considered the fact that Wyers and Cequent are not competitors; that Wyers' UMAX 50 and 100

have a number of valuable non-patented features that contribute to the value of the commercial product; that the parties' products do not directly compete on price, in stores, or with the consumer due to their different designs and manufacturing costs; the likelihood that Wyers would have abandoned the product if the demanded royalty was unreasonable; the fact that Wyers was the inventor; that Cequent secured $1.50 per unit from Valley for sale of an infringing product, a rate that reflected the fact that Valley not have the same evidence of invalidity as possessed by Wyers. The Jury will ultimately determine the royalty that would have been reached between willing parties at that time, and with that knowledge.

## 4. STIPULATIONS

The parties stipulate to the following facts:

1. On March 31, 2015, the Court ruled on summary judgment that Wyers infringes claims 4, 5, 8 and 9 of Cequent's '686 patent through its making, offering for sale, and selling of the UMAX 50 and UMAX 100 locks.

2. The Court also ruled on summary judgment that Cequent's '686 patent is not invalid based on anticipation or interference in view of Wyers' 121 patent.

3. Since the Court's summary judgment ruling that Wyers infringes, Wyers continues to make, offer for sale, and sell the UMAX 50 and UMAX 100 locks.

4. Philip W. Wyers is a resident of the state of Colorado with the professional address of 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112

5. Wyers Products Group, is a Colorado corporation having its principal place of business at 6770 S. Dawson Circle, Suite 200, Centennial, Colorado, 80112.

6. Philip Wyers is the owner and President of Wyers Products.

7. Defendants Cequent Performance Products and Cequent Consumer Products (both herein referred to as "Cequent") are separate divisions of TriMas Corporation. Defendant Cequent Performance has its principal place of business at 47912 Halyard Drive, Suite, 100, Plymouth, MI 48170 and Defendant Cequent Consumer has its principal place of business at 29000-2 Aurora Rd Solon, OH 44135.

8. Cequent Consumer Products and Cequent Performance Products manufacture, import and sell coupler locks claimed in the '686 patent.

## 5. PENDING MOTIONS

1. Cequent's Motion in Limine to Exclude Wyers' Invalidity Defenses at Trial.

2. Wyers Motion to Clarify and for Reconsideration of Order Construing Disputed Patent Claim Terms & Resolving Motions of Summary Judgment [#206]

## 6. WITNESSES

I. **Nonexpert Witnesses to Be Called by Each Party**

   A. **Cequent**

(1) witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

      1. Todd Walstrom of Cequent Performance Products, Inc.

Mr. Walstrom is a Vice-President at Cequent Performance Products and was involved with the design, testing and production of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks. Mr. Walstrom is expected to testify regarding the Cequent Performance business, the conception and development of the

Cequent's products and the '686 patent. Mr. Walstrom is also expected to provide factual evidence supporting Cequent's allegations regarding the validity and willful infringement of the '686 patent by Wyers.

> (2) witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));
>
> 1. Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers is the plaintiff and president of Wyers Product Group. Mr. Wyers is expected to offer testimony in support of Cequent's defenses of invalidity and non-infringement of the '115 patent and non-infringement of the '121 patent. Mr. Wyers is also expected to offer testimony in support of Cequent's allegation that Wyers infringes the '686 patent.

> 2. Eric Yukich of Cequent Consumer Products, Inc.

Mr. Yukich is the Director of Marketing at Cequent Consumer Products and was involved in the marketing and sale of Cequent's Receiver Locks and the Cequent Accused Coupler Locks. Mr. Yukich is expected to provide factual evidence supporting Cequent's allegations of willful infringement and validity of the '686 patent.

> 3. Tim Vander Koy of Cequent Performance Products, Inc.

Mr. Vander Koy is an employee of Cequent Performance Products and was involved with the design, testing and production of Cequent's Receiver Locks and Coupler Locks. Mr. Vander Koy is expected to testify regarding the conception and development of the invention claimed in the '686 patent. Mr. Vander Koy is expected to provide factual evidence supporting Cequent's allegation of infringement and validity of the '686 patent.

4. Any witness necessary to rebut or impeach any witness offered in this matter.

(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

1. None, unless needed for impeachment or rebuttal.

B. **Wyers Products Group**

(1) witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

a. Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers is the plaintiff and president of Wyers Product Group. Mr. Wyers will testify regarding the conception, reduction to practice, patenting of the products claimed in the '121 patent. Mr. Wyers will testify, consistent with his declarations and depositions, regarding the issues of laches, equitable estoppel, prior inventorship, non-willful infringement, validity and damages as these issues relate to the '686 patent and the sale of UMAX 50 and 100. UMAX products cannot infringe the '686 patent due to prior inventorship, anticipation and obviousness. Mr. Wyers will testify regarding all trial exhibits, if needed, and will provide testimony in rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise in the area of lock design.

b. Jim Sentz of Wyers Products Group, Inc.

Mr. Sentz was a Sales Manager for Wyers Products Group during the relevant time frame and will testify consistent with his deposition and his knowledge of Wyers Products Groups' sale of receiver locks and coupler locks. Mr. Sentz will testify regarding his knowledge of Mr. Wyers' conception and reduction to practice of the UMAX 50 and 100 products including the prototypes received at SEMA in 2000. Mr. Sentz will also testify regarding his knowledge of Cequent, the accused products, and his interactions with Cequent over the years. Mr. Sentz will testify regarding all trial exhibits, if needed, and will provide testimony in rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise

c. Tim Vander Koy of Cequent Performance Products, Inc.

Mr. Vander Koy is an employee of Cequent Performance Products and was involved with the design, testing and production of the Cequent Accused Receiver Locks and the Cequent Accused Coupler Locks. Mr. Vander Koy is expected to testify regarding the conception and development of the accused products. Mr. Vander Koy is expected to provide factual evidence supporting Wyers allegation that the '686 patent is invalid under 35 U.S.C. Section 102(g)(2) and Section 103.

d. Todd Walstrom of Cequent Performance Products, Inc.

Mr. Walstrom is an employee of Cequent Performance Products and was involved with the design, testing and production of the Cequent Coupler Locks. Mr. Walstrom is expected to testify regarding the conception and development of the accused products. He will also discuss marketing and sale of the accused products.

Mr. Walstrom will also testify regarding the cease and desist letter that was sent to Mr. Wyers in 2004 regarding the UMAX 100 product and the results of that exchange. Mr. Walstrom is expected to provide factual evidence supporting Wyers allegation that the '686 patent is invalid and that Wyers infringement is not willful. Mr. Walstrom will also provide testimony in support of Mr. Wyers' defense of laches, equitable estoppel and a reasonable royalty.

      e. Eric Yukich of Cequent Consumer Products, Inc.

Mr. Yukich is an employee of Cequent Consumer Products and was involved marketing and sale of the Cequent Coupler Locks. Mr. Yukich is expected to provide factual evidence supporting Wyers' defense of laches, equitable estoppel, non-willful infringement as well as in support of Wyers royalty analysis.

    (2)    witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));

      a. David Estes of Buchtel Motors, Inc.

Mr. Estes was the Director of Marketing for Wyers Products Group during the relevant time frame and will testify consistent with his deposition and his knowledge of Wyers Products Groups' marketing and sale of coupler locks. Mr. Estes will also testify regarding his knowledge of Cequent, the accused products, and his interactions with Cequent over the years in the towing accessory market place. Mr. Estes will testify regarding all trial exhibits, if needed, and will provide testimony in rebuttal to any testimony offered by Cequent that is contrary to his knowledge, training, experience and expertise.

b. Paul Budge

Mr. Paul Budge was the president and owner of Diversi-Tech. Mr. Budge filed for a patent on a universal coupler lock. In 2005, Diversi-Tech was sued by Cequent for allegedly infringing the '686 patent. Mr. Budge will testify regarding the decision to resolve the case with Cequent, the royalty agreement he entered with Cequent, and the correspondence he sent to Cequent advising that he would no longer pay the contractual royalties as the '121 patent was issued and rendered the '686 patent invalid.

(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

1. None, unless needed for impeachment or rebuttal.

## II. Expert Witnesses to Be Called by Each Party

**A. Cequent**

(1) witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1. Lee A. Swanger, Ph.D., P.E., Exponent, Inc.

Dr. Swanger will testify regarding topics of willful infringement and validity of the '686 patent.

2. David A. Haas, Stout Risius Ross, Inc.

Mr. Haas will testify on all subject matters referenced, discussed and disclosed in each of Mr. Haas' reports and depositions. Mr. Haas will testify regarding topics of damages.

(2) witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1. None, unless needed for impeachment or rebuttal

(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

1. None, unless as needed for impeachment or rebuttal

**B. <u>Wyers</u>**

(1) witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

a. Philip Wyers of Wyers Products Group, Inc.

Mr. Wyers will testify on all subject matters referenced, discussed and disclosed in each of Mr. Wyers declarations and depositions. Mr. Wyers will testify regarding topics of validity and damages relative to the patents-in-suit.

(2) witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

### 7. EXHIBITS

a. Exhibit lists

At the outset of the Final Pretrial Conference, the parties shall submit one Parties' Joint Exhibit List.

b. Copies of listed exhibits must be provided to opposing counsel and any pro se party no later than 45 days before trial. Objections to the exhibits must be served by personal delivery, electronic mail, or facsimile no later than 30 days before trial.

## 8. SPECIAL ISSUES

Cequent requests that the Court show the Federal Judiciary video "The Patent Process: An Overview for Jurors" Either during *voir dire* or prior to opening. Here is a link to the video: http://www.fjc.gov/library/fjc_catalog.nsf

## 9. SETTLEMENT

a. Counsel for the parties met by telephone, in person and through electronic mail at various times during this case to discuss settlement of the case.

b. The participants in the settlement discussions included counsel and party representatives.

c. The parties were promptly informed of all offers of settlement.

d. Counsel for the parties and any pro se party do (NOT) intend to hold future settlement conferences.

e. It appears from the discussion by all counsel and any pro se party that there is (no)(limited)(good) possibility of settlement.

f. Counsel for the parties and any pro se party considered ADR in accordance with D.C.COLO. LCivR.16.6.

## 11. OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

Trial by jury shall commence **June 1, 2015**, at 8:30 a.m., in courtroom A1001, located on the 10th Floor North, of the Alfred A. Arraj, United States Courthouse Annex, 901 19th Street, Denver, Colorado 80294.

The Court has reserved twelve (12) days for trial. Cequent's position is that the trial will last at most only four days if the Court proceeds with Cequent's damages and willfulness claims. If, however, the Court allows Wyers to proceed with its abandoned or previously unasserted defenses, then the trial may take the full 12 days, as follows:

- Monday, June 1, 2015, through Thursday, June 4, 2015;

- Monday, June 8, 2015 through Thursday, June 11, 2015; and

- Monday, June 15, 2015 through Thursday, June 18, 2015.

Counsel and any pro se party shall appear in courtroom A1001 on the first day of trial at 8:00 a.m., to review and discuss with the courtroom deputy clerk and the court, if necessary, any final details, arrangements, or requirements concerning the trial.

DATED this _____ day of _____, 2015.

BY THE COURT

_____
United States District Judge

| APPROVED: | |
|---|---|
| HOLLAND & KNIGHT LLP | McDONALD HOPKINS, LLC |
| s/*Aaron P. Bradford* | s/*David Cupar* |
| Aaron P. Bradford, Esq. | David Cupar, Esq. |
| Cindy N. Pham, Esq. | Matthew Cavanagh, Esq. |
| 633 17th Street, Suite 2300 | 600 Superior Avenue, Suite 2100, |
| Denver, Colorado 80202 | Cleveland, Ohio 44114 |
| Phone: 303.974.6660 | Phone: 216-430-2036 |
| Fax: 303.974.6659 | Fax: 216-348-5474 |
| Email: aaron.bradford@hklaw.com | Email: dcupar@mcdonaldhopkins.com |
| cindy.pham@hklaw.com | mcavangh@mcdonaldhopkins.com |
| *Attorneys for Plaintiffs and Counter Claim Defendants Philip Wyers and Wyers Products Group* | *Attorneys for Defendants Cequent Performance Products and Cequent Consumer Products as well as Counter Claim Plaintiff Cequent Performance Products* |